**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**AT BOWLING GREEN**

| | |
|---|---|
| CITY OF FORT LAUDERDALE GENERAL EMPLOYEES' RETIREMENT SYSTEM, on Behalf of Itself and All Others Similarly Situated,<br><br>                Plaintiff,<br><br>    v.<br><br>HOLLEY INC., TOM TOMLINSON, DOMINIC BARDOS, and VINOD NIMMAGADDA<br><br>                Defendants. | Case No. 1:23-cv-148-GNS<br><br>Judge Greg N. Stivers |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

Sean M. Berkowitz (*pro hac vice*)
Eric R. Swibel (*pro hac vice*)
Nicholas J. Siciliano (*pro hac vice*)
Latham & Watkins LLP
330 North Wabash Street, Suite 2800
Chicago, IL 60611
Telephone: 312.876.7700
Facsimile: 312.993.9767
Email: sean.berkowitz@lw.com
eric.swibel@lw.com
nicholas.siciliano@lw.com

Michele D. Johnson (*pro hac vice*)
Latham & Watkins LLP
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
Telephone: 714.540.1235
Facsimile: 714.755.8290
Email: michele.johnson@lw.com

Michael P. Abate
Kaplan Johnson Abate & Bird LLP
710 W. Main St., 4th Floor
Louisville, KY 40202
Telephone: 502.540.8280
Email: mabate@mkaplanjohnsonlaw.com

**TABLE OF CONTENTS**

I.      INTRODUCTION ..........................................................................................................1

II.     ARGUMENT.................................................................................................................2

        A.      Plaintiff Has Not Alleged Falsity................................................................................2

                1.      Reseller Statements Should Be Dismissed ..................................................3

                2.      Acquisition Statements Should Be Dismissed.............................................5

                3.      DTC Statements Should Be Dismissed........................................................7

                4.      Financial Performance Statements Should Be Dismissed ...........................7

                5.      Forward-Looking Statements Are Not Actionable ......................................8

                6.      Defendants' Opinion Statements Are Not Actionable..............................10

        B.      Plaintiff Has Not Alleged a "Strong Inference" of Scienter .................................10

                1.      Plaintiff Alleges None of the *Helwig* Factors............................................10

                2.      Plaintiff's Other Arguments Fail to Support Scienter...............................13

III.    CONCLUSION............................................................................................................15

**TABLE OF AUTHORITIES**

**CASES**

*Bond v. Clover Health Investments, Corp.*,
587 F. Supp. 3d 641 (M.D. Tenn. 2022) ................................................................... 4

*Bondali v. Yum! Brands, Inc.*,
620 F. App'x 483 (6th Cir. 2015) ...................................................................... 11, 16

*City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*,
450 F. Supp. 3d 379 (S.D.N.Y. 2020) .................................................................. 9, 10

*City of Taylor Gen. Emps. Ret. Sys. v. Astec Indus., Inc.*,
29 F.4th 802 (6th Cir. 2022) .................................................................................. 3

*Doshi v. Gen. Cable Corp.*,
386 F. Supp. 3d 815 (E.D. Ky. 2019) ................................................................. 13, 15

*Frank v. Dana Corp.*,
646 F.3d 954 (6th Cir. 2011) ................................................................................ 16

*Gruhn v. Tween Brands, Inc.*,
2009 WL 1542795 (S.D. Ohio June 2, 2009) ......................................................... 13

*Helwig v. Vencor, Inc.*,
251 F.3d 540 (6th Cir. 2001) ...................................................................... 12, 13, 14

*In re Biogen Sec. Litig.*,
857 F.3d 34 (1st Cir. 2017) .................................................................................. 17

*In re Ford Motor Co. Sec. Litig.*,
381 F.3d 563 (6th Cir. 2004) .................................................................................. 5

*In re Keithley Instruments, Inc. Sec. Litig.*,
268 F. Supp. 2d 887 (N.D. Ohio 2002) .................................................................... 4

*In re Sonic Corp. Customer Data Sec. Breach Litig.*,
2020 WL 3577341 (N.D. Ohio July 1, 2020) ......................................................... 8, 11

*In re The Goodyear Tire & Rubber Co. Sec. Litig.*,
436 F. Supp. 2d 873 (N.D. Ohio 2006) .................................................................. 12

*In re Upstart Holdings, Inc. Sec. Litig.*,
2023 WL 6379810 (S.D. Ohio Sept. 29, 2023) ......................................................... 5

*In re Washington Prime Grp., Inc. Sec. Litig.*,
2024 WL 1307103 (S.D. Ohio. Mar. 27, 2024) ......................................................... 7

*Kolominsky v. Root, Inc.*,
    100 F.4th 675 (6th Cir. 2024) ........................................................................ 8

*Kolominsky v. Root, Inc.*,
    667 F. Supp. 3d 685 (S.D. Ohio 2023) ................................................... 14, 15

*Loc. 295/Loc. 851 IBT Emp. Grp. Pension Tr. & Welfare Fund v. Fifth Third Bancorp.*,
    731 F. Supp. 2d 689 (S.D. Ohio 2010) ........................................................ 13

*Nicholson v. N-Viro Int'l Corp.*,
    2007 WL 2994452 (N.D. Ohio Oct. 12, 2007) ............................................... 3

*Norfolk Cnty. Ret. Sys. v. Tempur-Pedic Intern., Inc.*,
    22 F. Supp. 3d 669 (E.D. Ky. 2014),
     aff'd sub. nom. Pension Fund Grp. v. Tempur-Pedic Intern., Inc., 614 F.
    App'x 237 (6th Cir. 2015) ........................................................................... 10

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
    575 U.S. 175 (2015)..................................................................................... 12

*Pittman v. Unum Grp.*,
    861 F. App'x 51 (6th Cir. 2021) .................................................................. 15

*Plagens v. Deckard*,
    2023 WL 2711263 (N.D. Ohio Mar. 30, 2023) ........................................... 17

*Plymouth Cnty. Ret. Ass'n v. ViewRay, Inc.*,
    556 F. Supp. 3d 772 (N.D. Ohio 2021)........................................................... 7

*Schwamberger v. Marion Cnty. Bd. of Elections*,
    988 F.3d 851 (6th Cir. 2021) ....................................................................... 16

*Shupe v. Rocket Cos., Inc.*,
    660 F. Supp. 3d 647 (E.D. Mich. 2023)........................................................... 5

*St. Clair Cnty. Emps.' Ret. Sys. v. Acadia Healthcare Co.*,
    2021 WL 195370 (M.D. Tenn. Jan. 20, 2021)............................................. 17

*Stein v. U.S. Xpress Enters., Inc.*,
    2020 WL 3584800 (E.D. Tenn. June 30, 2020)......................................... 9, 12

*Teamsters Loc. 237 Welfare Fund v. ServiceMaster Glob. Holdings, Inc.*,
    2022 WL 989240 (W.D. Tenn. Mar. 31, 2022) ............................................ 16

*Teamsters Loc. 237 Welfare Fund v. ServiceMaster Glob. Holdings, Inc.*,
    83 F.4th 514 (6th Cir. 2023) ................................................................. 13, 15

*Willis v. Big Lots, Inc.*,
2016 WL 8199124 (S.D. Ohio Jan. 21, 2016) ......................................................... 17

**STATUTES**

15 U.S.C. § 78u-5 ........................................................................................................ 9

## I.    INTRODUCTION

The Opposition confirms that even Plaintiff does not know what statements it challenges in this securities fraud lawsuit, and highlights Plaintiff's failure to meet its heightened burden to plead both falsity and scienter—either of which warrants dismissal.

First, as to *falsity*, the Amended Complaint ("AC") fails the PSLRA's requirement to specify each statement alleged to be misleading and the reasons why that is so.  In its AC, Plaintiff purported to identify Defendants' allegedly "false and misleading statements" in a separate section, bolding and italicizing parts of the statements.  But now Plaintiff concedes that many of those statements (including bold and italicized parts) are not false and misleading.  As one example, Plaintiff now concedes in its Opposition that it is not challenging Holley's historical financial statements.  But just six pages earlier, Plaintiff identifies the paragraphs from its AC attempting to allege that those same financial statements are false and misleading.  That mismatch repeats over and over in the Opposition.  Plaintiff's haphazard pleading highlights its failure to articulate a logical theory for its claims beyond pointing to a few disappointing quarters and crying "fraud." Indeed, the Opposition makes clear that Plaintiff has not alleged particularized *facts* showing that Holley's statements about its reseller business, M&A, or performance were false or misleading when made.  Furthermore, those statements cannot support a securities fraud claim because they are protected by the PSLRA safe harbor for forward-looking statements, are genuinely held opinions, are non-actionable statements of corporate optimism, or all three.

Plaintiff's *scienter* arguments fare even worse.  To survive a motion to dismiss, Plaintiff must allege particularized *facts* supporting a *strong* inference that Defendants intentionally lied (or ignored multiple, obvious red flags).  But the Opposition confirms Plaintiff offers only *speculation* that does not add up to a strong inference of scienter.  Indeed, Plaintiff admits it has identified no motive for the alleged fraud.  Nor could it, as Plaintiff has not alleged that any Defendant benefitted

1

from the alleged lies by selling Holley shares during the Class Period or otherwise. Plaintiff also concedes it has not alleged most of the non-exhaustive list of factors courts in the Sixth Circuit consider in assessing scienter. And the few allegations Plaintiff offers have been repeatedly rejected as insufficient to establish a "strong" and "cogent" inference of scienter. The AC should be dismissed with prejudice.

## II.    ARGUMENT

### A.    Plaintiff Has Not Alleged Falsity

Three examples in Plaintiff's Opposition highlight why its AC fails Rule 9(b)'s and the PSLRA's exacting requirements to plead falsity with particularity. *First*, Plaintiff now admits it "does not challenge the literal accuracy of Holley's financial statements." Opp. at 11. But just a few pages earlier, Plaintiff lists the AC paragraphs allegedly containing false statements, and *six* of those paragraphs cite financial statements. *Id.* at 5 (listing AC ¶¶ 117, 128, 146, 154, 168, and 185). *Second*, Plaintiff concedes that Holley's statements that it "focused on M&A, had an M&A pipeline, made acquisitions, and used M&A to increase its market position" are not false or misleading. Opp. at 11 n.10; *see* Mot. at 13 (citing AC ¶¶ 62, 108, 112, 124, 132, 140, 159, 176, 187). But Plaintiff identifies these same paragraphs in its Opposition as containing false and misleading statements. Opp. at 5. In fact, Plaintiff bolds and italicizes those statements in its AC and calls them "false and misleading." *See, e.g.*, AC ¶¶ 132, 138. *Third*, the confusion continues when Plaintiff discusses Holley's "direct-to-consumer" ("DTC") statements. In its AC, Plaintiff bolds and italicizes statements that the Company was "***highly focused***" on DTC (AC ¶¶ 106, 150), DTC was the "***fastest growing sales channel***" (*id.* ¶¶ 107, 110, 114, 136, 144), and "***[c]onsumers are increasingly meeting [it] online through [its] DTC channel***." *Id.* ¶ 141. Now Plaintiff says it "does not allege that DTC was not a priority or a source of growth." Opp. at 8 n.8. If Plaintiff cannot decide what it is challenging, how are Defendants or the Court supposed to know?

2

This flip-flopping illustrates why Plaintiff's own authority supports dismissal. In *City of Taylor General Employees Retirement System v. Astec Industries, Inc.*, 29 F.4th 802, 810 (6th Cir. 2022), the Sixth Circuit explained that when examining allegedly fraudulent statements on a motion to dismiss, the court asks, among other things, "What is the statement" and "Why is it misleading"? "If the complaint does not answer all of these questions, it fails to sufficiently plead securities fraud." *Id.* Plaintiff itself cannot explain *what* statements it challenges and *why* those statements are misleading. The AC thus should be dismissed on this ground alone. *See Nicholson v. N-Viro Int'l Corp.*, 2007 WL 2994452, at *7 (N.D. Ohio Oct. 12, 2007) ("plaintiff must identify the exact statements within each public filing that plaintiff contends are false and misleading").

### 1.     Reseller Statements Should Be Dismissed

The Opposition does not support Plaintiff's challenge to statements about resellers, including that Holley "established mutually beneficial and long-term relationships" with resellers, supported by "strong pricing discipline across . . . channels with strict conformance to minimum advertised pricing." Opp. at 5-6. According to Plaintiff, Holley had "seriously damaged" its reseller relationships by (1) "eliminating bulk order discounts," (2) "discounting," and (3) "selling via DTC below Holley's minimum advertised pricing." *Id.* at 6. Those initiatives, Plaintiff says, caused "resellers" to "decrease[] purchases," return "products en masse," and switch to "competitors." *Id.* These allegations fail to meet the PSLRA's heightened burdens on all levels.

To start, Plaintiff alleges no particularized facts supporting its premise; it identifies no specific resellers that "decreased" purchases, "returned" products, or switched to "competitors." Likewise, neither Plaintiff nor the former employees ("FEs") on which Plaintiff bases these allegations claims that the alleged reseller switches even impacted Holley's performance, including which financial metrics the switches supposedly affected, and how they were affected. Plaintiff never alleges with particularity *when* this activity allegedly occurred. If anything,

3

Plaintiff's allegations suggest the pricing strategies occurred *after* Defendants made the challenged statements. For example, Plaintiff states that Holley "essentially eliminated" the bulk order discount in the "fall of 2022"—*over a year after* the Class Period started. AC ¶ 49. Plaintiff similarly alleges that Holley "broadened the discounts available to DTC customers" at "the same time." *Id.* ¶ 50. As for selling DTC "below minimum advertised pricing," Plaintiff alleges that Holley "began experimenting" during "the COVID pandemic, but ramped them up in 2022." *Id.* ¶ 44. Plaintiff never says *when* in 2022 this experimentation allegedly occurred (much less *how many* products it covered or if it harmed Holley's performance). In the end, the Opposition highlights the AC's lack of detail and provides none of the "critical context" required to satisfy the PSLRA. *In re Keithley Instruments, Inc. Sec. Litig.*, 268 F. Supp. 2d 887, 899 (N.D. Ohio 2002).

Plaintiff's cited authorities underscore that lack of detail. For example, in *Bond v. Clover Health Investments, Corp.*, 587 F. Supp. 3d 641, 655 (M.D. Tenn. 2022) (Opp. at 7), the company proclaimed that over 2,000 doctors used its software, while confidential witnesses reported the real usage was less than 10% of that figure. The witnesses based their allegations on conversations with the physicians themselves and "timestamps" showing those physicians did not use the technology. *Id*. Likewise, the former employees in *Shupe v. Rocket Companies, Inc.*, 660 F. Supp. 3d 647, 678-80 (E.D. Mich. 2023) (Opp. at 7), corroborated the defendants' own admissions that they monitored the key performance metric at issue by explaining that management tracked that metric "daily," if not "at least four times per week." Here, by contrast, the FEs offer no such details. *See, e.g.*, AC ¶ 53 (FE3 "recalled hearing" distributors "would do everything in their power to not buy from Holley," but alleges no supporting facts).

Plaintiff insists that Holley admitted "problems with resellers" *after* the Class Period that contradict earlier statements. Opp. at 7. In support, Plaintiff cites a 2023 earnings call where

4

Holley noted that demand had returned to pre-COVID levels. *Id.* But that statement did not discuss resellers, and in any event tracks what Holley said for years about the pandemic. *See* Ex. 1 (Dkt. 42-2) at 7, 55 (warning it remained "difficult to determine the full impact" the pandemic will have on demand, and Company could experience "fluctuations in demand as a result of the pandemic"). In fact, Plaintiff ignores what Holley said about resellers on that same call. Far from admitting "problems," Holley stated, "we have great relationships with our distributors, wholesalers, small shops . . . they are a vital part of our business mix." Ex. 5 (Dkt. 42-6) at 9.

Finally, Plaintiff does not even try to argue that statements about "mutually beneficial," "long-term," and "strong" relationships, and "pricing discipline" (and others Defendants identified as non-actionable corporate optimism) are "capable of objective verification," as required to plead material falsity. *In re Ford Motor Co. Sec. Litig.*, 381 F.3d 563, 570 (6th Cir. 2004); Mot. at 12; *In re Upstart Holdings, Inc. Sec. Litig.*, 2023 WL 6379810, at *12 (S.D. Ohio Sept. 29, 2023) (Opp. at 14) ("value," "strength," and "compelling and valuable" benefits dismissed).

### 2.    Acquisition Statements Should Be Dismissed

Plaintiff concedes that statements about Holley's focus on M&A, acquisition pipeline, and use of M&A to increase market position are not false or misleading. Opp. at 11 n.10. Plaintiff still challenges, however, statements about "cost synergies" from acquisitions, and that the Company was "meaningfully accelerating" integration, was positioned to "continue to acquire and integrate" acquisitions, and had a "track record of recent acquisitions" that reflected an ability to complete "transformational acquisitions." *Id.* at 9. According to Plaintiff, these statements were false because Holley had failed to "successfully integrate and capture synergies from acquired companies." *Id.* Challenges to these statements should be dismissed for four reasons.

*First*, Plaintiff alleges no particularized facts showing the statements were false or misleading when made. In fact, Plaintiff's own allegations show the opposite. For example,

5

Plaintiff concedes that Holley *did* realize synergies from acquisitions; Plaintiff quotes the Company's statement that it generated "$35 million of cost saving synergies" from 2014 to 2020 "through reductions in product cost, elimination of headcount, facility costs and other SG&A expenses." AC ¶ 124. Similarly, Plaintiff cites Holley's belief that its "track record of recent acquisitions" suggested an ability to make "transformational acquisitions" (Opp. at 9)—but Plaintiff omits the rest of the sentence, which listed the two "transformational" acquisitions, "MSD in 2015 and Driven Performance Brands in 2018." AC ¶ 108. Plaintiff alleges no facts suggesting these deals were not transformational; Plaintiff says nothing about them at all.

*Second*, Plaintiff asserts that later "admissions" about the supposed failure to integrate "sharply contrast[ed]" with Defendants' Class Period statements. Opp. at 9. Again, Plaintiff's own allegations refute its argument. Holley never said it had "failed" to integrate or capture synergies from acquired companies. *Id.* Rather, as Plaintiff's Opposition makes clear, in 2023, Holley sought to "accelerate" that "synergy capture" and "finalize successful integrations." *Id.*

*Third*, Plaintiff argues that Holley did not integrate or capture synergies from "acquired companies," but it discusses only one company, AEM. As to that company, contrary to Plaintiff's suggestion, Holley did not "repeatedly assure" the AEM integration "was succeeding." Opp. at 13. Plaintiff itself quotes Defendants' statements that Holley "obviously" had not completed the AEM integration (AC ¶ 123), that there was "still a lot of work to do" (*id.* ¶ 149), and that the AEM integration was not the Company's "primary focus" (*id*. ¶ 166). In context, any statements about AEM were not misleading. *See In re Washington Prime Grp., Inc. Sec. Litig.*, 2024 WL 1307103, at *24 (S.D. Ohio. Mar. 27, 2024) (interpretation of defendants' challenged statements must "account for context"). Plaintiff's anecdotes from one FE who used to work at AEM (FE3) demonstrate Plaintiff's pleading failure. Plaintiff relies on FE3 to assert that the "disastrous" AEM

6

integration "caused brand and reputation damage, pushed away many customers, and compressed margins." Opp. at 11. But neither Plaintiff nor FE3 quantifies the supposed "damage," identifies any (much less "many") lost customers, or details the "compressed margins." Such vague assertions fail the PSLRA pleading test. *Plymouth Cnty. Ret. Ass'n. v. ViewRay, Inc.*, 556 F. Supp. 3d 772, 790 (N.D. Ohio 2021) (statements about backlog not false where employees offered "generalities about the backlog [and] the criteria by which orders are removed or included").

*Finally*, as discussed in the Motion and elsewhere in this brief, the statements Plaintiff purports to challenge—including that Holley was "position[ed]" to "continue to acquire and integrate value-enhancing acquisitions" (Opp. at 9)—are immunized by the PSLRA safe harbor, protected opinions, non-actionable corporate optimism, or all three. *See* Mot. at 15, 18-21.

### 3.     DTC Statements Should Be Dismissed

Plaintiff concedes that Holley's statements about its DTC business were not false or misleading, and thus has forfeited any challenges to those statements. Opp. at 8 n.8; *In re Sonic Corp. Customer Data Sec. Breach Litig.*, 2020 WL 3577341, at *6 & n.70 (N.D. Ohio July 1, 2020) (failing to address argument forfeits claim).

### 4.     Financial Performance Statements Should Be Dismissed

Plaintiff now admits that Holley's financial statements were accurate. *See* Opp. at 11. So Plaintiff pivots, contending instead that the Company misleadingly "painted a rosy picture of sustainable strong financial results." *Id.* But as the Sixth Circuit concluded five months ago, the "disclosure of accurate historical data does not become misleading even if less favorable results might be predictable by the company in the future." *Kolominsky v. Root, Inc.*, 100 F.4th 675, 686 (6th Cir. 2024). That is particularly true here, as Holley promised nothing about the future. Just the opposite, Holley warned that its "operating results have fluctuated . . . in the past and can be expected to continue to fluctuate in the future," and thus "historical results of operations may not

be indicative of future performance." Ex. 1 at 54; Ex. 2 (Dkt. 42-3) at 42. The Sixth Circuit affirmed dismissal where the company included nearly identical warnings. *See Root*, 100 F.4th at 687 (company "warned that historically accurate data may not be indicative of future results"). In any event, these forecasts should be dismissed as forward-looking statements protected by the safe harbor (*see* Section 5), opinions, or vague expressions of corporate optimism. *See City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*, 450 F. Supp. 3d 379, 400 (S.D.N.Y. 2020) ("existing customer relationships" and "best-in-class channels" "provide a strong platform to drive rapid growth" dismissed as "non-actionable puffery") (Opp. at 10); Mot. at 18-19.

### 5.     Forward-Looking Statements Are Not Actionable

Plaintiff offers four reasons why the PSLRA's safe harbor purportedly does not apply to the forward-looking statements Defendants identified in the Motion, and all fail. *See* Opp. at 15. *First*, Plaintiff asserts that seven statements were not forward-looking. Opp. at 15 (listing AC ¶¶ 108-109, 112-113, 141, 152, 190). But Defendants did not argue that five of those statements were forward-looking. Mot. at 19 n. 6. And Plaintiff's own authority confirms the others *were* forward-looking. Specifically, statements that Holley was "aggressively pursuing strategies to drive higher productivity," was "continuing to make progress integrating acquired businesses" (AC ¶ 190), and "believe[s]" its "scalable business platform" positions Holley "to continue to acquire and integrate value-enhancing acquisitions" (*id.* ¶ 143) are similar to those that have been protected by the safe harbor. *See Evoqua*, 450 F. Supp. 3d at 397-98 (Opp. at 10) (company would "continue to evaluate and pursue accretive touch-in acquisitions" was forward-looking); *see also Stein v. U.S. Xpress Enters., Inc.*, 2020 WL 3584800, *14 (E.D. Tenn. June 30, 2020) (market "presents us with an opportunity" and "continuing to benefit" from initiatives was forward-looking).

*Second*, Plaintiff incorrectly contends the "safe harbor does not apply to omissions." Opp. at 15. The statute specifically applies to "omission[s] of a material fact necessary to make the

8

statement not misleading." 15 U.S.C. § 78u-5(c)(1).

*Third*, Plaintiff asserts the safe harbor does not immunize forward-looking statements when "made with actual knowledge of their falsity." Opp. at 15-16. Wrong again. The safe harbor offers two *separate* "layers of protection." *Norfolk Cnty. Ret. Sys. v. Tempur-Pedic Intern., Inc.*, 22 F. Supp. 3d 669, 680 (E.D. Ky. 2014), *aff'd sub. nom. Pension Fund Grp. v. Tempur-Pedic Intern., Inc.*, 614 F. App'x 237 (6th Cir. 2015). The PSLRA shelters forward-looking statements that *either* are identified as forward-looking and accompanied by meaningful cautionary language *or* are not made with actual knowledge of falsity. *See* 15 U.S.C. § 78u-5(i), 5(c)(1)(B)(i).

*Finally*, Plaintiff insists that the "adequacy of cautionary language" is "not appropriately resolved on a motion to dismiss." Opp. at 16. This is wrong, too. The statute instructs that on "any motion to dismiss," the Court "shall consider" "any cautionary statement accompanying the forward-looking statement." 15 U.S.C. § 78u-5(e). Holley's cautionary statements were not "vague" as Plaintiff suggests but (as its own authority confirms) "addressed precisely the risks" Plaintiff alleges. *Evoqua*, 450 F. Supp. 3d at 398-99 (Opp. at 10). For example, Holley warned about "fluctuations in demand as a result of the pandemic." Ex. 1 at 7, 55. Holley likewise cautioned that results could suffer if it failed "to maintain relationships with retail partners." Ex. 2 at 6. And Holley advised that it may not be able to "successfully integrate" acquired companies or "effectively manage the combined business following the acquisition." *Id.* at 24; Ex. 1 at 28. Plaintiff ignores this (and other) cautionary language, proclaiming instead that the warnings were "inadequate" because the "warned-of events were already occurring." Opp. at 16. Again, Plaintiff ignores Sixth Circuit law that disclosures like Holley's adequately "warn an investor of what harms may come to their investment. They are not meant to educate investors on what harms are currently affecting the company." *Bondali v. Yum! Brands, Inc.*, 620 F. App'x 483, 491 (6th Cir. 2015).

### 6. Defendants' Opinion Statements Are Not Actionable

The AC includes at least 28 non-actionable opinion statements. *See* Mot. at 20 (citing AC paragraphs). In its Opposition, Plaintiff discusses only one of those statements, and thus has forfeited challenges to the rest. *See* Opp. at 14; *Sonic*, 2020 WL 3577341, at *6 & n.70. As to the one statement Plaintiff does address—Tomlinson's comment that "we do think there is far more demand there than is visible in our numbers, hence my comment that we believe demand for our products is solid"—Plaintiff contends that Tomlinson (1) "assured" that demand "was above verifiable thresholds"; and (2) omitted "problems surrounding Holley's resellers." Opp. at 14-15. Plaintiff is wrong on both. First, Tomlinson did not "assure" anything. Plaintiff omits the part of the same statement where Tomlinson explained: "after all the COVID lockdowns occurred," "DTC charged right on . . . and resellers pulled back dramatically. And the conditions were such at the time that they had to come right back in within a month or 2 . . . . *I'm not suggesting that, that's going to happen this time. The economic conditions, I think, are much different*." AC ¶ 183 (emphasis added). Investors read a statement "in light of all its surrounding text," including "hedges" and "disclaimers." *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 190 (2015). In context, Tomlinson expressed his opinion, and did not "assure" that Holley's "numbers" would hit any threshold. *See Stein*, 2020 WL 3584800, at *30 (plaintiff's interpretation of statement was "untenable" when read in context). Second, Plaintiff never alleges that Tomlinson knew about (or concealed) reseller "problems." On the contrary, Plaintiff concedes that Tomlinson said, "we've got some categories that are up, some categories that are down. We wanted to kind of talk about both sides of that to be fair and balanced." AC ¶ 183.

### B. Plaintiff Has Not Alleged a "Strong Inference" of Scienter

#### 1. Plaintiff Alleges None of the *Helwig* Factors

Plaintiff's Opposition confirms it cannot meet its heavy burden to plead a strong inference

10

of scienter.  Conceding it does not allege most of the factors courts evaluate to assess scienter ("*Helwig* factors"), Plaintiff insists the factors are not a "pleading necessity."  Opp. at 18 (citing *Helwig v. Vencor, Inc.*, 251 F.3d 540 (6th Cir. 2001)).  That argument misses the point.  Although "the *Helwig* factors are non-exhaustive," failure to plead them "indicates the absence of scienter." *In re The Goodyear Tire & Rubber Co. Sec. Litig.*, 436 F. Supp. 2d 873, 900 (N.D. Ohio 2006). Indeed, last year, the Sixth Circuit affirmed dismissal of a complaint with even more particularized allegations than Plaintiff's here, concluding that the "tenuous application" of three *Helwig* factors, "together with the complete absence of the rest, supports the conclusion that the [plaintiff] has not alleged a strong inference of scienter." *Teamsters Loc. 237 Welfare Fund v. ServiceMaster Glob. Holdings, Inc.*, 83 F.4th 514, 534 (6th Cir. 2023); *see also, e.g.*, *Doshi v. Gen. Cable Corp.*, 823 F.3d 1032, 1042 (6th Cir. 2016) (absence of "[s]even factors favor rejecting a scienter inference").

In its Opposition, Plaintiff points in vain to just two of the nine factors, but the failure to plead those two factors, combined with the absence of the others, "particularly the lack [of] insider trading, suggests that the complaint faces an uphill climb to establish that any of the Defendants acted with scienter." *Loc. 295/Loc. 851 IBT Emp. Grp. Pension Tr. & Welfare Fund v. Fifth Third Bancorp.*, 731 F. Supp. 2d 689, 718 (S.D. Ohio 2010).

**Divergence Between Internal Reports and External Statements (*Helwig* Factor 2).** Plaintiff contends that Defendants had "access to reports generated by Sightline," which showed "real-time sales data and red flags of cancellations and decreasing sales from repeat customers." Opp. at 20.  But to meet this factor, Plaintiff must plead "specific information," not just the idea that "[d]efendants could regularly track sales data," and a "general assertion about what plaintiffs think the data showed." *Gruhn v. Tween Brands, Inc.*, 2009 WL 1542795, at *8 (S.D. Ohio June 2, 2009).  Here, Plaintiff alleges no facts suggesting any Defendant reviewed any report, much less

when they reviewed it, what the report said, or if the report contradicted any public statement. *See id.* (no scienter where defendants "had access to extensive company data on sales, forecasted sales, and markdowns, including daily and weekly reports and market analysis reports").

**Closeness in Time of Allegedly Fraudulent Statement and Later Disclosure of Inconsistent Information (*Helwig* Factor 3).** Plaintiff argues that the "temporal proximity" between Defendants' statements and the purported corrective disclosures "supports scienter." Opp. at 23. But this factor supports scienter only where the later disclosure is "inconsistent with the allegedly fraudulent statements or omissions." *Kolominsky v. Root, Inc.*, 667 F. Supp. 3d 685, 713 (S.D. Ohio 2023). Plaintiff identifies two statements, and both track the later disclosures. Opp. at 23. First, Plaintiff notes that on May 12, 2022, Defendants "reaffirmed FY22 guidance and said that DTC 'remains strong.'" Two-and-a-half months later, Holley lowered its full-year guidance. For Plaintiff's theory to work, Defendants would have had to know *in May* that demand for the next seven months would be weak, making its guidance impossible to meet. But that is not what Plaintiff alleges. Just the opposite, Plaintiff concedes that the DTC business remained strong, but the rest of the business fell short of expectations, prompting the guidance reduction. AC ¶ 169. Plaintiff alleges no facts that Defendants knew (and concealed) about future disappointing reports. In fact, Holley stated in May that resellers could "pull back and reduce their inventory when they become concerned about the economy." *Id.* ¶ 162.

Second, Plaintiff tries to contrast Holley's November 2022 statements about (i) "solid demand we've seen for our products" and (ii) M&A synergy "progress" with statements three months later. Opp. at 23. But again, the later statements track the earlier ones. On demand, in November 2022, Tomlinson said he was "pleased with the solid demand," noting DTC sales "were up 11%." AC ¶ 185. Months later, acting CEO Michelle Gloeckler's supposedly inconsistent

12

statement is nearly identical to Tomlinson's earlier one: "We are pleased with the continued solid demand we are seeing through our DTC sales channel." Ex. 5 at 5. And on M&A synergies, in November, Tomlinson said, "we're continuing to make progress integrating acquired businesses in order to drive further synergies." AC ¶ 190. Gloeckler later echoed Tomlinson and said 2023 efforts would focus "on finalizing successful integrations and synergy capture." Ex. 5 at 8.

### 2.    Plaintiff's Other Arguments Fail to Support Scienter

The few other scienter arguments Plaintiff identifies in its Opposition lack the particularity the PSLRA demands. Indeed, Plaintiff's arguments mirror those that courts in the Sixth Circuit consistently have rejected as insufficient to meet the heightened pleading burden:

| Plaintiff's Argument | Cases Rejecting the Same Argument at Pleading Stage |
|---|---|
| Defendants were **"hands-on"** executives. Opp. at 19. | *ServiceMaster*, 83 F.4th at 531 (no scienter based on executive being "intimately aware" of information underlying disclosures). |
| Tomlinson was Holley's **"chief operating decision maker,"** Bardos was Holley's "principal financial and accounting officer," and Nimmagadda was "EVP of Corporate Development & New Ventures." Opp. at 19-20. | *Root*, 667 F. Supp. 3d at 713 ("simply being in a high-level role with a company is insufficient to give rise to a finding of scienter"); *Pittman v. Unum Grp.*, 861 F. App'x 51, 55 (6th Cir. 2021) ("fraudulent intent cannot be inferred merely from the executives' positions in the company and alleged access to information"). |
| Nimmagadda was "**deeply involved** with Holley's M&A and integration efforts" and **attended meetings**. Opp. at 20. | *ServiceMaster*, 83 F.4th at 531 ("mere attendance at meetings" when alleged issues were discussed did not support scienter). |
| Bardos **"signed and certified Holley's financial filings."** Opp. at 20. | *Doshi*, 386 F. Supp. 3d at 841 ("SOX certifications" did not support scienter). |
| Defendants are **"presumed to be aware of matters central to Holley's business."** Opp. at 21. | *Pittman*, 861 F. App'x at 55 ("fact that executives are intimately familiar with a core component of their business does little to suggest fraudulent intent"). |
| Defendants made **"statements about central aspects of Holley's** | *Bondali*, 620 F. App'x at 492 (that defendants "made statements" about relevant issues, "paid close attention" |

| | |
|---|---|
| **business."**  Opp. at 21. | to those issues because they were "core" to company's operations insufficient to support scienter). |

Plaintiff's two remaining scienter arguments fail for similar reasons.

**"Abrupt Departures."**  Plaintiff asserts that Bardos's and Tomlinson's "abrupt departures" support scienter.  Opp. at 22.  Plaintiff did not make this allegation in its AC, *see* AC ¶¶ 213-231, and Plaintiff "may not amend [its] complaint" in its Opposition.  *Schwamberger v. Marion Cnty. Bd. of Elections*, 988 F.3d 851, 859 (6th Cir. 2021).  In any event, the new theory does not support an inference of scienter because Plaintiff alleges no facts explaining "the circumstances" of the departures.  *Teamsters Loc. 237 Welfare Fund v. ServiceMaster Glob. Holdings, Inc.*, 2022 WL 989240, at *34 (W.D. Tenn. Mar. 31, 2022), *aff'd*, 83 F.4th 514, 531 (6th Cir. 2023) (allegations about timing of resignation and other senior executive departures did not "clearly show scienter").  On the contrary, Plaintiff ignores its own allegations that Bardos left to "pursue another opportunity and for personal reasons," AC ¶ 9, and that Tomlinson retired after twenty years at the Company.  *Id.* ¶ 23.  The AC alleges no facts suggesting that either left because they had engaged in misconduct.  Plaintiff's fact-free speculation contrasts with *every* case it cites, where departures coincided with investigations into alleged fraud.  *See Frank v. Dana Corp.*, 646 F.3d 954, 958 (6th Cir. 2011) (defendant left after SEC began investigating company's accounting); *Plagens v. Deckard*, 2023 WL 2711263, at *29 (N.D. Ohio Mar. 30, 2023) (defendant terminated during SEC investigation); *St. Clair Cnty. Emps.' Ret. Sys. v. Acadia Healthcare Co.*, 2021 WL 195370, at *2, *7 (M.D. Tenn. Jan. 20, 2021) (defendants "were abruptly fired" and "resigned with no notice" after 14-month investigation); *Willis v. Big Lots, Inc.*, 2016 WL 8199124, at *8 (S.D. Ohio Jan. 21, 2016) (defendant left shortly after SEC investigation).

**Post-Class Period "Admissions."**  Plaintiff says two post-Class Period statements support scienter.  This argument fails for two reasons.  *First*, the statements say nothing about the

14

Individual Defendants or their states of mind. *See In re Biogen Sec. Litig.*, 857 F.3d 34, 44 (1st Cir. 2017) ("admissions" not indicative of scienter because they did not "provide particularized insight into the defendants' knowledge at the time of the alleged misstatements"). *Second*, the statements do not suggest any earlier statement was false. For example, Plaintiff notes that in March 2023, Holley stated that COVID-related stimulus "distorted" financial results in 1Q22. Opp. at 24. But the Company repeatedly warned that the pandemic's "impact on consumer confidence and spending" was "highly uncertain and ever-changing," making it "extremely difficult to predict how the Company's business and operations will be affected." Ex. 2 at 15. Similarly, Plaintiff claims Holley admitted it "had struggled" to "realize" M&A synergies. Opp. at 24. The Company said nothing of the sort. Rather, it stated that "[o]ver the past 3 years, our team has completed 16 acquisitions, integrated 13 ERP systems and consolidated 160,000 square feet of facilities. These acquisitions contributed nearly $175 million of sales in 2022." Holley planned to realize $10 million more "synergies over the next 12 to 18 months." Ex. 5 at 5.

## III.   CONCLUSION

For these reasons, the AC should be dismissed with prejudice.

Dated: September 20, 2024

Respectfully submitted,

/s/ Sean M. Berkowitz
Sean M. Berkowitz (*pro hac vice*)
Eric R. Swibel (*pro hac vice*)
Nicholas J. Siciliano (*pro hac vice*)
Latham & Watkins LLP
330 North Wabash Street, Suite 2800
Chicago, IL 60611
Telephone: 312.876.7700
Facsimile: 312.993.9767
Email: sean.berkowitz@lw.com
         eric.swibel@lw.com
         nicholas.siciliano@lw.com

Michele D. Johnson (*pro hac vice*)
Latham & Watkins LLP
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
Telephone: 714.540.1235
Facsimile: 714.755.8290
Email: michele.johnson@lw.com

Michael P. Abate
Kaplan Johnson Abate & Bird LLP
710 W. Main St., 4th Floor
Louisville, KY 40202
Telephone: 502.540.8280
Email: mabate@kaplanjohnsonlaw.com

*Attorneys for Defendants Holley Inc., Tom Tomlinson, Dominic Bardos, and Vinod Nimmagadda*

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 20, 2024, I electronically filed the foregoing document with the Court via CM/ECF, which will automatically send notice and a copy of same to counsel of record via email.

/s/ *Sean M. Berkowitz*
Sean M. Berkowitz