**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**AT BOWLING GREEN**

| | |
|---|---|
| CITY OF FORT LAUDERDALE GENERAL EMPLOYEES' RETIREMENT SYSTEM, on Behalf of Itself and All Others Similarly Situated, | |
| Plaintiff, | Case No. 1:23-cv-148-GNS |
| v. | Judge Greg N. Stivers |
| HOLLEY INC., f/k/a EMPOWER LTD., TOM TOMLINSON, and DOMINIC BARDOS, | |
| Defendants. | |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE
TO FILE SUPPLEMENTED AMENDED COMPLAINT**

Sean M. Berkowitz (*pro hac vice*)
Eric R. Swibel (*pro hac vice*)
Nicholas J. Siciliano (*pro hac vice*)
Latham & Watkins LLP
330 North Wabash Street, Suite 2800
Chicago, IL 60611
Telephone: 312.876.7700
Facsimile: 312.993.9767
Email: sean.berkowitz@lw.com
          eric.swibel@lw.com
          nicholas.siciliano@lw.com

Michele D. Johnson (*pro hac vice*)
Latham & Watkins LLP
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
Telephone: 714.540.1235
Facsimile: 714.755.8290
Email: michele.johnson@lw.com

Michael P. Abate
Kaplan Johnson Abate & Bird LLP
710 W. Main St., 4th Floor
Louisville, KY 40202

Telephone: 502-540-8280
Email:   mabate@kaplanjohnsonlaw.com

**TABLE OF CONTENTS**

I.  Introduction ..................................................................................................................1

II.  Factual Background .......................................................................................................3

    A.  Plaintiff Files Its Original and Amended Complaints and Defendants Move to Dismiss ......................................................................................................3

    B.  Plaintiff Tries to Amend the AC Again Months After the MTD Is Fully Briefed.........................................................................................................4

III.  Argument .......................................................................................................................5

    A.  Amendment Is Futile Because the PSAC Fails to Allege a Strong Inference of Scienter ...................................................................................6

    B.  Amendment Is Futile Because the PSAC Fails to Allege Falsity ...........................9

        1.  The PSAC Does Not Allege Falsity With Particularity..............................9

        2.  The PSAC Does Not Adequately Allege a False or Misleading Statement................................................................................................10

IV.  Conclusion ..................................................................................................................14

# TABLE OF AUTHORITIES

## CASES

*City of Pontiac Gen. Emps.' Ret. Sys. v. Stryker Corp.*,
 865 F. Supp. 2d 811 (W.D. Mich. 2012) ........................................................... 11, 13

*Darby v. Century Bus. Servs., Inc.*,
 96 F. App'x 277 (6th Cir. 2004) ...................................................................... 13

*Doshi v. Gen. Cable Corp.*,
 2015 WL 2229233 (E.D. Ky. May 12, 2015) .................................................. 6, 7

*Gruhn v. Tween Brands, Inc.*,
 2009 WL 1542795 (S.D. Ohio June 2, 2009) ..................................................... 8

*In re Aetna Sec. Litig.*,
 617 F.3d 272 (3d Cir. 2010)............................................................................... 13

*In re Ferro Corp.*,
 2007 WL 1691358 (N.D. Ohio June 11, 2017)................................................... 9

*In re Ford Motor Co. Sec. Litig.*,
 381 F.3d 563 (6th Cir. 2004) ............................................................................. 13

*In re Huntington Bancshares Inc. Sec. Litig.*,
 674 F. Supp. 2d 951 (S.D. Ohio 2009) ......................................................... 7, 12

*In re Keithley Instruments, Inc. Sec. Litig.*,
 268 F. Supp. 2d 887 (N.D. Ohio 2002)............................................................. 12

*In re Target Corp. Sec. Litig.*,
 275 F. Supp. 3d 1063 (D. Minn. 2017)............................................................. 12

*In re Yum! Brands Inc. Sec. Litig.*,
 73 F. Supp. 3d 846 (W.D. Ky. 2014)................................................................. 12

*Kuyat v. BioMimetic Therapeutics, Inc.*,
 747 F.3d 435 (6th Cir. 2014) ........................................................................... 5, 6

*Miller v. Champion Enters. Inc.*,
 346 F.3d 660 (6th Cir. 2003) ............................................................................... 5

*Nicholson v. N-Viro Int'l Corp.*,
 2007 WL 2994452 (N.D. Ohio Oct. 12, 2007) ................................................... 9

*Pittman v. Unum Grp.*,
 2020 WL 2846929 (E.D. Tenn. June 1, 2020)..................................................... 6

*Riverview Health Inst. LLC v. Med. Mut. of Ohio*,
  601 F.3d 505 (6th Cir. 2010) ........................................................................... 6

*Saraf v. Ebix, Inc.*,
  2023 WL 4561655 (S.D.N.Y. July 17, 2023) ..................................................... 7

*SEPTA v. Orrstown Fin. Servs., Inc.*,
  2015 WL 3833849 (M.D. Pa. June 22, 2015)................................................... 13

*Stein v. U.S. Xpress Enters., Inc.*,
  2020 WL 3584800 (E.D. Tenn. June 30, 2020)................................................. 7

*Teamsters Loc. 237 Welfare Fund v. ServiceMaster Glob. Holdings, Inc.*,
  83 F.4th 514 (6th Cir. 2023) ............................................................................ 8

*United Food & Com. Workers Int'l Union Loc. 464A v. Pilgrim's Pride Corp.*,
  2022 WL 684169 (D. Colo. Mar. 8, 2022) ...................................................... 13

*Write Start Early Christian Educ. Ctr., LLC v. Nat'l Fire & Marine Ins.*,
  836 F. App'x 362 (6th Cir. 2020) ............................................................... 6, 10

## STATUTES

15 U.S.C. § 78u-4(b)(1)(B)....................................................................................9

## RULES

Fed. R. Civ. P. 15..................................................................................................5

## I.    INTRODUCTION

Seven months after Defendants moved to dismiss the amended complaint, and nearly two years after the purported Class Period ended, Plaintiff wants to amend its complaint again.  It does not seek to add any new allegedly false or misleading statements or any facts suggesting Defendants acted with scienter.  Plaintiff instead wishes to sprinkle in comments made by non-party and Holley CEO Matthew Stevenson during four earnings calls in 2024.  Although amendments are generally "freely given" under Federal Rule of Civil Procedure 15, that permissive standard does not apply to cases (like this one) that arise under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), which imposes heightened requirements to allege both falsity and scienter.  In the pending motion to dismiss, Defendants detailed why the amended complaint fails to plead the scienter and falsity elements with particularity.

With that backdrop, to meet the amendment standard in a securities class action, Plaintiff needs to show that further supplementing the amended complaint would not be futile—*i.e.*, that the proposed new allegations would allow the claims to survive by pleading *both* scienter and falsity with particularity.  But the proposed supplemental "facts" do not even purport to bolster the amended complaint's scienter allegations.  That necessarily makes amendment futile, and the Court can deny Plaintiff's motion on that ground alone.

If the Court wades into the new allegations, the result is the same.  Indeed, futility is clear from Stevenson's comments themselves.  The first three relate to the same topic:  during the February 28, 2024 earnings call, and repeated at the May 8 and August 7, 2024 calls, Stevenson noted that previously, Holley had not included distribution partners in sales promotion efforts, but now was doing so.  Plaintiff did not deem this fact important at the time, considering Plaintiff did not mention it in the amended complaint (filed in late-April 2024) or in opposing the pending motion to dismiss (filed on August 16, 2024).  And for good reason, since the comments (1) post-

1

date the end of the Class Period by over a year; (2) do not undermine any statement Plaintiff challenged in the amended complaint (and thus do not support falsity); and (3) say nothing about what the Individual Defendants knew at the time they made the challenged statements (and thus do not support scienter). Indeed, Defendants never said anything in the Class Period about inviting distributors to participate in sales promotions.

Similarly, Plaintiff wishes to add Stevenson's comments at a November 8, 2024 earnings call that Holley was now enforcing its minimum advertised price ("MAP") policy "for over 20,000 SKUs," "12x more than it was just a short time ago." These comments, like the earlier ones, (1) post-date the end of the Class Period by almost two years; (2) do not undermine any statement Plaintiff challenged in the amended complaint (and thus do not support falsity); and (3) say nothing about what the Individual Defendants knew at the time they made the challenged statements (and thus do not support scienter). Indeed, Defendants never said anything in the Class Period about how it enforced MAP, much less that it did so for any number of SKUs.

If anything, the inferences Plaintiff seeks to draw from Stevenson's comments contradict its own allegations. For example, Plaintiff now asserts that "Holley excluded resellers from pricing promotions." But Stevenson said nothing about "pricing" promotions, and Plaintiff alleged in the amended complaint (and again in the proposed supplemented amended complaint) that Holley *included* resellers in pricing promotions both before and during the Class Period. Likewise, Plaintiff now asserts that "Holley failed to adhere to MAP on the vast majority of its SKUs." Again, Stevenson said nothing about "adhering" to MAP, and Plaintiff alleged in the amended complaint (and the proposed supplemented complaint) that Holley both enforced the MAP policy and banned resellers that violated it. And in any event, amendment is futile because the few Class Period statements that Plaintiff purports to challenge—Holley's "mutually beneficial and long-

2

term relationships" with resellers and ability to "maintain strong pricing discipline across [its] channels with strict conformance to minimum advertised pricing"—are non-actionable expressions of corporate optimism, which Plaintiff does not even address.

The proposed supplemented amended complaint does not fix the flaws in Plaintiff's prior pleading. As a result, any amendment would be futile, and Plaintiff's motion should be denied.

## II.     FACTUAL BACKGROUND

### A.     Plaintiff Files Its Original and Amended Complaints and Defendants Move to Dismiss

Plaintiff filed its original complaint well over a year ago, on November 6, 2023. Dkt. 1. Almost six months later, on April 26, 2024, Plaintiff filed an amended complaint ("AC"). Dkt. 36. The two complaints advanced the same theory—that between July 21, 2021 and February 6, 2023, Holley executives allegedly made false or misleading statements about the Company's business, operations, and prospects. Dkt. 1 ¶ 6; Dkt. 36 ¶ 6. Specifically, Plaintiff asserted that former CEO Tom Tomlinson, former CFO Dominic Bardos, and Executive Vice President of Corporate Development and New Ventures Vinod Nimmagadda lied about Holley's burgeoning "direct-to-consumer" ("DTC") business, mergers and acquisitions ("M&A"), and reseller relationships. Dkt. 36 ¶ 5.

Defendants moved to dismiss the AC on June 28, 2024, explaining that Plaintiff had failed to meet its heightened burden under the PSLRA to plead (1) a false or misleading statement with particularity; and (2) a strong inference of scienter—both of which independently require dismissal. *See* Dkt. 42 ("MTD"). Plaintiff opposed Defendants' MTD last August (Dkt. 43), and Defendants filed their reply on September 20, 2024. Dkt. 44 ("Reply").

**B.**    **Plaintiff Tries to Amend the AC Again Months After the MTD Is Fully Briefed**

Over three months after MTD briefing closed, Plaintiff moved to amend the complaint again. It does not purport to expand the Class Period or add any new allegedly false or misleading statements. Nor does it try to plead new facts supporting the Individual Defendants' scienter. Instead, Plaintiff hopes to add snippets of comments made by non-Defendant Holley CEO Matthew Stevenson during earnings calls between February and November *2024*—over a year (and as to the November 2024 comments, almost *two years*) *after* the Class Period ended.

For example, on February 28, 2024 (two months before Plaintiff filed the AC), Stevenson discussed new sales promotions during an earnings call: "In addition, we have made improvements to our sales promotion. Previously, our distribution partners were not included in our promotional efforts. This resulted in them not promoting our products as desired during these time periods and in some cases even promoting our competitors' products to preserve their margins. We have addressed this issue in our new approach." Proposed Supplemented Amended Complaint ("PSAC") ¶ 221. Stevenson made similar comments during the next two earnings calls, both of which occurred before Plaintiff opposed Defendants' motion to dismiss the AC last summer. In May 2024, Stevenson echoed his prior comment and noted, "I think we covered on the last earnings call, when Holley ran a promotion, we didn't include our distribution partners and we felt that was a real miss as an important part of our go-to-market strategy. So now going forward, we support them and during this promotional time period and work together and we're continuing to optimize that as we work on future promotions." *Id.* ¶ 223. Stevenson said something similar three months later, explaining, "[t]he things we're implementing with our distribution partners in terms of promotional planning, launch planning, and just closer collaboration were things that never existed before." *Id.* ¶ 224.

Then during the November 2024 earnings call, Stevenson discussed Holley's evolving MAP enforcement program. He stated, "MAP enforcement is now in place for over 20,000 SKUs, which is 12 times more than it was just a short time ago." *Id.* ¶ 227. He expanded on his answer later in the call, noting that pricing "is a discipline we've been working on putting into this organization for over the last year. And one of the things relative to MAP policy alignment was the number of SKUs we were monitoring and enforcing was very low, compared to what we're doing now." *Id.* ¶ 228. Stevenson believed the added tracking "builds confidence in your distribution partners to invest in your brands because they know you're going to hold everybody on a level playing field and people won't be undercutting them in the market." *Id.* ¶ 229.

By Plaintiff's own admission, Stevenson's comments did not address Holley's DTC business or its M&A activity. Rather, according to Plaintiff, the comments "shine additional light on the falsity of Defendants' Class Period statements" about "pricing discipline" and "strict adherence to minimum advertised pricing." Mot. at 11. But Stevenson's comments do nothing to suggest that Defendants' statements years earlier were false and misleading. More importantly, the comments do not address Defendants' states of mind at all. Either way, the proposed supplements do not cure the deficiencies in the AC. Further amendment thus would be futile, and Plaintiff's motion should be denied.

## III.   ARGUMENT

Although courts "freely give leave" to amend or supplement pleadings "when justice so requires," Fed. R. Civ. P. 15(a)(2), those "usual liberal standards under Rule 15 do not apply to cases governed by the PSLRA." *Kuyat v. BioMimetic Therapeutics, Inc.*, 747 F.3d 435, 445 (6th Cir. 2014); *see also Miller v. Champion Enters. Inc.*, 346 F.3d 660, 692 (6th Cir. 2003) (PSLRA

5

restricts the ability of plaintiffs to amend their complaint and limits the scope of Rule 15(a)).[1]

Indeed, the "purpose of the PSLRA would be frustrated if district courts were required to allow

repeated amendments to complaints filed under the PSLRA." *Kuyat*, 747 F.3d at 445. And so,

when a proposed supplement would not "cure the defects" of the prior pleading, amendment would

be futile and should be denied. *Pittman v. Unum Grp.*, 2020 WL 2846929, at *24 (E.D. Tenn.

June 1, 2020); *see also Doshi v. Gen. Cable Corp.*, 2015 WL 2229233, at *4 (E.D. Ky. May 12,

2015) (denying motion for leave to amend federal securities complaint and noting that the court

"need not permit amendment of a complaint if the amendment would be futile").

Plaintiff's "new" allegations—comprised solely of quotes from a non-Defendant long

after the Class Period ended—"are no better than the old ones." *Write Start Early Christian Educ.

Ctr., LLC v. Nat'l Fire & Marine Ins.*, 836 F. App'x 362, 364 (6th Cir. 2020). Indeed, as explained

below, they add nothing to Plaintiff's existing scienter allegations, which alone makes the motion

futile. And at best, the new "facts" contradict Plaintiff's own falsity allegations. The motion thus

should be denied. *See Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505 (6th Cir.

2010) (Mot. at 8) (affirming denial of leave to amend where amendment would be futile).

### A. Amendment Is Futile Because the PSAC Fails to Allege a Strong Inference of Scienter

As detailed in Defendants' motion to dismiss, the operative complaint lacks the

particularized allegations of scienter the PSLRA requires. MTD at 21-25. Supplementing the

complaint would be futile because Plaintiff concedes the PSAC contains no new, particularized

allegations suggesting that any Defendant acted with scienter. *See* Mot. at 11 (proposed

amendment purportedly would "shine additional light on the *falsity*" of Defendants' Class Period

---

[1] Plaintiff cites cases throughout the Motion applying Rule 15 and permitting amendment, but none of those cases involved the PSLRA. *See* Mot.

statements about MAP and pricing discipline) (emphasis added).  And for good reason, since Stevenson's post-Class Period statements have nothing to do with what Defendants "did or did not know" when they made the challenged statements years before.  *Kuyat*, 747 F.3d at 442 (document released after end of class period "and well after the allegedly misleading statements were made" did "not support a strong inference of scienter").

In the PSAC's "scienter" section, Plaintiff alleges that "belated" disclosures by Stevenson "make clear that Holley had little to no pricing discipline or MAP enforcement" during the Class Period.  PSAC ¶ 253.  But Stevenson is not a Defendant, and did not even work at the Company during the Class Period.  Mot. at 1.  His state of mind thus is irrelevant to the scienter analysis.  *In re Huntington Bancshares Inc. Sec. Litig.*, 674 F. Supp. 2d 951, 963 (S.D. Ohio 2009) (statements "irrelevant" because witness did not work at company during class period).  To this end, and fatal to its claims, neither Stevenson nor Plaintiff purports to explain what *Defendants* knew about "pricing discipline" or "MAP enforcement" *at any time*, much less during the Class Period.  *See, e.g.*, *Stein v. U.S. Xpress Enters., Inc.*, 2020 WL 3584800, at *40 (E.D. Tenn. June 30, 2020) (witnesses did not support scienter where they "provide[d] essentially no direct information as to what the Exchange Act Defendants might have known and when, and are not alleged to have had any contact with them").  And because Plaintiff's new allegations shed no "light on what Defendants knew" during the Class Period, they cannot support a strong inference of scienter.  *Saraf v. Ebix, Inc.*, 2023 WL 4561655, at *7 (S.D.N.Y. July 17, 2023); *see also Doshi*, 2015 WL 2229233, at *4 (denying leave to amend despite plaintiff's emphasis on alleged "admission" of falsity because new allegations did not show what defendants knew "at the time false statements were made").

That leaves Plaintiff with its remnant scienter assertions from the AC, which, as Defendants

7

explained in the MTD, fall far short of the high PSLRA pleading hurdle. *See* MTD at 21-25; Reply at 10-15. Among other flaws, the PSAC, like the AC, (1) identifies no motive for the alleged fraud (no Defendants are alleged to have sold Holley shares in the Class Period); (2) fails to allege most of the non-exhaustive list of factors ("*Helwig* factors") courts in the Sixth Circuit consider in assessing scienter; and (3) recites allegations that have been repeatedly rejected as insufficient to establish a "strong" and "cogent" inference of scienter. MTD at 21-25; Reply at 10-15; *see also Teamsters Loc. 237 Welfare Fund v. ServiceMaster Glob. Holdings, Inc.*, 83 F.4th 514, 534 (6th Cir. 2023) ("tenuous application" of three *Helwig* factors, "together with the complete absence of the rest, supports the conclusion that the [plaintiff] has not alleged a strong inference of scienter").

Indeed, Plaintiff's most specific "fact" about Defendants' states of mind is not specific at all. As in the AC, Plaintiff asserts in the PSAC that Defendants had "access" to "data" in a software program called Sightline, which allegedly tracked "sales, returns, purchases, shipments, inventories, customer feedback, and other day-to-day activities." PSAC ¶ 244. But to successfully plead a strong inference of scienter based on Defendants' alleged access to data, Plaintiff must plead "specific information," not just the idea that "[d]efendants could regularly track sales data," and a "general assertion about what [Plaintiff] think[s] the data showed." *Gruhn v. Tween Brands, Inc.*, 2009 WL 1542795, at *8 (S.D. Ohio June 2, 2009). Plaintiff added no facts suggesting any Defendant reviewed any report at any specific time, much less when they reviewed it, what the report said, or if the report contradicted any Class Period statement. *See id.* (no scienter where defendants "had access to extensive company data on sales, forecasted sales, and markdowns, including daily and weekly reports and market analysis reports"). As a result, Plaintiff's PSAC still fails to allege a strong inference of scienter, and its current motion should be dismissed on this ground alone.

### B.    Amendment Is Futile Because the PSAC Fails to Allege Falsity

Amending the AC would be futile because the PSAC does not allege a false or misleading statement with particularity. In fact, Plaintiff's new complaint fixes none of the AC's pleading flaws and adds new ones that independently warrant dismissal.

### 1.    The PSAC Does Not Allege Falsity With Particularity

Defendants explained in the MTD that the AC suffered two threshold problems, either of which required dismissal: it failed the PSLRA's mandate to specify (1) "each statement alleged to have been misleading"; and (2) the "reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1)(B). Plaintiff's PSAC does not correct these problems; it exacerbates them. For example, the PSAC *still* pastes large block quotes from Defendants' statements spanning nearly two years. Plaintiff bolds and italicizes snippets from some quotes, *see, e.g.*, PSAC ¶¶ 114, 118, 125, but not others, leaving Defendants (and the Court) to surmise which parts of which statements Plaintiff challenges. Indeed, Plaintiff (again) block quotes identical language from different Holley filings, and bolds and italicizes different parts each time. *See id.* ¶¶ 120, 148, 159. Such a strategy does not "specify each" alleged misleading statement, and amendment is futile for this reason alone. *See Nicholson v. N-Viro Int'l Corp.*, 2007 WL 2994452, at *7 (N.D. Ohio Oct. 12, 2007) ("plaintiff must identify the exact statements within each public filing that the plaintiff contends are false and misleading").

Likewise, rather than tie particular statements to particular reasons why they were allegedly false and misleading, Plaintiff again "compiled several series of statements" and paired them with a slightly revised but still deficient "conclusory list of omissions." *See In re Ferro Corp.*, 2007 WL 1691358, at *19 (N.D. Ohio June 11, 2017). These "vague, redundant, and conclusory allegations" fall short of Plaintiff's pleading burden. *Id.* at *20. Worse, many statements Plaintiff appears to challenge bear no relationship to Plaintiff's revised litany of "reasons." *See id.* at *19.

9

For example, Plaintiff block quotes portions of statements from Holley's Form 10-Q for the third quarter of 2021 and earnings call from that same quarter. PSAC ¶¶ 135-144. According to Plaintiff, these statements were "materially false and misleading" because, among other things, "at all relevant times, Holley excluded resellers from pricing promotions which were offered in the DTC channel and failed to adhere to MAP on the vast majority of its SKUs during the Class Period." *Id.* ¶ 145(a). But Defendants never discussed "pricing promotions," "MAP," or "SKUs" in the 10-Q or the earnings call. *See id.* ¶¶ 135-144. Plaintiff's "new" reasons for falsity have nothing to do with the statements themselves, which means the PSAC suffers the same pleading problems as the AC. *See Write Start*, 836 F. App'x at 364 (amendment is futile where it does not cure problems with original complaint).

### 2. The PSAC Does Not Adequately Allege a False or Misleading Statement

Beyond the threshold pleading deficiencies, Plaintiff's motion should be denied as futile because the PSAC's new additions do not allege falsity with particularity. To start, Plaintiff admits that its proposed additions—Stevenson's post-Class Period comments about sales promotions and MAP enforcement—do not relate to the vast majority of Plaintiff's challenged statements, including statements about M&A, financial performance, future demand, and the DTC business. Challenges to those statements thus should be dismissed for the reasons discussed in Defendants' MTD. *See* MTD at 12-18; Reply at 5-8. As for the few remaining Class Period statements—that Holley had "mutually beneficial relationships with [its] resellers" and an ability to "maintain strong pricing discipline across [its] channels with strict conformance to minimum advertised pricing" (Mot. at 3, 6-7)—Plaintiff did not plead falsity as to those few statements in the AC (MTD at 9-12), and it does not do so again in the PSAC for three reasons.

10

*First*, as to Stevenson's comments in February, May, and August 2024 (long after the Class Period yet before Plaintiff opposed the pending MTD), all discussed the same concept: previously, Holley did not include "distribution partners" in "sales promotion" efforts, but now involved them in "promotional planning" and "launch planning." PSAC ¶¶ 221-225. None of the challenged statements, however, discusses "sales promotions," let alone misleadingly represented that the Company invited distributors to participate in those promotions during the Class Period. Stevenson's statements thus are irrelevant to Plaintiff's purported claims. *See City of Pontiac Gen. Emps.' Ret. Sys. v. Stryker Corp.*, 865 F. Supp. 2d 811, 828-29 (W.D. Mich. 2012) (dismissing where plaintiffs failed to allege facts that "had anything to do with" purported reason for falsity ).

Still, Plaintiff contends that Holley did not operate with "strong pricing discipline" because "Holley excluded resellers from pricing promotions." PSAC ¶ 123(a). But Plaintiff never explains why, how, or even if "pricing discipline" relates to offering "pricing promotions" to resellers. And more importantly, Stevenson never said Holley had excluded distribution partners from "*pricing* promotions." Rather, he explained the Company had started to partner with distributors on "*sales* promotions," including "promotional planning" and "launch planning." PSAC ¶¶ 221-225. In fact, Plaintiff's own allegations in the AC (repeated verbatim in the PSAC) show that resellers *did* participate in "pricing promotions" before and during the Class Period. For example, FE1 stated that "Holley would offer discounts of up to 30% to resellers." PSAC ¶ 49. FE2 similarly noted that "all resellers who had active email addresses on file with Holley were sent notifications regarding the new promotion" that "would effectively allow resellers to buy below the minimum advertised pricing." *Id.* ¶ 52. According to Plaintiff (in the AC and again in the PSAC), Holley expanded that pricing promotion in the Class Period to a "general clearance sale," so resellers "no longer received unique benefits." *Id.* ¶ 53. Plaintiff's supplemented assertion—that resellers did

11

not participate in "pricing" promotions—thus not only is irrelevant to the challenged statements, it contradicts Plaintiff's own allegations.

*Second*, Plaintiff contends that Holley's Class Period statements that "we are able to maintain strong pricing discipline" with "strict conformance to minimum advertised pricing" were false or misleading because Stevenson said, nearly two years later, that the "number of SKUs we were monitoring and enforcing was very low, compared to what we're doing now." PSAC ¶¶ 123(a), 227-228. But the Company never said anything in the Class Period about how it enforced its MAP policy, much less asserted that it did so for any number of products. And Plaintiff provides no support for its assumption that MAP would apply to all SKUs. Mot. at 6-7. That is why Plaintiff's speculative assertion that Holley might only have been enforcing MAP on 2,000 SKUs (instead of the 20,000 SKUs Stevenson mentioned in November 2024) does not render any statement false or misleading. Indeed, Plaintiff alleges no facts suggesting what percentage of Holley's annual revenue those 2,000 SKUs comprised. *See In re Keithley Instruments, Inc. Sec. Litig.*, 268 F. Supp. 2d 887, 899 (N.D. Ohio 2002) (no falsity where plaintiff alleged company was "cutting funding" but "what this mean[t] [was] left entirely unexplained"). Furthermore, striving to enhance MAP enforcement long after the Class Period does not mean Holley failed to act with "strong pricing discipline" during the Class Period. *See In re Huntington Bancshares*, 674 F. Supp. 2d at 966 (post-class period statements not admission as much as acknowledgment that "events had recently changed" defendants' perception); *In re Target Corp. Sec. Litig.*, 275 F. Supp. 3d 1063, 1074 (D. Minn. 2017) (statement that company required a "complete reset" did not make prior statements false or misleading).

Again, Plaintiff's own allegations (both in the AC and repeated verbatim in the PSAC) contradict its argument. According to Plaintiff, "FE2 recalled that if a reseller advertised below

12

the minimum advertised pricing, Holley would place that reseller on a 'Do Not Sell' list and prohibit future sales to that reseller until the reseller correct its advertised pricing." PSAC ¶ 47. FE2 added that Holley shared the list with all employees and updated it "every two weeks." *Id.* Thus, far from suggesting Holley did not enforce MAP during the Class Period, Plaintiff concedes the Company tracked and imposed penalties for MAP violations. *See In re Yum! Brands Inc. Sec. Litig.*, 73 F. Supp. 3d 846, 865 (W.D. Ky. 2014) (defendant's statements about quality of safety program not objectively false where plaintiff's allegations of failed test results "supports Defendants' assertion that such procedures were in place"). That the Company sought to heighten enforcement years after the Class Period does not render statements during the Class Period about "discipline" and "conformance" to MAP false or misleading when made. *See Stryker*, 865 F. Supp. 2d at 827 (fact that company "voluntarily adopted a company-wide initiative to improve its quality and compliance systems" did not suggest defendants knew the company "had serious quality and compliance issues" or had "underspent in those areas").

*Finally*, as Defendants explained in the MTD, statements about "strong pricing discipline," "strict conformance to minimum advertised pricing," and "mutually beneficial" relationships should be dismissed because they represent non-actionable "corporate optimism." MTD at 12; Reply at 5; *see also United Food & Com. Workers Int'l Union Loc. 464A v. Pilgrim's Pride Corp.*, 2022 WL 684169, at *5 (D. Colo. Mar. 8, 2022) ("strong relationships" with "key customers" dismissed); *In re Aetna Sec. Litig.*, 617 F.3d 272, 284 (3d Cir. 2010) ("dedication to disciplined pricing" dismissed); *SEPTA v. Orrstown Fin. Servs., Inc.*, 2015 WL 3833849, at *22 (M.D. Pa. June 22, 2015) ("disciplined approach to lending" dismissed). In opposing the MTD, Plaintiff did not even try to argue that these statements are "capable of objective verification," as required to plead material falsity. *See In re Ford Motor Co. Sec. Litig.*, 381 F.3d 563, 570 (6th Cir. 2004).

13

The Motion does not address this point, either. *See* Mot. Amendment thus is futile for this independent reason. *See Darby v. Century Bus. Servs., Inc.*, 96 F. App'x 277, 286 (6th Cir. 2004) (affirming denial of amendment that would be "futile because it was unlikely plaintiffs would be able to correct the complaint's multiple deficiencies").

## IV.     CONCLUSION

For these reasons, Plaintiff's Motion for Leave to File Supplemented Amended Complaint should be denied.

Dated: January 28, 2025

Respectfully submitted,

*s/ Sean M. Berkowitz*
Sean M. Berkowitz (*pro hac vice*)
Eric R. Swibel (*pro hac vice*)
Nicholas J. Siciliano (*pro hac vice*)
Latham & Watkins LLP
330 North Wabash Street, Suite 2800
Chicago, IL 60611
Telephone: 312.876.7700
Facsimile: 312.993.9767
Email: sean.berkowitz@lw.com
        eric.swibel@lw.com
        nicholas.siciliano@lw.com

Michele D. Johnson (*pro hac vice*)
Latham & Watkins LLP
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
Telephone: 714.540.1235
Facsimile: 714.755.8290
Email: michele.johnson@lw.com

Michael P. Abate
Kaplan Johnson Abate & Bird LLP
710 W. Main St., 4th Floor
Louisville, KY 40202
Telephone: 502-540-8280
Email: mabate@kaplanjohnsonlaw.com

*Attorneys for Defendants Holley Inc., Tom Tomlinson & Dominic Bardos*

15

## CERTIFICATE OF SERVICE

I hereby certify that on January 28, 2025, I electronically filed the foregoing document with the Court via CM/ECF, which will automatically send notice and a copy of same to counsel of record via email.

/s/ *Sean M. Berkowitz*
Sean M. Berkowitz