BARRETT JOHNSTON MARTIN
  & GARRISON, LLC
DAVID GARRISON (KY Bar No. 98258)
200 31st Avenue North
Nashville, TN  37203
Telephone:  615/244-2202
615/252-3798 (fax)
dgarrison@barrettjohnston.com

Local Counsel

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF KENTUCKY

AT BOWLING GREEN

| | |
|---|---|
| CITY OF FORT LAUDERDALE GENERAL EMPLOYEES' RETIREMENT SYSTEM, on Behalf of Itself and All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> HOLLEY INC., f/k/a EMPOWER LTD., et al., <br><br> Defendants. | Civil Action No. 1:23-cv-00148-GNS <br><br> <u>CLASS ACTION</u> <br><br> REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO FILE SUPPLEMENTED AMENDED COMPLAINT |

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ........................................................................................................1

II. PLAINTIFF MEETS THE STANDARDS FOR SUPPLEMENTATION UNDER RULE 15(d) ...........................................................................................................2

    A.  The PSLRA Does Not Abrogate Rule 15(d).............................................................3

    B.  Supplementing the Amended Complaint Is Not Futile.............................................5

    C.  The Supplemented Complaint Adequately Alleges that Defendants Made Actionable Misstatements and Omissions ...............................................................7

        1.  The Supplemented Complaint Pleads Falsity with Particularity .................7

        2.  The Supplemented Complaint Further Establishes Falsity of Defendants' Class Period Statements ..........................................................7

        3.  The February, May, and August 2024 Admissions .....................................8

        4.  The November 8, 2024 Admission .............................................................10

    D.  The Proposed Supplement Further Supports a Strong Inference of the Individual Defendants' Scienter ...........................................................................13

III. CONCLUSION........................................................................................................15

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Bromley v. Mich. Educ. Ass'n-NEA*,
178 F.R.D. 148 (E.D. Mich. 1998) ................................................................................2

*City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*,
399 F.3d 651 (6th Cir. 2005) .......................................................................................6

*City of Taylor Gen. Emps. Ret. Sys. v. Astec Indus., Inc.*,
29 F.4th 802 (6th Cir. 2022) .......................................................................................7

*Foman v. Davis*,
371 U.S. 178 (1962)......................................................................................................4

*Greenwald v. Holstein*,
2016 WL 9344297 (S.D. Ohio Feb. 3, 2016).................................................................4

*Helwig v. Vencor, Inc.*,
251 F.3d 540 (6th Cir. 2001) ...................................................................................4, 14

*In re Accredo Health, Inc. Sec. Litig.*,
2005 WL 8152649 (W.D. Tenn. April 11, 2005) ........................................................6

*In re Ford Motor Co. Sec. Litig.*,
381 F.3d 563 (6th Cir. 2004) .....................................................................................12

*In re Huffy Corp. Sec. Litig.*,
577 F. Supp. 2d 968 (S.D. Ohio 2008) .......................................................................4

*In re Upstart Holdings, Inc. Sec. Litig.*,
2023 WL 6379810 (S.D. Ohio Sept. 29, 2023) ....................................................12, 13

*Kuyat v. BioMimetic Therapeutics, Inc.*,
747 F.3d 435 (6th Cir. 2014) ................................................................................3, 4, 5

*McIlwain v. Berry*,
2024 WL 4729311 (W.D. Ky. Nov. 8, 2024) ..............................................................3

*Miller v. Champion Enters. Inc.*,
346 F.3d 660 (6th Cir. 2003) ...................................................................................3, 4

*Mitchell v. Fujitec Am., Inc.*,
518 F. Supp. 3d 1073 (S.D. Ohio 2021) .....................................................................6

**Page**

*Odom v. Edmonds*,
  2022 WL 16951334 (W.D. Ky. Nov. 15, 2022) ..................................................................2

*Rayburn v. Mars Petcare US, Inc.*,
  2010 WL 5634338 (W.D. Tenn. June 11, 2010) ...................................................................3

*Saddle Rock Partners, Ltd v. Hiatt*,
  1996 WL 859986 (W.D. Tenn. Mar. 26, 1996) ....................................................................6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007).............................................................................................................10

## STATUTES, RULES, AND REGULATIONS

Federal Rules of Civil Procedure
  Rule 15 ...............................................................................................................................1, 4, 5
  Rule 15(a)(2)............................................................................................................................2
  Rule 15(d) .....................................................................................................................1, 2, 3, 5

## I.      INTRODUCTION

Plaintiff moved for leave to supplement (ECF 55) ("Motion") the Amended Complaint for Violations of the Federal Securities Laws (ECF 36) ("Amended Complaint") to include recent admissions that bear directly on its claims.  The purpose of the proposed supplementation is ***not*** to address a deficiency in the pleading because there is ***none***.  Plaintiff simply seeks to bring the pleading up to date by adding statements made by Holley Inc.'s ("Holley" or "Company") current President and Chief Executive Officer ("CEO") Matthew Stevenson ("Stevenson"), which corroborate and supplement the Amended Complaint's well-pleaded allegations that Holley did not operate with pricing discipline or strict adherence to minimum advertised pricing ("MAP") in its direct-to-consumer ("DTC") channel, rendering Defendants' Class Period statements misleading.  Supplementation of this kind is perfectly appropriate under Rule 15(d) of the Federal Rules of Civil Procedure and liberally allowed by courts.

Defendants' Opposition (ECF 56) ("Opp.") does not claim any prejudice will result from supplementation, nor that Plaintiff acted with undue delay, dilatory motive, or bad faith. Nonetheless, Defendants argue the Private Securities Litigation Reform Act of 1995 ("PSLRA") essentially bans amendments in securities fraud cases.  But no such prohibition exists.  Plaintiff is seeking to supplement its well-pleaded allegations with Company admissions, before any ruling on the pending Motion to Dismiss (ECF 42) – a request that is entirely allowed and freely given under the auspices of Rule 15.  Defendants cannot have it both ways – move to dismiss a complaint for lack of particularity and then seek to block Plaintiff from adding new events – later Company admissions – that support its existing claims.  The PSLRA is neither a choke-point for meritorious claims nor a roadblock to Rule 15(d).

Defendants' futility arguments are equally unavailing.  The Court has not ruled on Defendants' Motion to Dismiss or found Plaintiff's allegations deficient.  Defendants' self-serving

view as to the deficiencies in the Amended Complaint does not require Plaintiff to supplement or amend every allegation of its pleading to demonstrate a lack of futility.  And, Defendants' attempt to paint CEO Stevenson as an irrelevant third party also fails to pass muster.  As CEO, Stevenson speaks for the Company, and his statements regarding the state of affairs at Holley during the Class Period, which Defendants implicitly concede are accurate, are important Company admissions that should be considered by the Court.  Defendants' other fact-based challenges and efforts to rehash their Motion to Dismiss fall woefully short of demonstrating futility.  In sum, Defendants fail to overcome Rule 15(d)'s liberal standards, and the Motion should be granted.

## II.    PLAINTIFF MEETS THE STANDARDS FOR SUPPLEMENTATION UNDER RULE 15(d)

Under Rule 15(d), leave to file a supplemented pleading to set forth events that occur after the pleading is freely given where justice so requires.  *See Odom v. Edmonds*, 2022 WL 16951334, at *1 (W.D. Ky. Nov. 15, 2022) (granting motion to supplement and recognizing that the standard under Rule 15(d) is the same as under Rule 15(a)(2)).  "The supplementation of conduct from years subsequent to the filing of the complaint serves Rule 15(d)'s purpose of bringing the lawsuit up to date."  *Bromley v. Mich. Educ. Ass'n-NEA*, 178 F.R.D. 148, 155 (E.D. Mich. 1998).[1]  "Unless this proposed supplementation would result in undue prejudice to the opposing party, has been unduly delayed, has not been offered in good faith, or would be futile, such supplementation should be granted."  *Id.*

---

[1]    Unless otherwise noted, all emphasis is added and citations are omitted.  This brief uses (cleaned up) to indicate that internal quotation marks, alterations, and/or citations have been omitted from quotations.

As detailed in Plaintiff's Motion, the Supplemented Complaint[2] easily meets Rule 15(d)'s standards. Motion at 7-13. Defendants do not claim prejudice, undue delay, bad faith, or dilatory motive. Nor can they. The Supplemented Complaint simply sets forth additional evidence to provide further support and context for Plaintiff's existing allegations and theories of liability, leave was sought in a timely manner, and the Court has yet to rule on Defendants' Motion to Dismiss. *Id*. at 4-7; *see also McIlwain v. Berry*, 2024 WL 4729311, at \*1, \*7 (W.D. Ky. Nov. 8, 2024) (granting motion for leave to file supplemented complaint where "the supplementation only adds additional facts to existing claims"); *Rayburn v. Mars Petcare US, Inc.*, 2010 WL 5634338, at \*2 (W.D. Tenn. June 11, 2010) (granting motion where "[t]here has been no undue delay in filing the Motion [to Amend Complaint] and the Court can find no bad faith on the part of the Plaintiff. The amendment seeks to bolster and clarify Plaintiff's allegations."). There is no reason to deny supplementation here.

### A. The PSLRA Does Not Abrogate Rule 15(d)

Defendants contend that Plaintiff is not entitled to ***supplement*** its Amended Complaint to add ***new evidence*** – the Company's post-Class Period admissions – because the PSLRA and its heightened pleading standards purportedly do not allow such supplementation. Opp. at 5-6. Defendants are wrong.

Defendants cite no provision of the PSLRA or federal rules that limits supplementation or amendment of complaints in securities cases. Instead, they point to *Kuyat v. BioMimetic Therapeutics, Inc.*, 747 F.3d 435 (6th Cir. 2014), and *Miller v. Champion Enters. Inc.*, 346 F.3d 660, 692 (6th Cir. 2003) (Opp. at 5-6), but neither case stands for a blanket ban on supplementation

---

[2]  The [Proposed] Supplemented Amended Complaint for Violations of the Federal Securities Laws is referred to herein as the "Supplemented Complaint." "¶__" or "¶¶__" references herein are to the Supplemented Complaint.

or amendments under Rule 15.[3] Rather, under the circumstances present in each, the Sixth Circuit found that repeated amendments frustrated the purpose of the PSLRA.[4] As *Kuyat* made clear, plaintiffs cannot take a wait-and-see approach, using "Rule 15's permissive amendment policy" as a "sounding board to discover holes in their arguments, then reopen the case by amending their complaint to take account of the court's decision." *Id.* at 445. Plaintiff seeks to do the opposite here – ***supplement*** its Amended Complaint for the first time to add recent Company admissions that bear on the key elements of their claim ***before*** the Court weighs in on the matter.

Indeed, under Defendants' reading of *Kuyat* and *Miller*, the PSLRA forever bans amendments in securities cases even if damning evidence arises after the filing of a single complaint. *See* Opp. at 5-6. That simply is not the law. As the Sixth Circuit has stated,

> While Congress unquestionably strengthened the pleading standard for securities fraud, the Reform Act would hardly serve its purpose to protect investors and to maintain confidence in the securities markets, ***were it to become a choke-point for meritorious claims***. The danger of muzzling plaintiffs is enhanced by the stay provisions of the PSLRA, which authorize suspension of all discovery pending a motion to dismiss.

*Helwig v. Vencor, Inc.*, 251 F.3d 540, 553 (6th Cir. 2001).

---

[3]    *See Kuyat*, 747 F.3d at 444 (holding that the district court did not abuse its discretion in denying leave to amend where plaintiff requested leave in "throwaway language" in the last line of their opposition brief and did not attach a copy of the amended complaint and plaintiff's ***post-judgment*** motion sought to add expert opinion on a letter they had in their possession for ten months); *Miller*, 346 F.3d 660 (noting that scienter was lacking and the proposed amendment would be futile).

[4]    *See also Greenwald v. Holstein*, 2016 WL 9344297, at *4 (S.D. Ohio Feb. 3, 2016) ("The Court is likewise not persuaded that granting the Motion to Amend runs afoul of the PSLRA. As discussed *supra*, the purpose of the PSLRA is, *inter alia*, to screen out lawsuits that have no factual basis and to prevent harassing lawsuits. While permitting 'repeated amendments' frustrates this purpose, the Court has not permitted repeated amendments in this action."); *see also In re Huffy Corp. Sec. Litig.*, 577 F. Supp. 2d 968, 987 n.14 (S.D. Ohio 2008) (finding that the PSLRA "does not contain language, which purports to limit the applicability of *Foman v. Davis*, 371 U.S. 178 (1962), wherein the Supreme Court stressed that leave to amend is to be freely given, and, thus, restrain the ability of courts to afford the plaintiff an opportunity to amend in an action governed by that statute").

Here, Plaintiff acted promptly to supply additional critical factual allegations supporting the already well-pleaded allegations, without waiting to "take account of the court's decision." *Kuyat*, 747 F.3d at 445. Plaintiff's proposed supplementation to add recent Company admissions is consistent with Rule 15(d) and the purposes of the PSLRA.

### B.    Supplementing the Amended Complaint Is Not Futile

Defendants next argue that allowing the Supplemented Complaint "does not fix the flaws in Plaintiff's prior pleading." Opp. at 3. Unsurprisingly, Defendants' arguments are premised on the notion that the Amended Complaint is deficient in every way and "*any* amendment would be futile[.]" *Id.* From this faulty premise, Defendants suggest the Supplemented Complaint is futile because Plaintiff was required to add additional evidence with respect to every single allegation in the Amended Complaint. *Id.* at 6-7, 10. Defendants turn Rule 15 on its head – imparting requirements on Plaintiff that do not exist in the Rule. The Amended Complaint is already sufficiently pleaded, and Plaintiff seeks only to add *recent* Company admissions that further supports its existing claims. This is perfectly appropriate and contemplated by Rule 15. *See* Fed. R. Civ. P. 15(d). Defendants cite no authority that requires Plaintiff to proffer evidence (in Defendants' exclusive possession) as to each allegation of the Amended Complaint in order to satisfy Rule 15.[5]

Next, Defendants endeavor to minimize Stevenson's recent admissions as irrelevant quotes by an irrelevant non-party. Opp. at 1, 7. But, as the Company's current CEO, Stevenson's statements about Holley's *prior* (and Class Period) practices and their marked contrast with the

---

[5]    Contrary to Defendants' argument, that the new evidence goes to one aspect of Defendants' fraud does not diminish the other well-pleaded allegations and false statements (*i.e.*, Holley's M&A strategy, financial performance, demand, and the DTC business) in the Supplemented Complaint. Opp. at 10. These allegations and arguments are fully addressed in Plaintiff's Opposition to the Motion to Dismiss (ECF 43) ("MTD Opp."), incorporated by reference herein.

Company's *new* practices are binding admissions made on behalf of the Company.[6]   And, Defendants do not challenge the veracity of Stevenson's statements or suggest they are baseless, thus conceding their accuracy.

Defendants also suggest that since Stevenson's statements were made after the Class Period, this somehow weakens them or renders them irrelevant.  *See, e.g.*, Opp. at 1-2, 7, 10. However, post-Class Period admissions by a company are often found to be probative of fraud. *See In re Accredo Health, Inc. Sec. Litig.*, 2005 WL 8152649, at *11 (W.D. Tenn. April 11, 2005) (recognizing plaintiffs may rely on post-class period statements to substantiate that defendants' statements and omissions were allegedly false); *Saddle Rock Partners, Ltd v. Hiatt*, 1996 WL 859986, at *16 (W.D. Tenn. Mar. 26, 1996) (recognizing post-class period statements may be used to establish the misleading nature of statements that were made within the class period). Stevenson's statements – the facts of which Defendants do not challenge – demonstrate that Holley did not operate with pricing discipline or strict adherence to MAP in its DTC channel, and that Holley's failures in this regard hurt its reseller relationships, financial results, and outlook during the Class Period.  *See* ¶¶220-233.  Defendants may wish Stevenson had not made these statements, but that does not negate that the statements are important new evidence further supporting the Amended Complaint's particular allegations, as detailed below.

---

[6]   *See City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 688 (6th Cir. 2005) (recognizing that "knowledge of a corporate officer or agent acting within the scope of [his] authority is attributable to the corporation"); *Mitchell v. Fujitec Am., Inc.*, 518 F. Supp. 3d 1073, 1096 (S.D. Ohio 2021) (statements made by CEO can be imputed to the corporation for which he serves as the lead executive officer).

**C.**     **The Supplemented Complaint Adequately Alleges that Defendants Made Actionable Misstatements and Omissions**

**1.**     **The Supplemented Complaint Pleads Falsity with Particularity**

Defendants again take issue with the form of the Supplemented Complaint, suggesting that Plaintiff does not "specify each alleged misleading statement[.]" Opp. at 9. But Defendants' flawed arguments fail for the same reasons stated in Plaintiff's Opposition to the motion to dismiss. MTD Opp. at 5. Like the Amended Complaint, the Supplemented Complaint clearly details the time, place, content, and speaker of each false statement (¶¶113-122, 124-133, 135-144, 146-151, 153-159, 161-173, 175-190, 192-203) and the reasons why each was false and misleading when made (¶¶123, 134, 145, 152, 160, 174, 191, 204). Nothing more is required. *City of Taylor Gen. Emps. Ret. Sys. v. Astec Indus., Inc.*, 29 F.4th 802, 810 (6th Cir. 2022) (reversing district court's dismissal of a complaint as a "puzzle pleading[,]" where it explained the broad theory of fraud, in chronological order set forth text alleged to be false and misleading, followed by a paragraph explaining why each set of statements was false or misleading). Further, Defendants' argument is undercut by arguments in their Motion to Dismiss and Opposition to this Motion, which demonstrate that they clearly understand the alleged false statements and omissions and reasons why they are alleged to be false (they just disagree with them).

**2.**     **The Supplemented Complaint Further Establishes Falsity of Defendants' Class Period Statements**

The Amended Complaint amply pleads that Defendants made material misstatements and omissions regarding its relationships with its resellers, who made up 80% of Holley's sales. MTD Opp. at 5-8. While Defendants repeatedly stated they had "established mutually beneficial and long-term relationships with . . . resellers" supported by "strong pricing discipline across [Holley's] channels with strict conformance to minimum advertised pricing[,]" Holley had seriously damaged its reseller relationships through discounting, "flash sales," a lack of pricing

- 7 -

discipline in the DTC channel (*i.e.*, selling *via* DTC below Holley's MAP), and eliminating bulk order discounts.  ¶¶37-57.  The Supplemented Complaint further bolsters the falsity of these statements (corroborating accounts of several of Holley's former employees ("FEs")) with Company admissions on February 28, 2024, May 8, 2024, August 7, 2024, and November 8, 2024. *See* ¶¶221, 223, 225, 227-229.[7]  These admissions make clear that, despite assuring investors during the Class Period that it maintained "strict" MAP protocols across its channels, in reality, Holley had excluded distribution partners from promotions and had been monitoring and enforcing MAP on only a "very low" number of SKUs.  ¶228.

### 3.    The February, May, and August 2024 Admissions

Defendants resort to a host of infirm fact-based arguments in an effort to dismantle Stevenson's admissions.  First, Defendants assert that Stevenson's admissions in February, May, and August 2024 are irrelevant because no "challenged" statement references "sales promotions" or Holley including its distributors in any such promotions. Opp. at 11.  Defendants' myopic view of falsity misses the mark.  Stevenson's admissions that Holley's distributors were ***not included*** in Holley's "promotional efforts," leading them to promote ***competitors'*** products (¶¶221, 223, 225, 227, 228), further corroborate the Amended Complaint's allegations (including accounts from FEs) that the Company was running sales and offering discounts (*i.e.*, promotions) on its DTC channel that were not available to distributors and resellers, while also violating its MAP policy by discounting items below previously agreed upon prices (¶¶41, 44-46, 48-49).  Considered in context, Stevenson's admissions establish that Defendants' statements that they "***maintain strong***

---

[7]    Defendants argue that Plaintiff did not deem Stevenson's February 28, 2024 post-Class Period statement important because although it was made before the Amended Complaint's filing, it was not included. Opp. at 1.  However, as detailed, in the Motion, it was all of Stevenson's subsequent statements, ending in November 2024, considered in totality and context that warranted supplementing the Amended Complaint.  Motion at 4-5 and n.4.

*pricing discipline across [its] channels with strict conformance to minimum advertised pricing*" and had "*mutually beneficial relationships with [its] resellers*" were misleading. Indeed, as Stevenson admitted, the *newly enforced* MAP "builds confidence in your distribution partners to invest in your brands because they know you're going to hold everybody on a level playing field *and people won't be undercutting them in the market*." ¶¶112, 229; *see also* ¶227 (Stevenson stating that "MAP enforcement is now in place for 20,000 SKUs, which is 12 times more than it was just a short time ago. This is the key to earning trust with distributors and keeping everyone on a level playing field.").

Second, Defendants contend that Plaintiff does not explain how "pricing discipline" relates to offering "pricing promotions" to resellers. Opp. at 11. This argument ignores Plaintiff's well-pleaded allegations. ¶¶38-46, 48-49. The Supplemented Complaint clearly explains that instead of keeping the MAP of a product consistent across all of Holley's sales channels (as Defendants claimed Holley did), the Company offered price promotions (or discounts) only in its DTC channel, without giving the same discount to its distributors (as admitted by Stevenson), thus operating without pricing discipline and undercutting its own distributors. *Id.*

Third, Defendants mischaracterize the proposed supplemented allegations to improperly draw inferences in their own favor. Opp. at 11-12. For example, Defendants claim because Stevenson's February, May, and August 2024 statements acknowledging that its distribution partners were not included in Holley's promotional activities did not contain the word "pricing," his statements refer to something other than pricing promotions. *Id*. at 11. Defendants' efforts to muddy the waters fail. The full context of Stevenson's statements and the Complaint's allegations make clear that "sales promotion[s]" are pricing promotions. *See* ¶¶44-46 (accounts of multiple FEs noting Company's sales promotions lowered pricing in DTC channel); ¶221 (explaining the

effect the lack of such promotions had on distributors' margins (a financial metric affected by pricing)); ¶229 (analyst referring to including distributors in promotions as a "pricing benefit").

Defendants also wrongly argue that Stevenson's statements are purportedly inconsistent with other allegations that resellers participated in pricing promotions. Opp. at 11-12. But, of course, Defendants cherry-pick and misconstrue these allegations. While FE2 did reference notifications about promotions being sent to resellers, the Supplemented Complaint clearly states this practice happened prior to the Holley Day Sales event "***prior to the Class Period***" (¶52) and that these sales changed ***after*** Holley went public and the Class Period began (¶¶53-54). *See also* ¶¶46-47. And, while FE1 stated that historically Holley offered a "Net Pricing Discount" to resellers because it valued those relationships, the Supplemented Complaint also alleges that, ***prior to the Class Period***, such discounts were tightened, and later on, were essentially eliminated for most Holley product purchases, which "wiped out" the Company's reseller network. ¶¶49, 51. At this stage of the proceedings, Defendants are not entitled to ***ignore*** these well-pleaded allegations and draw inferences in their favor, particularly unreasonable ones. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 309-10, 322 (2007).

### 4.  The November 8, 2024 Admission

Defendants' attempt to minimize Stevenson's admissions on November 8, 2024 regarding the lack of enforcement of MAP on the Company's SKUs is also unavailing. Opp. at 12-13. On that day, Stevenson made clear that previously, "***the number of SKUs we were monitoring and enforcing was very low, compared to what we're doing now***," and the Company was only enforcing MAP on 20,000 SKUs which was ***12 times more*** than it was just a short time ago. ¶¶112, 232-233. As the Supplemented Complaint details, these admissions, coupled with other statements, demonstrate that Holley lacked MAP enforcement on the ***vast majority*** of its SKUs

during the Class Period,[8] rendering Defendants' Class Period statements that it "maintain[ed] strong pricing discipline with strict conformance to minimum advertised pricing" uncontrovertibly misleading. *Id*.

Defendants attempt to undermine this critical admission by again cherry-picking allegations out of context and ignoring surrounding facts. Opp. at 12-13. The fact that Holley tracked and penalized resellers who advertised below MAP (¶47), does not contradict Plaintiff's argument (*id*.). The Amended Complaint makes clear that Holley's reneging "on minimum advertised pricing was entirely a one-way street." ¶¶46-47. While Holley violated MAP, it would not allow its resellers to – which is entirely consistent with Stevenson's admissions and Plaintiff's argument that Holley lacked "strong pricing discipline" and did not have "strict conformance to minimum advertised pricing." It also demonstrates the asymmetry in Holley's relationships with its resellers and that they were not "mutually beneficial."

Defendants' red herring arguments – that the Company never explained how it enforced its MAP policy and whether MAP applied to all SKUs – does not undercut these well-pleaded allegations. *Id.* Indeed, Defendants repeatedly stated that Holley maintained "strong pricing discipline ***across [Holley's] channels*** with strict conformance to [MAP]," leading reasonable investors to believe it applied to all business segments and products. ¶¶5, 16, 37, 116, 120, 122, 148, 159. In light of the plain language of Defendants' alleged false statements, the Company did not need to explain how it enforced its MAP policy. And, Defendants' argument that Plaintiff does not allege what percentage of Holley's annual revenue came from its extremely limited 2,000 SKU MAP enforcement is illogical and unsupported. Opp. at 12. Plaintiff makes clear Holley

---

[8]    *See* ¶¶232-233 (explaining that by Defendants' own statements, they were only enforcing MAP on approximately 1.7% of its total SKUs (1,666 divided by 100,000) on the low end and 2% (2,083 divided by 100,000) on the high end at the end of 2022).

lacked MAP on at least 97% of its SKUs at all relevant times.  It is nonsense for Defendants to infer that an immaterial percentage of Holley's revenues came from 97% of its SKUs.[9]

Finally, Defendants' renewed corporate optimism argument (*id*. at 13-14) fails for the same reasons outlined in Plaintiff's Opposition to Defendants' Motion to Dismiss.  *See* MTD Opp. at 14.  Despite Defendants' assertions to the contrary, the statements communicated specific, critical information on matters at the heart of Holley's operations and financial performance – its reseller relationships, M&A, and demand.  *See In re Upstart Holdings, Inc. Sec. Litig.*, 2023 WL 6379810, at *14 (S.D. Ohio Sept. 29, 2023) (rejecting puffery argument where the statements at issue "would likely be considered essential to a reasonable investor").

Defendants' reliance on *In re Ford Motor Co. Sec. Litig.*, 381 F.3d 563, 570-71 (6th Cir. 2004), to argue that statements concerning "strong pricing discipline," "strict conformance to minimum advertised pricing," and "mutually beneficial" relationships are not "capable of objective verification" is also fatally flawed.  Opp. at 13-14.  Unlike the statements at issue in *Ford*, Defendants' statements are not the rosy affirmations that "[a]ll public companies [use to] praise their products and their objectives."  Nor are they "vague, soft, puffing statements or obvious hyperbole" upon which a reasonable investor would not rely.  381 F.3d at 570 (finding statements such as "At Ford quality comes first[,]" "We aim to be the quality leader[,]" and "Ford has its best quality ever" to be loosely optimistic statements that no reasonable investor would find important to the total mix of information).  Rather, Defendants' statements were concrete affirmations regarding the Company's conformity with "strict" pricing policies, pricing practices, and the nature and status of its relationship with key customers – the very type of statements upon which

---

[9]    In contrast to Defendants' cited authorities, Stevenson's admissions shed light on what was happening ***during*** the Class Period and are not merely post-Class Period business changes.  *Id.* at 12.

investors rely.  Moreover, as the Supplemented Complaint further establishes, they are capable of objective verification and were, in fact, false.  *See* ¶¶42-57, 109-112, 220-223; *Upstart*, 2023 WL 6379810, at *14.  Accordingly, these statements are actionable, not merely "corporate optimism."

### D. The Proposed Supplement Further Supports a Strong Inference of the Individual Defendants' Scienter

Defendants' arguments challenging scienter are similarly misplaced.  Opp. at 6-8.  For example, Defendants' primary argument is based on a false premise that because the Motion claims that the supplemental evidence bolsters ***falsity***, Plaintiff somehow concedes that the Supplemented Complaint "contains no new, particularized allegations suggesting that any Defendant acted with scienter" (*id.* at 6) and that Plaintiff has not "cured" the so-called deficiencies in its Amended Complaint (*id.* at 5-6, 10).  Not so.

First, as detailed above, the Amended Complaint's allegations are not deficient, and Plaintiff is not required supplement every allegation.  *See supra* at §§I, II.B.  Nevertheless, the supplemental evidence shines additional light on the Individual Defendants' scienter during the Class Period.  Given that the Individual Defendants were hands-on executives who actively monitored, had full access to, and were made aware of the Company's performance throughout the Class Period (¶¶50, 139, 157, 166, 183, 194, 235-238, 239-246), they were privy to the facts admitted by Stevenson: the Company's resellers were not included in its promotional efforts and the Company was monitoring and enforcing MAP on very few SKUs.  Thus, Stevenson's admissions further demonstrate that Defendants knew, or were reckless in not knowing, that their Class Period statements regarding MAP enforcement, strict adherence to price discipline, and mutually beneficial relationships with resellers were false and misleading when made.

Defendants attempt to undercut their scienter by arguing that Stevenson was not the CEO during the Class Period and, thus, his state of mind is "irrelevant."  Opp. at 7.  As explained above,

neither of Defendants' points hold water.  *See supra* §§I at 2, II.B at 6.  Plaintiff is not trying to transfer Stevenson's scienter to Defendants.   Rather, Stevenson's admissions regarding the Company's prior practices with respect to distributor promotions and failure to monitor and adhere to MAP for its SKUs further support that Defendants were privy to these facts or recklessly disregarded them during the Class Period.

Finally, Defendants spend the lion's share of their scienter attack rehashing their same Motion to Dismiss arguments.  Opp. at 7-8.  But Defendants' arguments are weaker now than they were then.  Despite Defendants' insistence to the contrary, a lack of stock sales (motive) does not undermine an inference of scienter (MTD Opp. at 19, n.17); the *Helwig* factors are not a pleading necessity (*id.* at 18); and, when considered holistically, the well-pled, particularized facts alleged in Plaintiff's Amended Complaint establish a "strong" and "cogent" inference of scienter (*id.* at 17-24).

To be sure, Plaintiff's well-pled allegations of particularized facts collectively give rise to a strong inference of scienter.  The Supplemented Complaint maintains allegations that: (1) Defendant Tomlinson was active with day-to-day processes, micromanaged operations, and made decisions on every single new project from the Company's engineers (¶¶50, 91, 235, 243-246); (2) Holley's highest-ranking executives were hands-on executives who actively monitored, had full access to, and were made aware of the Company's business operations performance throughout the Class Period, including Holley's reseller relationships, and M&A and integration efforts, including the efficiency of post-acquisition processes (¶¶28, 50, 236, 243-246); (3) Holley's "principal financial and accounting officer," Defendant Bardos, knowledgably reporting on in-depth financial matters on earnings calls and signing and certifying Holley's financial filings (¶¶139, 157, 166, 183, 194, 238); (4) Individual Defendants with access to reports generated by

Sightline – the program Holley used to track Company-wide performance (¶¶50, 244); (5) facts supporting that Tomlinson – Holley's self-titled "chief operating decision maker" – received the report monthly, which showed real-time sales data and red flags of cancellations and decreasing sales from repeat customers such as resellers (*id.*); (6) the abrupt departures of Holley's two highest-ranking officers, Tomlinson and Bardos (¶¶9, 13, 211); (7) the temporal proximity between Defendants' false statements and the disclosures (¶¶157-178, 192-209); and (8) Holley's post-Class Period admissions, including CEO Stevenson's statements added to the Supplemented Complaint (¶¶42, 109-112, 221, 223, 225, 227-228, 232 n.9, 233).

Defendants' piecemeal attack on scienter fails both with respect to its attack on the Amended Complaint, just as it does again now. For all the reasons stated here – and more fully in Plaintiffs' Opposition to Defendants' Motion to Dismiss (MTD Opp. at 18-25) – Defendants have failed to defeat the strong inference of scienter here.

## III.   CONCLUSION

For the reasons stated herein, and Plaintiff's Opposition to the Motion to Dismiss, the Motion should be granted and the Court should allow the Supplemented Complaint to be filed.

DATED: February 11, 2025

ROBBINS GELLER RUDMAN &
  DOWD LLP
ROBERT J. ROBBINS (admitted *pro hac vice*)
ELIZABETH A. SHONSON (admitted *pro hac vice*)
ANDREW T. REES (admitted *pro hac vice*)
ALEX KAPLAN (admitted *pro hac vice*)


                        s/ Robert J. Robbins
                        ROBERT J. ROBBINS

225 NE Mizner Boulevard, Suite 720
Boca Raton, FL  33423
Telephone:  561/750-3000
561/750-3364 (fax)
rrobbins@rgrdlaw.com
eshonson@rgrdlaw.com
arees@rgrdlaw.com
akaplan@rgrdlaw.com

*Lead Counsel for Lead Plaintiff*

BARRETT JOHNSTON MARTIN
   & GARRISON, LLC
DAVID GARRISON (KY Bar No. 98258)
200 31st Avenue North
Nashville, TN  37203
Telephone:  615/244-2202
615/252-3798 (fax)
dgarrison@barrettjohnston.com

*Local Counsel*

- 16 -

## CERTIFICATE OF SERVICE

I hereby certify that a copy of *Reply in Support of Plaintiff's Motion for Leave to File Supplemented Amended Complaint* was filed electronically with the Clerk's office and served upon Defendant using the Court's CM/ECF system on February 11, 2025 through their counsel of record as indicated below:

LATHAM & WATKINS LLP
Sean M. Berkowitz
Eric R. Swibel
Nicholas J. Siciliano
330 North Wabash Street, Suite 2800
Chicago, IL  60611
Telephone:  312/876-7700

KAPLAN JOHNSON ABATE
  & BIRD LLP
Michael P. Abate
710 West Main Street, 4th Floor
Louisville, KY  40202
Telephone: 502/540-8280

*Counsel for Defendants Holley, Inc., Tom Tomlinson, and Dominic Bardos*

s/ Robert J. Robbins
ROBERT J. ROBBINS