**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**AT BOWLING GREEN**

| | |
|---|---|
| CITY OF FORT LAUDERDALE GENERAL EMPLOYEES' RETIREMENT SYSTEM, on Behalf of Itself and All Others Similarly Situated, <br><br>                   Plaintiff, <br><br>      v. <br><br> HOLLEY INC., TOM TOMLINSON, DOMINIC BARDOS, and VINOD NIMMAGADDA <br><br>                   Defendants. | Case No. 1:23-cv-148-GNS <br><br> Judge Greg N. Stivers |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**
**SUPPLEMENTED AMENDED COMPLAINT FOR**
<u>**VIOLATIONS OF THE FEDERAL SECURITIES LAWS**</u>

Sean M. Berkowitz (*pro hac vice*)
Eric R. Swibel (*pro hac vice*)
Nicholas J. Siciliano (*pro hac vice*)
Renatta A. Gorski (*pro hac vice*)
Latham & Watkins LLP
330 North Wabash Street, Suite 2800
Chicago, IL 60611
Telephone: 312.876.7700
Facsimile: 312.993.9767
Email: sean.berkowitz@lw.com
      eric.swibel@lw.com
      nicholas.siciliano@lw.com
      renatta.gorski@lw.com

Michele D. Johnson (*pro hac vice*)
Latham & Watkins LLP
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
Telephone: 714.540.1235
Facsimile: 714.755.8290
Email: michele.johnson@lw.com

Michael P. Abate
Kaplan Johnson Abate & Bird LLP
710 W. Main St., 4th Floor
Louisville, KY 40202
Telephone: 502.540.8280
Email: mabate@kaplanjohnsonlaw.com

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................1

II.   ARGUMENT....................................................................................2

    A.    Plaintiff Has Not Alleged Falsity.............................................................2

        1.    Acquisition Statements Should Be Dismissed...........................................3

        2.    DTC Statements Should Be Dismissed.......................................................5

        3.    Financial Performance Statements Should Be Dismissed ...........................5

        4.    Reseller Statements Should Be Dismissed ....................................................6

        5.    Forward-Looking Statements Are Not Actionable ......................................9

        6.    Defendants' Opinion Statements Are Not Actionable................................10

    B.    Plaintiff Has Not Alleged a "Strong Inference" of Scienter ..................................11

        1.    Plaintiff Alleges None of the *Helwig* Factors .............................................11

        2.    Plaintiff's Other Arguments Fail to Support Scienter................................13

III.  CONCLUSION.................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Bates v. Green Farms Condo. Ass'n*,
   958 F.3d 470 (6th Cir. 2020) ............................................................................................. 3

*Bond v. Clover Health Invs., Corp.*,
   587 F. Supp. 3d 641 (M.D. Tenn. 2022)............................................................................. 8

*Bondali v. Yum! Brands, Inc.*,
   620 F. App'x 483 (6th Cir. 2015) ........................................................................... 6, 10, 13

*Chapman v. Mueller Water Prods., Inc.*,
   466 F. Supp. 3d 382 (S.D.N.Y. 2020)................................................................................. 7

*City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*,
   450 F. Supp. 3d 379 (S.D.N.Y. 2020).......................................................................... 6, 9, 10

*Doshi v. Gen. Cable Corp.*,
   823 F.3d 1032 (6th Cir. 2016) .................................................................................... 12, 13

*Frank v. Dana Corp.*,
   646 F.3d 954 (6th Cir. 2011) ........................................................................................... 14

*Gruhn v. Tween Brands, Inc.*,
   2009 WL 1542795 (S.D. Ohio June 2, 2009) .................................................................. 14

*Helwig v. Vencor, Inc.*,
   251 F.3d 540 (6th Cir. 2001) ........................................................................................... 11

*In re Diebold Nixdorf Sec. Litig.*,
   2021 WL 1226627 (S.D.N.Y. Mar. 30, 2021) ......................................................... 2, 14, 15

*In re Huntington Bancshares Inc. Sec. Litig.*,
   674 F. Supp. 2d 951 (S.D. Ohio 2009) ............................................................................ 13

*In re Keithley Instruments, Inc. Sec. Litig.*,
   268 F. Supp. 2d 887 (N.D. Ohio 2002).......................................................................... 5, 8

*In re Sotera Health Co. Sec. Litig.*,
   2025 WL 860897 (N.D. Ohio Mar. 19, 2025) ................................................................... 5

*In re The Goodyear Tire & Rubber Co. Sec. Litig.*,
   436 F. Supp. 2d 873 (N.D. Ohio 2006)...................................................................... 12, 15

*In re Upstart Holdings, Inc. Sec. Litig.*,
  2023 WL 6379810 (S.D. Ohio Sept. 29, 2023) ............................................................ 7

*Kolominsky v. Root, Inc.*,
  100 F.4th 675 (6th Cir. 2024) .................................................................. 6, 13

*Loc. 295/Loc. 851 IBT Emp. Grp. Pension Tr. & Welfare Fund v. Fifth Third
  Bancorp.*,
  731 F. Supp. 2d 689 (S.D. Ohio 2010) ................................................................ 12

*Menon v. Maxeon Solar Techs., Ltd.*,
  2025 WL 1223559 (N.D. Cal. Apr. 28, 2025) ............................................................ 8

*Norfolk Cnty. Ret. Sys. v. Tempur-Pedic Int'l., Inc.*,
  22 F. Supp. 3d 669 (E.D. Ky. 2014), *aff'd sub. nom. Pension Fund Grp. v.
  Tempur-Pedic Int'l., Inc.*, 614 F. App'x 237 (6th Cir. 2015) .................................... 10

*Notredan, LLC v. Old Republic Exch. Facilitator Co.*,
  531 F. App'x. 567 (6th Cir. 2013) ................................................................ 5, 11

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
  575 U.S. 175 (2015).......................................................................................... 11

*Pittman v. Unum Grp.*,
  861 F. App'x 51 (6th Cir. 2021) ...................................................................... 13

*Plagens v. Deckard*,
  2023 WL 2711263 (N.D. Ohio Mar. 30, 2023) ........................................................ 14

*Plymouth Cnty. Ret. Ass'n. v. ViewRay, Inc.*,
  556 F. Supp. 3d 772 (N.D. Ohio 2021)................................................................... 5

*Saddle Rock Partners, Ltd. v. Hiatt*,
  1996 WL 859986 (W.D. Tenn. Mar. 26, 1996) .......................................................... 3

*Shupe v. Rocket Cos.*,
  660 F. Supp. 3d 647 (E.D. Mich. 2023)................................................................... 9

*St. Clair Cnty. Emps.' Ret. Sys. v. Acadia Healthcare Co.*,
  2021 WL 195370 (M.D. Tenn. Jan. 20, 2021)........................................................ 14

*Stein v. U.S. Xpress Enters., Inc.*,
  2020 WL 3584800 (E.D. Tenn. June 30, 2020)..................................................... 7, 9

*Teamsters Loc. 237 Welfare Fund v. ServiceMaster Glob. Holdings, Inc.*,
  2022 WL 989240 (W.D. Tenn. Mar. 31, 2022), *aff'd*, 83 F.4th 514 (6th Cir.
  2023) ............................................................................................................ 13

*Teamsters Loc. 237 Welfare Fund v. ServiceMaster Glob. Holdings, Inc.*,
   83 F.4th 514 (6th Cir. 2023) ......................................................................... 12, 13

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
   551 U.S. 308 (2007) ............................................................................................ 2

*Union Asset Mgmt. Holding AG v. Sandisk Corp.*,
   2016 WL 406283 (N.D. Cal. Jan. 22, 2016) ........................................................ 3

*Willis v. Big Lots, Inc.*,
   2016 WL 8199124 (S.D. Ohio Jan. 21, 2016) ................................................... 14

## STATUTES

15 U.S.C. § 78u-5(c)(1) ...................................................................................... 9

15 U.S.C. § 78u-5(c)(1)(B)(i) ........................................................................... 10

15 U.S.C. § 78u-5(e) .......................................................................................... 10

15 U.S.C. § 78u-5(i) ........................................................................................... 10

## I.    INTRODUCTION

Plaintiff concedes that when considering a motion to dismiss a securities class action like this one, the Court must analyze whether each challenged statement meets the PSLRA's heightened burden to plead falsity.  Plaintiff similarly concedes that the Court must determine whether the complaint alleges a strong inference of scienter as to each Defendant.  Plaintiff's motion to supplement its prior complaint (and thus the Court's decision on that motion) conducted neither analysis.  By its terms, that motion—which added post-Class Period comments by Holley's current CEO Matt Stevenson—discussed just one challenged-statement category (Holley's relationships with resellers).  More importantly, the supplemented allegations did not add facts about any Defendant's scienter.  After all, Stevenson joined the Company after the Class Period and said nothing about what the three Individual Defendants (the only three who matter for Holley's scienter) knew when they made the statements years earlier.

It is thus curious that Plaintiff implores the Court not to undertake either analysis.  *See* Opp. at 2.  It's particularly curious considering Plaintiff previously insisted that supplementing its complaint conserved resources by "allowing the Court to consider the most up-to-date allegations *before* it issues a decision on the pending motion to dismiss[.]"  Dkt. 55 at 12-13.  That merits analysis is precisely what Defendants seek in this motion.  And stripped of the bluster, Plaintiff's Opposition highlights two flaws in the SAC, either of which requires dismissal.

*First*, Plaintiff has not alleged a false or misleading statement with particularity.  Specifically, Plaintiff has not alleged facts showing that Defendants' statements about M&A, the DTC business, financial performance, or its reseller business were false or misleading when made.  Beyond that, when analyzed individually, the challenged statements should be dismissed as protected opinions, forward-looking statements immunized by the statutory safe harbor, or non-actionable corporate optimism.  For example, Plaintiff does not address case law dismissing nearly

1

identical statements about Holley's "mutually beneficial" reseller relationships and "strict" pricing discipline—and cites no case holding otherwise.

*Second*, Plaintiff has not alleged the required strong inference of scienter. Highlighting its pleading failure, Plaintiff misconstrues the applicable pleading standard, insisting that under *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007), the Court must construe "all reasonable inferences" in Plaintiff's favor. Opp. at 3 n.4. The *Tellabs* Court held the opposite. To qualify as "strong" under the PSLRA, the scienter inference "must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 314. Under this standard, which must be analyzed for *each Defendant*, Plaintiff's allegations fall short. Plaintiff alleges no specific *facts* suggesting any Defendant knew anything different from what they said in the Class Period. And the few speculative assertions Plaintiff offers mirror those that courts consistently reject as insufficient to establish a "strong" and "cogent" inference of scienter.

No doubt, after Stevenson joined Holley, he instituted initiatives he thought would benefit the Company. But "a change in business strategy does not itself show the old approach was plagued by fraud." *In re Diebold Nixdorf Sec. Litig.*, 2021 WL 1226627, at *14 (S.D.N.Y. Mar. 30, 2021). The SAC should be dismissed with prejudice.

## II.     ARGUMENT

### A.     Plaintiff Has Not Alleged Falsity

Plaintiff insists Defendants' argument "that the false statements are not clearly identified is meritless." Opp. at 3. But Plaintiff's own Opposition proves it has not "clearly identified" the statements it challenges. For example, in a section titled "Defendants' Actionable Misstatements and Omissions," Plaintiff cobbles various quotes about Holley's retail partners, including Tomlinson's statement that resellers were "growing very nicely and growing with us." *Id.* at 3-4

2

(citing SAC ¶ 38).  The problem is that Plaintiff did not identify this statement in the "materially false and misleading statements and omissions" section of the SAC.  *See* SAC ¶¶ 113-212.  And for good reason, since Tomlinson made the statement in April 2021—*months before* Plaintiff's own Class Period.  *Id.* ¶ 38.  As Plaintiff's own authority acknowledges, "Plaintiff obviously may not rely on statements made outside the class period."  *Saddle Rock Partners, Ltd. v. Hiatt*, 1996 WL 859986, at *16 (W.D. Tenn. Mar. 26, 1996).  Nor can it amend its complaint in its Opposition. *See Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020).

The confusion continues throughout the Opposition.  Plaintiff admits it does not challenge Holley's statements that it "focused on M&A, had an M&A pipeline, made acquisitions, and used M&A to increase its market position"—even though it bolds and italicizes those statements in the SAC's "false and misleading statements" section.  *Compare* Opp. at 11 n.11 *with* SAC ¶¶ 115, 119, 147, 150.  Plaintiff does the same when discussing Holley's DTC business.  It bolds and italicizes many DTC statements (including, for example, that the Company was "***highly focused***" on DTC (SAC ¶¶ 113, 157)), but now admits it "does not allege that DTC was not a priority or a source of growth."  Opp. at 9 n.9.  Far from meeting the PSLRA's "demanding standards," the SAC represents "little more than a long list of block quotes . . . (parts of which have been bolded and italicized for reasons that the [SAC] does not really explain)."  *Union Asset Mgmt. Holding AG v. Sandisk Corp.*, 2016 WL 406283, at *4 (N.D. Cal. Jan. 22, 2016).  The SAC should be dismissed on this ground alone.

### 1.    Acquisition Statements Should Be Dismissed

Plaintiff concedes that statements about Holley's focus on M&A, acquisition pipeline, and use of M&A to increase market position are not false or misleading.  Opp. at 9 n.9.  Plaintiff claims to challenge, however, statements about "cost synergies" from acquisitions, and that the Company was "meaningfully accelerating" integration, was positioned to "continue to acquire and integrate"

3

acquisitions, and had a "track record of recent acquisitions" that reflected an ability to complete "transformational acquisitions." *Id.* at 9. According to Plaintiff, these statements were false because Holley had failed to "successfully integrate and capture synergies from acquired companies." *Id.* Challenges to these statements should be dismissed for four reasons.

*First*, Plaintiff alleges no particularized facts showing the statements were false or misleading when made. In fact, Plaintiff's allegations show the opposite. For example, Plaintiff concedes that Holley *did* realize synergies from acquisitions: Plaintiff *quotes* the Company's statement that it generated "$35 million of cost saving synergies" from 2014 to 2020 "through reductions in product cost, elimination of headcount, facility costs and other SG&A expenses." SAC ¶ 131. Similarly, Plaintiff cites Holley's belief that its "track record of recent acquisitions" suggested an ability to make "transformational acquisitions" (Opp. at 9)—but Plaintiff omits the rest of the sentence, which listed the two "transformational" acquisitions, "MSD in 2015 and Driven Performance Brands in 2018." SAC ¶ 115. Plaintiff alleges no facts suggesting these deals were not transformational; Plaintiff says nothing about them at all.

*Second*, Plaintiff asserts that later "admissions" about the supposed failure to integrate "sharply contrast[ed]" with Defendants' Class Period statements. Opp. at 9. Plaintiff's own allegations refute its argument. Holley never said it had "failed" to integrate or capture synergies from acquired companies. *Id.* Rather, as Plaintiff's Opposition makes clear, in 2023, Holley sought to "finalize" that "synergy capture" and "successful integrations." *Id.* at 10.

*Third*, Plaintiff relies on four FEs to support its theory that Holley suffered "integration problems" and "upset consumers and hurt sales by gutting critical technical support." Opp. at 10-11. But these allegations, including that Holley replaced the Director of Sales and Technical Support (SAC ¶ 83), "present[] disgruntled opinion more than any fact stated with particularity."

4

*In re Keithley Instruments, Inc. Sec. Litig.*, 268 F. Supp. 2d 887, 899 (N.D. Ohio 2002) (rejecting FE allegation that company "hired a large number of new employees" without "proper training"). At most, these FEs report that Holley "fired staff after each merger" (SAC ¶¶ 65-66, 81), which *tracks* Defendants' statements about "synergies" through "elimination of headcount." *E.g.*, *id.* ¶¶ 106, 115, 131, 139, 147, 166-167, 183; *In re Sotera Health Co. Sec. Litig.*, 2025 WL 860897, at *27 (N.D. Ohio Mar. 19, 2025) (company "told investors that it was making particularized efforts to improve," which was "at minimum, consistent with what the former employees describe").

Plaintiff relies on FE3 to assert that the "disastrous" AEM integration "caused brand and reputational damage, pushed away many customers, and compressed margins." Opp. at 11. But neither Plaintiff nor FE3 quantifies the supposed "damage," identifies any (much less "many") lost customers, or details the "compressed margins." These types of conclusory gripes fail the PSLRA pleading test. *Plymouth Cnty. Ret. Ass'n. v. ViewRay, Inc.*, 556 F. Supp. 3d 772, 790 (N.D. Ohio 2021) (statements about backlog not false where employees offered "generalities about the backlog [and] the criteria by which orders are removed or included").

***Finally***, as discussed in the Motion, Plaintiff's challenged statements—including that Holley was "meaningfully accelerating" value-enhancing acquisitions—are immunized by the PSLRA safe harbor, protected opinions, non-actionable puffery, or all three. Mot. at 10, 18-20.

### 2.    DTC Statements Should Be Dismissed

Plaintiff concedes that statements about Holley's DTC business were not false or misleading, and thus has forfeited challenges to those statements. Opp. at 9 n.9; *Notredan, LLC v. Old Republic Exch. Facilitator Co.*, 531 F. App'x. 567, 569 (6th Cir. 2013) (failing to address argument forfeits claim).

### 3.    Financial Performance Statements Should Be Dismissed

Plaintiff admits that Holley's financial statements were accurate. *See* Opp. at 12. So

5

Plaintiff pivots, contending instead that the Company misleadingly "painted a rosy picture of sustainable strong financial results." *Id.* But the "disclosure of accurate historical data does not become misleading even if less favorable results might be predictable by the company in the future." *Kolominsky v. Root, Inc.*, 100 F.4th 675, 686 (6th Cir. 2024). That is particularly true here, as Holley promised nothing about the future and instead warned that its "operating results have fluctuated . . . in the past and can be expected to continue to fluctuate in the future," and thus "historical results of operations may not be indicative of future performance." Ex. 1 at 54; Ex. 2 at 42. The Sixth Circuit affirmed dismissal where the company included nearly identical warnings. *See Root*, 100 F.4th at 687 (company "warned that historically accurate data may not be indicative of future results"). In any event, these forecasts should be dismissed as forward-looking statements protected by the safe harbor (*see* Section II(A)(5)), opinions, or corporate optimism. *See City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*, 450 F. Supp. 3d 379, 400 (S.D.N.Y. 2020) ("existing customer relationships" and "best-in-class channels" "provide a strong platform to drive rapid growth" dismissed as "non-actionable puffery") (Opp. at 10); Mot. at 18-19.

### 4.     Reseller Statements Should Be Dismissed

Plaintiff's Opposition highlights why the Sixth Circuit instructs courts to conduct a "statement-by-statement analysis" when analyzing falsity. *Bondali v. Yum! Brands, Inc.*, 620 F. App'x 483, 491-92 (6th Cir. 2015). Indeed, although Plaintiff seems to challenge many statements about Holley's reseller relationships (*see* Mot. at 13 n.7), the Opposition addresses only five.

As explained above, one of those statements—resellers were "growing very nicely and growing with us"—cannot be actionable because Tomlinson did not say it during the Class Period and Plaintiff did not challenge it in the SAC. For another—there is "far more demand than is visible in our numbers"—Plaintiff rips the statement out of context and omits the surrounding text showing both that (1) the statement was an opinion (*see infra* at Section II(A)(6)); (2) Tomlinson

cautioned investors that he was "not suggesting" that demand would "come right back." *See* SAC ¶ 190; *see also Stein v. U.S. Xpress Enters., Inc*., 2020 WL 3584800, *30 (E.D. Tenn. June 30, 2020) (plaintiff's interpretation of statement was "untenable" in context).    And Plaintiff mischaracterizes not only Tomlinson but its own allegations when presenting another statement— that there were "'no effects' from DTC" and "Holley's brands were 'must-carry brands.'"  Opp. at 4.  As Plaintiff's own SAC makes clear, Tomlinson was responding to a question about reseller response to a cybersecurity incident and said *nothing* about DTC.  SAC ¶ 144; *see, e.g.*, *Chapman v. Mueller Water Prods., Inc.*, 466 F. Supp. 3d 382, 401 (S.D.N.Y. 2020) (dismissing where "Plaintiffs' claim mischaracterizes their own allegations").

That leaves Plaintiff's challenges to statements between July 28, 2021 and March 15, 2022 about "strong," "solid," or "mutually beneficial" relationships, "disciplined pricing," and "strict conformance" to MAP.  *See* Opp. at 3.  Plaintiff does not even try to address Defendants' cited cases showing that other courts have dismissed nearly identical statements at the pleading stage as non-actionable expressions of corporate optimism.  *See* Mot. at 17 (citing cases).  Nor does Plaintiff identify a single case finding a remotely similar statement to be actionable.  On the contrary, Plaintiff's authority supports dismissal, because the challenged statements are "vague," "optimistic, and "lack a standard against which a reasonable investor could expect them to be pegged." *In re Upstart Holdings, Inc. Sec. Litig.*, 2023 WL 6379810, at *12 (S.D. Ohio Sept. 29, 2023) (Opp. at 14) ("value," "strength," or "quality" are "frequently dismiss[ed]").

Instead, Plaintiff tries to show falsity through Stevenson's post-Class Period comments and anecdotes from a few former employees.  Neither meets Plaintiff's PSLRA burden to plead contemporaneous falsity with particularity.  Plaintiff contends that Defendants misleadingly omitted that "Holley's resellers cut purchases of Holley products, returned products *en masse*, and

7

turned to competitors." Opp. at 4. But Stevenson said nothing about resellers "cutting purchases" or "returning products," in the Class Period or otherwise. And although Stevenson said that "in some cases" Holley's "distribution partners" promoted "competitors' products," neither Stevenson nor Plaintiff identified those partners, let alone said if they materially contributed to Holley's financial performance. *See Keithley*, 268 F. Supp. 2d at 899 (rejecting FE allegation that company was cutting funding but did not mention "critical particular[s]" like how much or when).

The FE allegations are similarly vague. Not one claims to know how (or if) resellers' actions impacted Holley's performance. Further, Plaintiff never alleges with particularity *when* resellers "decreased" purchases, "returned" products, or switched to "competitors." *Menon v. Maxeon Solar Techs., Ltd.*, 2025 WL 1223559, at \*12 (N.D. Cal. Apr. 28, 2025) (FE claim that strategy led to a "great deal of loss" of dealers insufficient where "[n]o information is provided about the number of dealers" or the "significance of the dealers"). If anything, Plaintiff's allegations suggest Holley's pricing strategies occurred *after* Defendants made the challenged statements. For example, Plaintiff states that Holley "essentially eliminated" the bulk order discount in the "fall of 2022"—*over a year after* the Class Period started. SAC ¶ 51. Plaintiff alleges that Holley "broadened the discounts available to its DTC customers" at "the same time." *Id.* ¶ 52. As for selling DTC "below [MAP]," Plaintiff alleges that Holley "began experimenting" during "the COVID pandemic, but ramped them up in 2022." *Id.* ¶ 46. Plaintiff never says *when* in 2022 this experimentation allegedly occurred (much less *how many* products it covered or if it harmed Holley's performance). The Opposition thus highlights that the SAC provides none of the "critical context" required to satisfy the PSLRA. *Keithley*, 268 F. Supp. 2d at 899.

Plaintiff's cited authorities underscore that lack of detail. For example, in *Bond v. Clover Health Investments, Corp.*, 587 F. Supp. 3d 641, 655 (M.D. Tenn. 2022), the company proclaimed

8

that over 2,000 doctors used its software, while confidential witnesses reported the real usage was less than 10% of that figure. The witnesses based their allegations on conversations with those physicians and "timestamps" showing the physicians did not use the technology. *Id.* Likewise, the FEs in *Shupe v. Rocket Cos.*, 660 F. Supp. 3d 647, 678-80 (E.D. Mich. 2023), corroborated the defendants' own admissions that they monitored the performance metric at issue by explaining that management tracked that metric "daily," if not "at least four times per week." By contrast, Plaintiff's FEs offer no such details. *See, e.g.*, SAC ¶ 55 (FE3 "recalled hearing" distributors "would do everything in their power to not buy from Holley," but alleges no supporting facts).

### 5. Forward-Looking Statements Are Not Actionable

Plaintiff offers four reasons why the PSLRA's safe harbor does not apply to the forward-looking statements identified in the Motion, and all fail. *See* Opp. at 15-17. ***First***, Plaintiff asserts that ten statements were not forward-looking. Opp. at 16 (listing SAC ¶¶ 117, 119, 130, 141, 151, 154, 180-182, 193). But Plaintiff's own authority confirms the opposite. Specifically, statements that Holley was "aggressively pursuing numerous improvement opportunities," was "continu[ing] to make solid progress integrating acquired businesses" (SAC ¶ 193), and "believe[s]" its "scalable operational platform" positions Holley "to effectively integrate acquired businesses" (*id.* ¶ 119) track those protected by the safe harbor. *See Evoqua*, 450 F. Supp. 3d at 397-98 (Opp. at 10) ("[c]ontinue to evaluate and pursue accretive touch-in acquisitions" forward-looking); *Stein,* 2020 WL 3584800, *14  (market "presents us with an opportunity" and "continuing to benefit" from initiatives forward-looking).

***Second***, Plaintiff incorrectly contends the "safe harbor does not apply to omissions." Opp. at 16. The statute specifically applies to "omission[s] of a material fact necessary to make the statement not misleading." 15 U.S.C. § 78u-5(c)(1).

***Third***, Plaintiff asserts the safe harbor does not immunize forward-looking statements

when "made with actual knowledge of their falsity." Opp. at 16. Wrong again. The safe harbor offers two separate "layers of protection." *Norfolk Cnty. Ret. Sys. v. Tempur-Pedic Int'l, Inc.*, 22 F. Supp. 3d 669, 680 (E.D. Ky. 2014), *aff'd sub. nom. Pension Fund Grp. v. Tempur-Pedic Int'l, Inc.*, 614 F. App'x 237 (6th Cir. 2015). The PSLRA shelters forward-looking statements that either are identified as forward-looking and accompanied by meaningful cautionary language or are not made with actual knowledge of falsity. *See* 15 U.S.C. § 78u-5(i), 5(c)(1)(B)(i).

***Finally***, Plaintiff insists that the "adequacy of cautionary language" is "not appropriately resolved on a motion to dismiss." Opp. at 16-17. This is wrong, too. The statute instructs that on "any motion to dismiss," the Court "shall consider" "any cautionary statement accompanying the forward-looking statement." 15 U.S.C. § 78u-5(e). Holley's cautionary statements were not "vague" as Plaintiff suggests but (as its own authority confirms) "addressed precisely the risks" Plaintiff alleges. *Evoqua*, 450 F. Supp. 3d at 398-99 (Opp. at 10). For example, Holley warned about "fluctuations in demand as a result of the pandemic." Ex. 1 at 7, 55. Holley likewise cautioned that results could suffer if it failed "to maintain relationships with retail partners." Ex. 2 at 6. And Holley advised that it may not be able to "successfully integrate" acquired companies or "effectively manage the combined business following the acquisition." *Id.* at 24; Ex. 1 at 28. Plaintiff omits this (and other) cautionary language, proclaiming instead that the warnings were "inadequate" because the "warned-of events were already occurring." Opp. at 17. Again, Plaintiff ignores Sixth Circuit law that disclosures like Holley's adequately "warn an investor of what harms may come to their investment. They are not meant to educate investors on what harms are currently affecting the company." *Bondali,* 620 F. App'x at 491.

### 6.   Defendants' Opinion Statements Are Not Actionable

The SAC includes at least 28 non-actionable opinion statements. *See* Mot. at 19 (citing SAC paragraphs). In its Opposition, Plaintiff discusses only one of those statements, thus

forfeiting challenges to the rest.  *See* Opp. at 15; *Notredan*, 531 F. App'x. at 569.  As to the one statement Plaintiff does address—Tomlinson's comment that "we do think there is far more demand there than is visible in our numbers, hence my comment that we believe demand for our products is solid"—Plaintiff contends that Tomlinson (1) "assured" that demand "was above verifiable thresholds"; and (2) omitted "problems surrounding Holley's resellers."  Opp. at 15. Plaintiff is wrong on both.  First, Tomlinson did not "assure" anything.  Plaintiff omits the part of the same statement where Tomlinson explained: "after all the COVID lockdowns occurred," "DTC charged right on . . . and resellers pulled back dramatically.  And the conditions were such at the time that they had to come right back in within a month or 2 . . . . I'm not suggesting that, that's going to happen this time.  The economic conditions, I think, are much different."  SAC ¶ 190. Investors read a statement "in light of all its surrounding text," including "hedges" and "disclaimers."  *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 190 (2015).  In context, Tomlinson expressed his opinion, and did not "assure" that Holley's "numbers" would hit any threshold.  Second, Plaintiff never alleges that Tomlinson knew about reseller "problems."  On the contrary, Plaintiff concedes that Tomlinson said, "we've got some categories that are up, some categories that are down.  We wanted to kind of talk about both sides of that to be fair and balanced."  SAC ¶ 190.

### B.      Plaintiff Has Not Alleged a "Strong Inference" of Scienter

#### 1.      Plaintiff Alleges None of the *Helwig* Factors

Plaintiff's Opposition confirms it cannot meet its heavy burden to plead a strong inference of scienter.  Conceding it does not allege most of the factors courts evaluate to assess scienter ("*Helwig* factors"), Plaintiff insists the factors are not a "pleading necessity."  Opp. at 18 & n.16 (citing *Helwig v. Vencor, Inc.*, 251 F.3d 540 (6th Cir. 2001)).  That argument misses the point. Although "the *Helwig* factors are non-exhaustive," failure to plead them "indicates the absence of

scienter." *In re The Goodyear Tire & Rubber Co. Sec. Litig.*, 436 F. Supp. 2d 873, 900 (N.D. Ohio 2006). Indeed, the Sixth Circuit affirmed dismissal of a complaint with even more particularized allegations than Plaintiff's, concluding that the "tenuous application" of three *Helwig* factors, "together with the complete absence of the rest, supports the conclusion that the [plaintiff] has not alleged a strong inference of scienter." *Teamsters Loc. 237 Welfare Fund v. ServiceMaster Glob. Holdings, Inc.*, 83 F.4th 514, 534 (6th Cir. 2023); *see also, e.g.*, *Doshi v. Gen. Cable Corp.*, 823 F.3d 1032, 1042 (6th Cir. 2016) (absence of "[s]even factors favor rejecting a scienter inference"). In its Opposition, Plaintiff points to two of the nine *Helwig* factors, but the SAC does not plead either with particularity. That Plaintiff failed to plead the others, "particularly the lack [of] insider trading, suggests that the complaint faces an uphill climb to establish that any of the Defendants acted with scienter." *Loc. 295/Loc. 851 IBT Emp. Grp. Pension Tr. & Welfare Fund v. Fifth Third Bancorp.*, 731 F. Supp. 2d 689, 718 (S.D. Ohio 2010).

**Closeness in Time (*Helwig* Factor 3).** Plaintiff argues that the "temporal proximity" between Defendants' statements and the purported corrective disclosures "supports scienter." Opp. at 23. As Defendants explained in the Motion, to adequately plead this factor, Plaintiff must point to an *inconsistent* later disclosure. *See* Mot. at 21-22. Both "disclosures" Plaintiff points to track Defendants' prior statements, so this factor is inapplicable. *See* Opp. at 23; Mot. at 21-22.

**Disregard of the Most Current Factual Information (*Helwig* Factor 6).** Plaintiff claims that Bardos and Tomlinson "had full access to, and were made aware of the Company's performance throughout the Class Period." Opp. at 19. But Plaintiff cites no information (much less "red flags") that either saw or disregarded. At most, Plaintiff vaguely points to their positions and alleged access to Sightline reports. *Id.* In so doing, Plaintiff ignores that "general allegations" about "the receipt of reports" is not enough to meet the PSLRA's heightened pleading requirement.

12

*See In re Huntington Bancshares Inc. Sec. Litig.*, 674 F. Supp. 2d 951, 971 (S.D. Ohio 2009).

Indeed, Plaintiff cribs assertions consistently rejected as insufficient to plead scienter:

| Plaintiff's Argument | Cases Rejecting the Same Argument at Pleading Stage |
|---|---|
| Defendants were **"hands-on"** executives.  Opp. at 19. | *ServiceMaster*, 83 F.4th at 531 (no scienter based on executive being "**intimately aware**" of information underlying disclosures). |
| Tomlinson was Holley's **"chief operating decision maker,"** Bardos was Holley's "principal financial and accounting officer," and Nimmagadda was "EVP of Corporate Development & New Ventures."  Opp. at 19. | *Root*, 667 F. Supp. 3d at 713 ("simply being in a **high-level role** with a company is insufficient to give rise to a finding of scienter"); *Pittman v. Unum Grp.*, 861 F. App'x 51, 55 (6th Cir. 2021) ("fraudulent intent cannot be inferred merely from the **executives' positions in the company** and **alleged access to information**"). |
| Nimmagadda was "**deeply involved** with Holley's M&A and integration efforts" and relayed "Holley's due diligence requests to AEM."  Opp. at 19-20. | *Huntington Bancshares*, 674 F. Supp. 2d at 971 (assertions that the "**degree of due diligence** conducted by" the defendant "demonstrates its knowledge" is "little more than an assumption"). |
| Bardos **"signed and certified Holley's financial filings."**  Opp. at 19. | *Doshi*, 386 F. Supp. 3d at 841 ("**SOX certifications**" did not support scienter). |
| Defendants are **"presumed to be aware of matters central to Holley's business."**  Opp. at 21. | *Pittman*, 861 F. App'x at 55 ("fact that executives are **intimately familiar with a core component** of their business does little to suggest fraudulent intent"). |
| Defendants made "**statements about core aspects of Holley's business.**" Opp. at 21. | *Bondali*, 620 F. App'x at 492 (that defendants "**made statements**" about relevant issues, "**paid close attention**" to those issues because they were "**core**" to company's operations insufficient to support scienter). |

## 2.    Plaintiff's Other Arguments Fail to Support Scienter

**"Abrupt Departures."**  Plaintiff mentions Bardos's and Tomlinson's departures, Opp. at 22, but this does not support an inference of scienter because Plaintiff alleges no facts explaining "the circumstances" of those departures. *Teamsters Loc. 237 Welfare Fund v. ServiceMaster Glob. Holdings, Inc.*, 2022 WL 989240, at *34 (W.D. Tenn. Mar. 31, 2022), *aff'd*, 83 F.4th 514, 531 (6th

13

Cir. 2023).  On the contrary, Plaintiff ignores its own allegations that Bardos left to "pursue another opportunity and for personal reasons," SAC ¶ 9, that Tomlinson retired after twenty years, and Holley retained a search firm to help with succession planning.  *Id.* ¶¶ 24, 205.  Plaintiff thus "offers nothing beyond innuendo to permit the Court to discern anything out-of-the-ordinary about these departures."  *Diebold*, 2021 WL 1226627, at *14.  Such fact-free speculation contrasts with Plaintiff's cited cases, where departures coincided with investigations into alleged fraud.  *See Frank v. Dana Corp.*, 646 F.3d 954, 958 (6th Cir. 2011) (defendant left after SEC began investigating company's accounting); *Plagens v. Deckard*, 2023 WL 2711263, at *29 (N.D. Ohio Mar. 30, 2023) (defendant terminated during SEC investigation); *St. Clair Cnty. Emps.' Ret. Sys. v. Acadia Healthcare Co.*, 2021 WL 195370, at *2, *7 (M.D. Tenn. Jan. 20, 2021) (defendants "abruptly fired" and "resigned with no notice" after 14-month investigation); *Willis v. Big Lots, Inc.*, 2016 WL 8199124, at *8 (S.D. Ohio Jan. 21, 2016) (defendant left after SEC investigation).

**Post-Class Period "Admissions."**  Plaintiff says post-Class Period statements by non-Defendants support scienter, but again, this hindsight speculation highlights Plaintiff's failure to plead *facts* showing what the Individual Defendants knew when they made the challenged statements.  Opp. at 23-24.  For example, Plaintiff points to Stevenson's statements long after the Class Period, but admits his views on business strategy cannot support any Defendant's scienter.  Opp. at 24 ("Plaintiff is not trying to transfer Stevenson's scienter to Defendants.").  Plaintiff instead assumes that "Defendants were privy to" or "recklessly disregarded" facts that contradicted the challenged statements.  Opp. at 25.  But "general assertion[s]" about what Plaintiff "thinks" Defendants knew cannot "plead scienter without hard numbers or other specific information."  *Gruhn v. Tween Brands, Inc.*, 2009 WL 1542795, at *8 (S.D. Ohio June 2, 2009).  Plaintiff offers none of this, from Stevenson or anyone else.  Speculating about what the Individual Defendants

14

"would have" or "should have" known does "not suffice to establish scienter." *Goodyear*, 436 F. Supp. 2d at 896 (knowledge after class period did not show scienter in class period).

Plaintiff's reliance on post-Class Period statements by Board members fail for similar reasons. *See* Mot. at 21. Neither said anything about the Individual Defendants or their states of mind. In fact, none suggested any earlier statement was false. For example, Plaintiff notes that Matthew Rubel stated in March 2023 that COVID-related stimulus "distorted" financial results in 1Q22. Opp. at 24. But Holley repeatedly warned that the pandemic's "impact on consumer confidence and spending" was "highly uncertain and ever-changing," making it "extremely difficult to predict how the Company's business and operations will be affected." Ex. 2 at 15. Similarly, Plaintiff claims Michelle Gloeckler admitted Holley "had struggled" to "realize" M&A synergies. Opp. at 24. She said nothing of the sort. Rather, she stated that "[o]ver the past 3 years, our team has completed 16 acquisitions, integrated 13 ERP systems and consolidated 160,000 square feet of facilities. These acquisitions contributed nearly $175 million of sales in 2022." Holley planned to realize $10 million *more* "synergies over the next 12 to 18 months." Ex. 5 at 5.

In the end, Plaintiff chides Defendants for identifying the pleading flaws in each of its scienter arguments. Opp. at 18. According to Plaintiff, such an approach contravenes "*Tellabs*' mandate for a holistic analysis." *Id.* True, to assess scienter, the Court must "assess all the allegations holistically." *Tellabs*, 551 U.S. at 326. "But the Supreme Court's command does not permit Plaintiff to combine inadequate allegations" to show scienter. *Diebold*, 2021 WL 1226627, at *15. Put another way, "zero plus zero (plus zero plus zero plus zero) cannot equal one." *Id.* Whether considered individually or holistically, Plaintiff's allegations fail to show a strong inference of Defendants' scienter, and the SAC should be dismissed on this ground alone.

## III.    CONCLUSION

For these reasons, the SAC should be dismissed with prejudice.

15

Dated: May 8, 2025                                    Respectfully submitted,


                                                     */s/ Sean M. Berkowitz*
                                                     Sean M. Berkowitz (*pro hac vice*)
                                                     Eric R. Swibel (*pro hac vice*)
                                                     Nicholas J. Siciliano (*pro hac vice*)
                                                     Renatta A. Gorski (*pro hac vice*)
                                                     Latham & Watkins LLP
                                                     330 North Wabash Street, Suite 2800
                                                     Chicago, IL 60611
                                                     Telephone: 312.876.7700
                                                     Facsimile: 312.993.9767
                                                     Email: sean.berkowitz@lw.com
                                                            eric.swibel@lw.com
                                                            nicholas.siciliano@lw.com
                                                            renatta.gorski@lw.com

                                                     Michele D. Johnson (*pro hac vice*)
                                                     Latham & Watkins LLP
                                                     650 Town Center Drive, 20th Floor
                                                     Costa Mesa, CA 92626
                                                     Telephone: 714.540.1235
                                                     Facsimile: 714.755.8290
                                                     Email: michele.johnson@lw.com

                                                     Michael P. Abate
                                                     Kaplan Johnson Abate & Bird LLP
                                                     710 W. Main St., 4th Floor
                                                     Louisville, KY 40202
                                                     Telephone: 502.540.8280
                                                     Email: mabate@kaplanjohnsonlaw.com


                                                     *Attorneys for Defendants Holley Inc., Tom Tomlinson, Dominic Bardos, and Vinod Nimmagadda*

16

## CERTIFICATE OF SERVICE

I hereby certify that on May 8, 2025, I electronically filed the foregoing document with the Court via CM/ECF, which will automatically send notice and a copy of same to counsel of record via email.

/s/ *Sean M. Berkowitz*
Sean M. Berkowitz