BARRETT JOHNSTON MARTIN
 & GARRISON, LLC
DAVID GARRISON (KY Bar No. 98258)
200 31st Avenue North
Nashville, TN  37203
Telephone:  615/244-2202
615/252-3798 (fax)
dgarrison@barrettjohnston.com

Local Counsel

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF KENTUCKY

AT BOWLING GREEN

| | |
|---|---|
| CITY OF FORT LAUDERDALE GENERAL EMPLOYEES' RETIREMENT SYSTEM, on Behalf of Itself and All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> HOLLEY INC., f/k/a EMPOWER LTD., et al., <br><br> Defendants. | Civil Action No. 1:23-cv-00148-GNS <br><br> <u>CLASS ACTION</u> <br><br> LEAD PLAINTIFF'S RESPONSE TO DEFENDANTS' NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS SUPPLEMENTED AMENDED COMPLAINT |

Lead Plaintiff[1] City of Fort Lauderdale General Employees' Retirement System respectfully submits this response to Defendants' submission of *Washtenaw County Employees' Retirement System v. Dollar General Corp.*, 2025 WL 1749664 (M.D. Tenn. June 24, 2025), as supplemental authority in support of their pending motion to dismiss. ECF 76.

*Dollar General* breaks no new ground. It merely applies existing law from *Helwig v. Vencor, Inc.*, 251 F.3d 540 (6th Cir. 2001), which the parties here have already briefed at length, to a different set of facts and circumstances. *Dollar General* does not involve key reseller relationships or repeated misrepresentations of "strong pricing discipline" across channels with "strict conformance to minimum advertised pricing," or the failure to integrate key acquisitions that exist here. *Compare* ECF 68 at ¶¶37-39, 54, 64, 115-16, 118-20, 122, 129, 147-48, 157, 159, 183, 194 *with Dollar Gen.*, 2025 WL 1749664, at *3 (alleging presence of excess inventory at stores, inadequate staffing, ***customer*** pricing issues in stores at checkout, and inaccurate accounting). It also does not involve admissions by a new CEO revealing the falsity of the defendants' prior statements that "provide factual support for the allegations that Holley acted unlawfully." *Compare* ECFs 67 at 7, 68 at ¶¶221-233 *with Dollar Gen.*, 2025 WL 1749664, at *7-14 (no CEO admissions). Put simply, *Dollar General* changes nothing, and Defendants' motion to dismiss should be denied.

Defendants use *Dollar General* to engage in an unremarkable tit-for-tat comparison of how *Helwig* applied there versus how *Helwig* applies here, and assert *Dollar General* supports dismissal because "while the *Dollar General* plaintiffs alleged six of the nine *Helwig* factors . . . , Plaintiff at most points to two." ECF 76 at 2. But *Dollar General* makes clear the *Helwig* factors

---

[1]    All capitalized terms have the same definitions as in Plaintiff's Opposition to Defendants' Motion to Dismiss the Supplemented Amended Complaint (ECF 72).

are "non-exhaustive" and "decidedly not a checklist," and that even "[i]f some factors are inapplicable, that 'does not meaningfully detract from a strong inference of scienter . . . .'" 2025 WL 1749664, at *7 (citing *Dougherty v. Esperion Therapeutics, Inc.*, 905 F.3d 971, 981-82 (6th Cir. 2018) (finding a strong inference of scienter where six *Helwig* factors were inapplicable)). Indeed, courts have sustained scienter allegations without referencing the *Helwig* factors **at all** or with only a subset of them present, and nothing precludes consideration of allegations outside the *Helwig* framework. *See* ECF 72 at 18 n.16 (collecting cases). Rather, "the '**only** appropriate approach' is to 'review scienter pleadings based on the collective view of the facts,'" as a rigid factor-by-factor analysis "'risks losing the forest for the trees.'" *Id.* at 17 (quoting *Frank v. Dana Corp.*, 646 F.3d 954, 961 (6th Cir. 2011)).

Viewed collectively, Plaintiff's allegations give rise to a strong inference that Defendants were aware of the Company's problems with resellers, M&A integration, demand, and growth during the Class Period. ECF 72 at 19-25. The SAC alleges, for example, that during the Class Period: (i) the Individual Defendants actively tracked and repeatedly discussed Holley's core business operations, including the integration of acquisitions and the state of reseller relationships that accounted for 80% of the Company's sales; (ii) two of the three Individual Defendants suspiciously resigned following the fraud's revelation; and (iii) the false statements and corrective disclosures occurred in close temporal proximity. *Id.* at 19-23. The SAC also alleges specific post-Class Period admissions by Holley's current CEO that Holley had no pricing discipline or MAP enforcement on 97% of its products and had been excluding resellers from sales promotions, providing strong circumstantial evidence of Defendants' knowledge. *See id.* at 5, 23-25; *see also* ECF 67 at 7 (finding the post-Class Period admissions "support the allegations of falsity and scienter" and that Defendants' arguments to the contrary were "not well-taken").

- 2 -

Defendants ignore most of these well-pleaded indicia in their attempt to analogize this case to *Dollar General*. Instead, Defendants focus on two *Helwig* factors that aligned with the *Dollar General* plaintiffs' allegations: (i) suspiciously timed insider trading and (ii) divergence between internal reports and external statements on the same subject. *See* ECF 76 at 2. That *Dollar General* found such allegations insufficient to allege scienter is of no moment and should be disregarded because the facts and allegations here are simply different. For example, the SAC does not allege insider trading. But the absence of insider trading does not preclude an inference of scienter, and *Dollar General* does not suggest otherwise. *See PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 691 (6th Cir. 2004) ("[W]e have never held that the absence of insider trading defeats an inference of scienter."). Nor does *Dollar General*'s finding that the defendants may not have read certain emails from a store manager and an assistant store manager, or that the defendants might not have attended certain calls or meetings ***in that case*** mean that every individual defendant is blind to critical events happening at their company. *See Dollar Gen.*, 2025 WL 1749664, at *9-12.

At bottom, Defendants' attempt to draw parallels to *Dollar General* rests on a superficial comparison of the scienter allegations under a faulty, mechanical application of the *Helwig* factors, without regard to the specific circumstances of this case, which contravenes Supreme Court and Sixth Circuit precedent. Viewed collectively, Plaintiff's allegations suffice to support a strong inference of scienter at least as compelling as an innocent inference. Respectfully, this Court should deny Defendants' motion to dismiss.

- 3 -

DATED:  July 16, 2025

ROBBINS GELLER RUDMAN &
  DOWD LLP
ROBERT J. ROBBINS (admitted *pro hac vice*)
ELIZABETH A. SHONSON (admitted *pro hac vice*)
ANDREW T. REES (admitted *pro hac vice*)
ALEX KAPLAN (admitted *pro hac vice*)


                    /s/ Robert J. Robbins
                 ROBERT J. ROBBINS

225 NE Mizner Boulevard, Suite 720
Boca Raton, FL  33423
Telephone:  561/750-3000
561/750-3364 (fax)
rrobbins@rgrdlaw.com
eshonson@rgrdlaw.com
arees@rgrdlaw.com
akaplan@rgrdlaw.com

*Lead Counsel for Lead Plaintiff*

BARRETT JOHNSTON MARTIN
   & GARRISON, LLC
DAVID GARRISON (KY Bar No. 98258)
200 31st Avenue North
Nashville, TN  37203
Telephone:  615/244-2202
615/252-3798 (fax)
dgarrison@barrettjohnston.com

*Local Counsel*

- 4 -