BARRETT JOHNSTON MARTIN
  & GARRISON, LLC
DAVID GARRISON (KY Bar No. 98258)
200 31st Avenue North
Nashville, TN  37203
Telephone:  615/244-2202
dgarrison@barrettjohnston.com

Local Counsel

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF KENTUCKY

AT BOWLING GREEN

| | |
|---|---|
| CITY OF FORT LAUDERDALE GENERAL EMPLOYEES' RETIREMENT SYSTEM, on Behalf of Itself and All Others Similarly Situated,<br><br>                Plaintiff,<br><br>  vs.<br><br>HOLLEY INC., et al.,<br><br>                Defendants. | Civil Action No. 1:23-cv-00148-GNS<br><br><u>CLASS ACTION</u><br><br>**STIPULATED DISCOVERY ORDER GOVERNING PRODUCTION OF DOCUMENTS AND DISCOVERY OF ELECTRONICALLY STORED INFORMATION** |

Lead Plaintiff City of Fort Lauderdale General Employees' Retirement System and Defendants Holley Inc., Tom Tomlinson, Dominic Bardos, and Vinod Nimmagadda (collectively with Lead Plaintiff, the "Parties") respectfully submit the following stipulated order ("Order") governing production of electronically stored information ("ESI") and hard copy discovery. For the avoidance of doubt, any disputes arising under this Order will be governed by the Federal Rules of Civil Procedure, the Local Rules of the Western District of Kentucky, and the Court, and nothing in this Order shall supersede or supplant the Federal Rules of Civil Procedure, the Local Rules of the Western District of Kentucky, and the Court. To the extent ESI issues not addressed in this Order arise, the Parties will meet and confer in good faith.

## I.     DEFINITIONS

**A.**     "Document" carries its broadest meaning consistent with Rule 34 of the Federal Rules of Civil Procedure and includes both ESI and hard copy documents.

**B.**     "Electronically Stored Information" or "ESI" means information that is stored electronically, regardless of the media or whether it is in the original format in which it was created, as opposed to stored in hard copy (*i.e.*, on paper). Electronically Stored Information carries the broadest possible meaning consistent with Fed. R. Civ. P. 34.

**C.**     "Litigation" refers to the above-captioned matter.

**D.**     "Metadata" means: (i) information embedded in a native file (defined below) that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file; or (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system. Metadata is a subset of ESI. The relevant Metadata needed to be provided, to the extent it exists in the usual course of business, is identified in Table 1 for select categories of documents.

- 1 -

**E.** "Native File" means the file of ESI in the application in which it was originally created.

**F.** "Producing Party" means a Party that produces documents.

**G.** "Protected Information" or "Privileged Information" means information that the Producing Party claims to be privileged or protected by the attorney-client privilege, work product doctrine, and/or common interest privilege.

**H.** "Receiving Party" means a Party or non-party to whom documents are produced.

**I.** "Requesting Party" means a Party that requested documents to be produced.

**II.    PRESERVATION**

**A.    Preservation Obligations**

The Parties will take reasonable steps to preserve relevant ESI that is within their respective possession, custody, or control and is subject to discovery pursuant to Fed. R. Civ. P. 26(b)(1). The Parties will meet and confer regarding the scope of preservation, including custodians, data sources, date ranges, and categories of information that have been or should be preserved in connection with this Litigation. To the extent the Parties identify potential sources of discoverable information (including ESI) that they have reason to believe have not been preserved or should not be preserved, that Party will notify the other Party, and the Parties will meet and confer.

**B.    ESI Not Reasonably Accessible**

If a Producing Party contends that any discoverable ESI is not reasonably accessible within the meaning of Fed. R. Civ. P. 26(b)(2)(B), that Party shall identify such ESI with reasonable particularity and shall provide the Receiving Party with the basis for declining to produce such ESI, including but not limited to information about the nature of any limitations on access, the likely costs that might be incurred in producing such ESI, the method used for storage of such ESI (*e.g.*, the type of system used to store the ESI), and the location of such ESI. The parties shall

negotiate in good faith concerning any such ESI. The data sources not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B) will not be collected, searched, reviewed, or produced until if/when the parties reach an agreement.

Notwithstanding the foregoing, except upon a showing of good cause, the following data sources and document types are not discoverable in this Litigation, and the Parties shall have no obligation to preserve data contained in the following forms:

1. Temporary data stored in a computer's random access memory (RAM), or other operating system files.

2. Online access data such as temporary Internet files, history, cache, cookies, and the like.

3. Server, system, or network logs.

The Parties will meet and confer at a reasonable time during fact discovery to discuss whether there is an ongoing obligation to preserve the following data sources and document types, to the extent they exist:

1. Back-up tapes or other long-term storage media that were created strictly for use as a data back-up or disaster recovery medium.

2. Deleted, fragmented, unallocated space or other data only accessible by forensics.

3. Data remaining from systems no longer in use that is unintelligible on systems in use.

4. Ephemeral data automatically deleted by its nature or design by the application, settings, or operating systems.

## III.    IDENTIFICATION OF RESPONSIVE DOCUMENTS

The Parties shall meet and confer in an effort to conduct discovery in the most efficient and effective manner. Specifically, the Parties will attempt in good faith to come to an agreement on search and culling methods used to identify responsive information. The Parties will meet and confer regarding any proposed limitations on the scope of discovery, including custodians,

custodial and non-custodial sources, date ranges, file types, or any additional proposed method to cull documents for review (*e.g.*, search terms, technology-assisted review ("TAR"), predictive coding), including for short message format communications such as those from mobile devices or collaborative tools (*e.g.*, text messages, WhatsApp, Slack, Teams, G-Chat, etc.).  The Parties will not seek Court intervention regarding the methodology to be used to identify responsive information without first attempting to resolve any disagreements in good faith, based upon all reasonably available information.

### A.      Sources

The Parties will disclose and discuss the custodial and non-custodial data sources likely to contain responsive documents and ESI.  The Parties will identify and describe any relevant electronic systems and storage locations.  The Parties will also disclose and describe any document retention policies or practices (*e.g.*, retention schedules or policies, auto-delete functions, routine purging, mailbox size limits), archiving systems with size limitations on the number of emails searched or exported (*e.g.*, Mimecast, Barracuda), or other policies or practices likely to impact the existence, accessibility, or ability to collect responsive documents or ESI.  Unless otherwise identified above, the Parties will identify and describe sources likely to contain responsive information that a Party asserts should not be searched or are not reasonably accessible, and will explain the reasons for such assertions.  The Parties will disclose third-party sources, if any, likely to contain discoverable information.  The Parties retain the right, upon reviewing the initial production of documents, and conducting other investigation and discovery, to request that files from additional custodial or non-custodial sources be searched and meet and confer regarding such request.

### B.     Identification of Custodians

The Parties shall meet and confer about persons whose files are likely to contain documents and ESI relating to the subject matter of a Request for Production served under Rule 34, including their job titles.  The Parties retain the right, upon reviewing the initial production of documents and conducting other investigation and discovery, to request that files from additional custodians be searched and meet and confer regarding such request.  If a Party requests files from additional custodians, the other Parties do not concede that such additional custodians are relevant and should be included in any search, review, or production of documents proportional to the needs of the case.

### C.     Targeted Responsive Documents

Documents and categories of documents that the Parties and/or the Court determine are relevant to this action and responsive to a Party's document requests, and that are regularly maintained in a known location, or in a location that is knowable upon reasonable inquiry of those with knowledge about a Party's document management, shall be collected without the use of search terms or other agreed upon advanced search methodology (*e.g.*, analytics, predictive coding, TAR).  During the meet and confer discussions described in Section III.D, the Producing Party will indicate which categories of documents and data sources will be produced with and without the use of search terms or other advanced methodology.  Where potentially responsive ESI shall be searched through the use of search terms, the Parties agree to follow the process identified below, and the Parties shall meet and confer regarding any proposed deviation.  Nothing in this paragraph shall limit the Parties' ability to review documents for responsiveness and privilege, regardless of whether the documents are collected with or without the use of search terms.

**D.      Search Terms**

Where the Parties agree that potentially responsive ESI shall be searched through the use of search terms, the Parties shall use the process identified below and shall meet and confer regarding any proposed deviation.  The Producing Party shall provide a list of proposed search terms, which shall contain all search terms that it believes would lead to the identification of relevant documents.  To the extent reasonably possible, search terms will be crafted with input from the custodians in order to identify appropriate nomenclature, code words, etc.

Upon receipt of the proposed search terms, the Receiving Party shall provide any revisions or additional search terms that it believes are necessary to identify responsive documents.  Within 14 days of receiving the revised or additional search terms, or as the other Party otherwise agrees, the Producing Party will provide a search term hit list or hit report after global de-duplication (including the number of documents that hit on each term, the number of unique documents that hit on each term (documents that hit on a particular term and no other term on the list), and the total number of documents that would be returned by using the proposed search term list, with and without families).  The Parties shall meet and confer regarding the proposed search terms within a reasonable period of time after the receipt of the search term hit report to agree on a set of search terms.

If disputed terms still exist at the end of the meet and confer process, any Party may present the issue to the Court.  The Parties retain the right, upon reviewing the production of documents and conducting other investigation and discovery, to propose additional search terms.  Nothing herein shall preclude a Producing Party from reviewing filtered discoverable information further for responsiveness and privilege.  If a Party requests additional search terms or files from additional custodians, the other Parties do not concede that such additional terms or custodians are relevant

and should be included in the search, review, or production of documents proportional to the needs of the case.

### E.    Technology-Assisted Review

No Party shall use predictive coding/TAR or artificial intelligence for the purpose of culling or otherwise excluding the documents to be collected, reviewed, or produced without notifying the opposing Party prior to use and with ample time to meet and confer in good faith regarding a mutually agreeable protocol for the use of such technologies, including validation and disclosure of TAR metrics.  The Parties do not need to disclose the use of TAR solely for the purposes of sorting or prioritizing documents for review.

## IV.    PRODUCTION FORMAT

**General Production Format.**  ESI and non-ESI/hard copy documents shall be produced to the Requesting Party as text-searchable image files.  When a text-searchable image file is produced, the Producing Party must preserve the integrity of the underlying ESI, *i.e.*, the original formatting, the Metadata (as noted below) and, where applicable, the revision history.  If a document does not contain extractable text, the Producing Party shall provide OCR for that document.

### A.    Hard-Copy Documents – Format

Hard-copy documents should be scanned as single-page, Group IV, 300 DPI TIFF images with an .opt image cross-reference file and a delimited database load file (*i.e.*, .dat).  The database load file should contain the following fields: "BEGNO," "ENDNO," "PAGES," "VOLUME," and "CUSTODIAN."  The documents should be logically unitized (*i.e.*, distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records) and be produced in the order in which they are kept in the usual course of business.  If an original document contains color, and the color is necessary to understand the meaning or content of the

document, the document shall be produced as single-page, 300 DPI JPG images with JPG compression and a high quality setting as to not degrade the original image. Multi-page OCR text for each document should also be provided. The OCR software shall maximize text quality. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process if possible.

**B.      Production of ESI**

The Parties recognize that the production of ESI can be limited by available technology and that there may be circumstances where a Producing Party is unable to comply with an obligation in this Order through no fault of its own. If a Producing Party determines that it is unable to meet a requirement in this Order, it shall promptly notify the Requesting Party, and the Parties will meet and confer regarding the requirement.

1.      **Format**. The Producing Party shall preserve all ESI in native format with all Metadata intact and shall produce the Metadata for any ESI produced in this Litigation to the extent available, as detailed below. Except where otherwise noted in this section, the Parties will produce ESI in single-page, black and white, TIFF Group IV, 300 DPI TIFF images. Spreadsheet and presentation type files, audio and video files, and photo or graphic images (other than logos) shall be produced in native format. Short message communications (*e.g.*, text messages, WhatsApp, Slack, iMessage, Teams, G-Chat, Bloomberg, etc.) will be produced in relatively short message format ("RSMF") with all available Metadata and attachments. Except for messages that contain privileged or otherwise protected content, the complete conversation will be produced, separated into 24-hour increments. To the extent RSMF cannot be provided, the Parties shall meet and confer on the appropriate Metadata fields and format of production. If an original document being produced in image format contains color, and that color is necessary to ascertain the meaning

- 8 -

of the document (including but not limited to documents with tracked changes in the Metadata), the document should be produced as single-page, 300 DPI JPG images with JPG compression and a high-quality setting as to not degrade the original image. Otherwise, the images will be produced in black and white, unless a Party requests the Producing Party produce a color image. For such documents, the Producing Party shall use reasonable efforts to reproduce a color version of the document, if the source document is reasonably accessible and the request and associated costs are reasonable and proportional to the needs of the case. The Parties are under no obligation to enhance an image beyond how it was kept in the usual course of business. TIFFs/JPGs will show any and all text, hidden content, and images that would be visible to the reader using the native software that created the document. For example, TIFFs/JPGs of email messages will include the BCC line, and documents will display comments and hidden content. If the image does not accurately reflect the document as it was kept in the usual course of business, including all comments, edits, tracking, etc., the Parties agree to meet and confer in good faith on production format options.

If a document is produced in RSMF or in native format, a single-page Bates-numbered image slip sheet stating the document has been produced in native format should be provided, with the exception of PowerPoint presentations. PowerPoint documents collected as .ppt, .pptx, or similar, should be produced in native format along with single-page, 300 DPI TIFF/JPG images which display both the slide and available speaker's notes, to the extent they exist. Each Native File should be named according to the Bates number it has been assigned and should be linked directly to its corresponding record in the load file using the NATIVELINK field. In addition, Native Files should be accompanied by an image (TIFF) placeholder that contains the beginning Bates number and confidentiality designation. To the extent that either Party believes that specific

- 9 -

documents or classes of documents, not already identified within this protocol, should be produced in native format, the Parties agree to meet and confer in good faith.

2.    **De-Duplication**.  Each Party shall remove exact duplicate documents based on MD5 or SHA-1 hash values, at the family level.  Attachments should not be eliminated as duplicates for purposes of production unless the parent email and all attachments are also duplicates.  The Parties agree that an email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an email that does not include content in those fields, even if all remaining content in the email is identical.  Removal of near-duplicate documents and email thread suppression is not acceptable.  De-duplication will be done across the entire collection (global de-duplication), and the CUSTODIAN-ALL field will list each custodian, separated by a semicolon, who was a source of that document, and the FILEPATH-DUP field will list each file path, separated by a semicolon, that was a source of that document.  Should the CUSTODIAN-ALL or FILEPATH-DUP Metadata fields produced become outdated due to rolling productions, an overlay file providing all the custodians and file paths for the affected documents will be produced prior to substantial completion of the document production.

3.    **Email Thread Suppression**.  Email thread suppression shall not be used to remove documents from production.  The Parties may use email thread suppression to sort and prioritize documents for review.

4.    **Metadata**.  All ESI will be produced with a delimited, database load file that contains, if available, the Metadata fields listed in Table 1, attached hereto.  The non-privileged Metadata produced should have the correct encoding to enable preservation of the documents' original language.  For any document that is redacted, the Producing Party shall

- 10 -

withhold any extracted text that is the subject of redaction, and instead provide OCR for the produced image as redacted.

For ESI other than email and e-docs that do not conform to the Metadata listed in Table 1, such as text messages, Instant Bloomberg, iMessage, Google Chat, MS Teams, Slack, Google Docs, etc., the Parties will meet and confer as to the appropriate Metadata fields to be produced.

The Parties agree not to remove non-privileged Metadata from any native production. Notwithstanding this, the Parties understand that producing Native Files may affect some changes in Metadata. Metadata shall be preserved when producing Native Files whenever possible.

The Parties may redact privileged Metadata. In doing so, the Producing Party shall clearly identify the Metadata as being privileged.

5. **Embedded Objects**. Embedded files shall be produced as attachments to the document that contains the embedded file, with the parent/child relationship preserved. The embedded files will be marked with a "YES" in the load file under the "Is Embedded" Metadata field. The Parties agree logos need not be extracted as separate documents as long as they are displayed in the parent document.

6. **Document Families and Attachments**. The Parties agree that if any part of a communication or its attachments is responsive, the entire communication and attachments will be produced, except any attachments that must be withheld or redacted on the basis of privilege or other protection. The Parties will meet and confer about whether there is an appropriate basis for withholding a family document for any reason other than attorney-client privilege or work product doctrine. If any member of the document family is subject to production, a Party should produce all non-privileged members of the same document family regardless of individual responsiveness of any attachment or embedded file. The attachments will be produced

- 11 -

sequentially after the parent communication, ensuring that the load file accompanying an ESI production clearly identifies document families and the relationships between the family members.

The Parties shall use reasonable efforts to collect and produce point-in-time documents that are links in documents and communications, including, but not limited to, Google G Suite, Microsoft 365, etc., and treat them as family documents. The Producing Party shall make a reasonable effort to locate and collect the identified document(s) that are linked, as those linked documents existed at the time the document that contains the relevant link was sent. If possible, Documents extracted from links shall be populated with the BEGATTACH and ENDATTACH Metadata fields to show the family relationship. If documents cannot be extracted from links at the time of collection, or the documents that can be extracted are not likely to be the same version that existed at the time the communication was sent (*i.e.*, point-in-time or contemporaneous version), the Parties agree to meet and confer to discuss potential alternative (and reasonable) methods of collection and production, if any.

7. **Compressed Files Type**. If possible, compressed file types (*e.g.*, .ZIP, .RAR, .CAB, .Z) should be decompressed so that the lowest-level document or file is extracted.

8. **Databases, Structured, Aggregated, or Application Data**. To the extent a response to discovery requires production of electronic information stored in a database or other structured or aggregated data source or otherwise maintained in an application, the Parties will meet and confer regarding appropriate format and methods of production, if any. The Parties will consider whether all relevant information may be provided by querying the database for discoverable information and generating a report in a reasonably usable and exportable electronic file. If agreement cannot be reached within ten business days following the meet and confer, any Party may thereafter move for resolution from the Court, consistent with the Court's applicable

rules regarding discovery disputes. If a Party requests production of information stored in a database or other structured or aggregated data source or otherwise maintained in an application, the other Parties may object to that request.

9.      **Exception Report**. The Producing Party shall compile an exception report enumerating any unprocessed or unprocessable documents, their file type, and the file location.

10.      **Encryption**. To maximize the security of information in transit, any media on which documents are produced may be encrypted. In such cases, if available, the Producing Party shall transmit the encryption key or password to the Receiving Party, under separate cover, contemporaneously with sending the encrypted media.

11.      **Redactions**. If documents that the Parties have agreed to produce need to be redacted, the Parties will implement redactions while ensuring that proper formatting and usability are maintained. The produced documents must clearly indicate which portions have been redacted, the reason for the redaction will be clearly stated on the face of the document (*e.g.*, "Redacted Attorney-Client," "Redacted Work Product"), and if possible, the searchable text provided must accurately reflect the contents of the document as produced. Spreadsheets requiring redaction will be redacted using native redaction software and produced in native format.

## V.      PRIVILEGE LOG AND TREATMENT OF PRIVILEGED MATERIALS

### A.      Privilege Log

The Parties agree to serve privilege logs, within a reasonable time after productions that include materials redacted and/or withheld on the basis of privilege, providing information regarding all documents withheld or redacted under a claim of privilege. The Parties will provide logs of all documents withheld or redacted on the basis of the attorney-client privilege, work product doctrine, and/or any other applicable immunity and/or protection.

- 13 -

1.    **Log**. Each privilege log should contain the following information, which shall be generated by the inclusion of Metadata fields, to the extent they exist, and accurately and fully capture the agreed-upon information:[1]

    a. SENDER/FROM

    b. RECIPIENTS/TO

    c. CC

    d. BCC

    e. DATE

    f. PRIVILEGE TYPE

    g. DESCRIPTION OF THE NATURE OF THE DOCUMENT SUFFICIENT TO ASSESS THE CLAIM OF PRIVILEGE

2.    A Producing Party may include additional Metadata fields in its privilege log(s). If the Requesting Party believes that additional Metadata fields are necessary for it to assess the claim of privilege, it may request that the Producing Party revise its privilege log(s) to include those Metadata field(s), and the Parties shall meet and confer about this request.

3.    The privilege log(s) will be provided in Excel format or a similar format that allows for the ability to search, sort, and filter the privilege log entries.

4.    The privilege log should also include a column indicating a document identifier for purposes of allowing the Parties to meet and confer about particular entries on the privilege log.

---

[1] To the extent such Metadata would not reveal Privileged Information. For ESI other than email and e-docs that do not conform to the Metadata listed here, such as text messages, Instant Bloomberg, iMessage, Google Chat, MS Teams, Slack, Google Docs, etc., the Parties will meet and confer as to the appropriate Metadata fields to be included in the privilege log.

5.      The Producing Party may substitute a description of the communication where the content of any fields may reveal Privileged Information, but must indicate that the fields have been revised.  Should the Receiving Party in good faith have reason to believe a particular entry on the privilege log does not reflect a privileged document, or lacks sufficient information to assess the claim, it may request a description that is sufficient to identify the subject of the document and the basis for the privilege assertion for that entry, to be produced within ten business days of the request, or within such other reasonable time as the Parties may agree or the Court may order.  If, after receipt of the description, the Receiving Party believes that any document withheld is not, in fact, privileged, it may, after meeting and conferring with the other Parties, take appropriate action with the Court.

6.      The privilege log will clearly identify any: (a) attorneys on the privilege log using an asterisk or other agreed-upon method; and (b) any third party (in a different manner than the attorneys).

### B.      Exceptions

No privilege log needs to include any privileged documents and communications, including work product, with outside litigation counsel in this Litigation, which post-dates the filing of the first-filed complaint.

### C.      Contesting Claim of Privilege or Work Product Protection

Nothing in this Order shall limit the Receiving Party's right to challenge (on grounds unrelated to the fact of the disclosure itself) the Producing Party's claim that disclosed information is protected from disclosure by the attorney-client privilege, common interest privilege, work product doctrine, and any other applicable immunity and/or protection.  If, after undertaking an appropriate meet-and-confer process (which may include a telephonic conference), the Parties are

- 15 -

unable to resolve any dispute they have concerning the protection of documents for which a claim of disclosure has been asserted, the Receiving Party may file the appropriate motion or application as provided by the Court's procedures to compel production of such material.  Any Protected Information submitted to the Court in connection with a challenge to the Producing Party's claim of attorney-client privilege or work product protection shall not be filed in the public record, but rather shall be redacted, filed under seal in accordance with the Local Rule 5.6, or submitted for *in camera* review as appropriate.

## VI.    NON-PARTY SUBPOENAS

A Party that issues a non-party subpoena is responsible for promptly producing any documents obtained under that subpoena to all other Parties in the same format the documents are produced in response to the non-party subpoena.  For the avoidance of doubt, if files are received by means other than electronic transmission, they can be sent to other Parties via electronic transmission, provided that doing so does not unreasonably alter any Metadata contained therein.  Subject to agreement among the Parties, non-party documents may be produced in a format other than how they were produced by the non-party, *e.g.*, documents produced in native format may be formatted for production and Bates numbered to identify the producing non-party.  Productions shall be made consistent with the Agreed Confidentiality and Rule 502(d) Order.

## VII.    DATA PRIVACY

The Parties agree to meet and confer in the event there are custodians or data sources subject to a foreign country's data privacy laws in any ESI or other discovery requests.

## VIII.    LIMITATIONS ON PRODUCTION

The Parties will meet and confer regarding any potential deviations from this Order, and any such conferral will be requested in writing with a specific description of the potential deviation. Production in this Litigation is anticipated to be conducted on a rolling basis, with the Parties

making reasonable efforts to expedite the process.  If either Party feels production has been unreasonably delayed, the Parties agree to confer via telephone, email, or in person to reach a mutually agreeable consensus prior to Court involvement.  If agreement cannot be reached within ten business days following the meet and confer, any Party may move for resolution from the Court, consistent with the Court's applicable rules.

## IX.    MODIFICATION

This Order may be modified by a stipulated order of the Parties or by the Court for good cause shown.

## X.    AGREED CONFIDENTIALITY AND RULE 502(d) ORDER

The terms of the separate Agreed Confidentiality and Rule 502(d) Order governing production and treatment of confidential information in this Litigation also govern all productions pursuant to this Order. In the event of a conflict among the provisions, the terms of the Agreed Confidentiality and Rule 502(d) Order control.

**IT IS SO STIPULATED THROUGH THE PARTIES' UNDERSIGNED COUNSEL OF RECORD.**

DATED:  November 5, 2025

| ROBBINS GELLER RUDMAN & DOWD LLP | LATHAM & WATKINS LLP |
|---|---|
| By: */s/ Robert J. Robbins* <br> ROBERT J. ROBBINS (*pro hac vice*) <br> ELIZABETH A. SHONSON (*pro hac vice*) <br> ANDREW T. REES (*pro hac vice*) <br> ALEX KAPLAN (*pro hac vice*) <br> 225 NE Mizner Boulevard, Suite 720 <br> Boca Raton, FL  33423 <br> Telephone:  561/750-3000 <br> rrobbins@rgrdlaw.com <br> eshonson@rgrdlaw.com <br> arees@rgrdlaw.com | By: */s/ Sean M. Berkowitz (with permission)* <br> SEAN M. BERKOWITZ (*pro hac vice*) <br> ERIC R. SWIBEL (*pro hac vice*) <br> NICHOLAS J. SICILIANO (*pro hac vice*) <br> RENATTA A. GORSKI (*pro hac vice*) <br> 330 North Wabash Street, Suite 2800 <br> Chicago, IL  60611 <br> Telephone:  312/876-7700 <br> sean.berkowitz@lw.com <br> eric.swibel@lw.com <br> nicholas.siciliano@lw.com <br> renatta.gorski@lw.com |

akaplan@rgrdlaw.com

Lead Counsel for Lead Plaintiff

BARRETT JOHNSTON MARTIN &
    GARRISON, LLC
DAVID GARRISON (KY Bar No. 98258)
200 31st Avenue North
Nashville, TN  37203
Telephone:  615/244-2202
dgarrison@barrettjohnston.com

Local Counsel

LATHAM & WATKINS LLP
MICHELE D. JOHNSON (*pro hac vice*)
650 Town Center Drive, 20th Floor
Costa Mesa, CA  92626
Telephone:  714/540-1235
michele.johnson@lw.com

KAPLAN JOHNSON ABATE & BIRD LLP
MICHAEL P. ABATE
710 West Main Street, 4th Floor
Louisville, KY  40202
Telephone:  502/540-8280
mabate@kaplanjohnsonlaw.com

Attorneys for Defendants Holley Inc., Tom
Tomlinson, Dominic Bardos, and Vinod
Nimmagadda

*H. Brent Brennenstuhl*

**H. Brent Brennenstuhl**
**United States Magistrate Judge**

November 6, 2025

## TABLE 1: METADATA FIELDS[1]

| Field Name | Example / Format | Description |
|---|---|---|
| BEGNO | ABC0000001 (Unique ID) | The Document ID number associated with the first page of a document. |
| ENDNO | ABC0000003 (Unique ID) | The Document ID number associated with the last page of a document. |
| BEGATTACH | ABC0000001 (Unique ID Parent-Child Relationships) | The Document ID number associated with the first page of the parent document. |
| ENDATTACH | ABC0000008 (Unique ID Parent-Child Relationships) | The Document ID number associated with the last page of the last attachment or hyperlinked attachment. |
| VOLUME | VOL001 | The name of CD, DVD, or Hard Drive. |
| RECORDTYPE | eMail, Attachment, Scanned Doc, eFile, Chat/Text | The record type of a document. |
| SENTDATE | MM/DD/YYYY | The date the email or calendar entry was sent. |
| SENTTIME | HH:MM | The time the email or calendar entry was sent. |
| RECEIVEDDATE | MM/DD/YYYY | The date the document was received. |
| RECEIVEDTIME | HH:MM | The time the document was received. |
| CREATEDATE | MM/DD/YYYY | The date the document was created. |
| CREATETIME | HH:MM | The time the document was created. |
| LASTMODDATE | MM/DD/YYYY | The date the document was last modified. |
| LASTMODTIME | HH:MM | The time the document was last modified. |
| MEETING START DATE | MM/DD/YYYY | Start date of calendar entry. |
| MEETING START TIME | HH:MM | Start time of calendar entry. |
| MEETING END DATE | MM/DD/YYYY | End date of calendar entry. |
| MEETING END TIME | HH:MM | End time of calendar entry. |
| FILEPATH | i.e. /JsmithPC/Users/Jsmith/Desktop | The file path from the location in which the document was stored in the usual course of business. This field should be populated for both email and e-files. |
| FILEPATH-DUP | i.e. /JSmith.pst/Inbox /Network Share/Accounting/… /TJohnsonPC/Users/TJohnson/My Documents/… | The file paths from the locations in which the duplicate documents were stored in the usual course of business. This field should be populated for both email and e-files and separated by semicolons. |
| AUTHOR | jsmith | The author or owner of a document from extracted metadata. |
| LASTEDITEDBY | jsmith | The name of the last person to edit the document from extracted metadata. |
| FROM | Joe Smith <jsmith@email.com> | The display name and email address of the author of an email/calendar item. An email address should always be provided. |
| TO | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and email address of the recipient(s) of an email/calendar item. An email address should always be provided for every email if a recipient existed. |
| CC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and email of the copyee(s) of an email/calendar item. An email address should always be provided for every email if a copyee existed. |
| BCC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and email of the blind copyee(s) of an email or calendar item. An email address should always be provided for every email if a blind copyee existed. |
| SUBJECT | | The subject line of the email/calendar item. |
| MESSAGE TYPE | Appointment, Contact, Task, Distribution List, Message, etc. | An indication of the email system message type. |
| IMPORTANCE | Normal, Low, High | Email Importance Flag |
| TITLE | | The extracted document title of a document. |
| CUSTODIAN-ALL | Smith, Joe; Doe, Jane | All of the custodians of a document from which the document originated, separated by semicolons. |
| SOURCE | Computer, Mobile Phone, Email, Network Share, Slack, WhatsApp, Teams, Database Name, etc. | The source from which the document was collected. |
| ATTACH COUNT | Numeric | The number of attachments to a document. |
| FILEEXT | XLS | The file extension of a document. |
| FILENAME | Document Name.xls | The file name of a document. |
| FILESIZE | Numeric | The file size of a document (including embedded attachments). |
| TRACK CHANGES | Yes or No | The yes/no indicator of whether tracked changes exist in the file. |
| IS EMBEDDED | Yes or No | The yes/no indicator of whether a file is embedded in another document. |
| IS HYPERLINKED[2] | Yes or No | The yes/no indicator of whether a file is a hyperlinked document. |
| HASH | | The MD5 or SHA-1 Hash value or "de-duplication key" assigned to a document. The same hash method (MD5 or SHA-1) should be used throughout production. |
| CONVERSATION INDEX | | ID used to tie together email threads. |
| REDACTED | Yes or Blank | If a document contains a redaction, this field will display 'Yes'. |
| REDACTION TYPE | Attorney-Client Privilege; Work Product | The redaction type(s) applied on the document. |
| TIMEZONE PROCESSED | PST, CST, EST, etc | The time zone the document was processed in. **NOTE:** This should be the time zone where the documents were located at time of collection. |
| NATIVELINK | D:\NATIVES\ABC000001.xls | The full path to a native copy of a document. |
| FULLTEXT | D:\TEXT\ABC000001.txt | The path to the full extracted text of the document. There should be a folder on the deliverable, containing a separate text file per document. These text files should be named with their corresponding Bates numbers. **Note**: Emails should include header information: author, recipient, cc, bcc, date, subject, etc. If the attachment or e-file does not extract any text, then OCR for the document should be provided. |

[1] For ESI other than email and e-docs that do not conform to the metadata listed here, such as text messages, Instant Bloomberg, iMessage, Google Chat, MS Teams, Slack, etc., the parties will meet and confer as to the appropriate metadata fields to be produced.

[2] This metadata field need not be produced if the Producing Party is unable to automatically identify hyperlinked attachments during document processing.