BARRETT JOHNSTON MARTIN
  & GARRISON, LLC
DAVID GARRISON (KY Bar No. 98258)
200 31st Avenue North
Nashville, TN  37203
Telephone:  615/244-2202
dgarrison@barrettjohnston.com

Local Counsel

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF KENTUCKY

AT BOWLING GREEN

| | |
|---|---|
| CITY OF FORT LAUDERDALE GENERAL EMPLOYEES' RETIREMENT SYSTEM, on Behalf of Itself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>HOLLEY INC., f/k/a EMPOWER LTD., et al.,<br><br>Defendants. | Civil Action No. 1:23-cv-00148-GNS<br><br>CLASS ACTION |

**LEAD PLAINTIFF'S RESPONSE IN OPPOSITION TO NON-PARTY JEG'S HIGH PERFORMANCE'S MOTION TO QUASH SUBPOENA, OR IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER**

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION .................................................................................................................1

II.     BACKGROUND ..................................................................................................................3

III.    LEGAL STANDARD............................................................................................................5

IV.     ARGUMENT......................................................................................................................5

        A.      Jegs Fails to Demonstrate Undue Burden...............................................................6

                1.      Factor 1: Relevance - The Subpoena Seeks Relevant Documents
                        and Jegs' Motion Fails to Suggest Otherwise.............................................6

                2.      Factor 2: Need – Lead Plaintiff Needs Documents in the Hands of
                        Holley's Distributors/Resellers Like Jegs, and Jegs' Motion Fails
                        to Describe Potential Burden with Particularity ........................................8

                3.      Factor 3: Confidentiality – There Are No Legitimate
                        Confidentiality Concerns and Jegs' Motion Points to None.......................9

                4.      Factor 4: Harm – Jegs' Theoretical Harm Is Insufficient to Justify
                        Quashing the Subpoena..............................................................................9

        B.      Jegs' Alternative Request to Modify the Subpoena and for a Protective
                Order Until Defendant Discovery Is "Exhausted" Should Be Denied .................11

V.      CONCLUSION.................................................................................................................12

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Am. Elec. Power Co. v. U.S.*,
191 F.R.D. 132 (S.D. Ohio 1999) ...................................................................................5, 8

*Brown v. Tax Ease Lien Servicing, LLC*,
2017 WL 6940735 (W.D. Ky. Aug. 21, 2017) ...........................................................6

*Est. of Patterson v. Cont. Freighters, Inc.*,
2019 WL 2880981 (W.D. Ky. July 3, 2019) ..............................................................7

*First Fin. Bank Nat'l Ass'n v. Williams*,
2021 WL 5315419 (W.D. Ky. Oct. 7, 2021) ...........................................................8, 9

*GEOMC Co. v. Calmare Therapeutics, Inc.*,
2020 WL 6375562 (D. Conn. Oct. 30, 2020) ..............................................................7

*Glass v. Polyconcept N. Am., Inc.*,
2024 WL 3678793 (W.D. Ky. Aug. 6, 2024) ...........................................................12

*HBKY, LLC v. Elk River Export, LLC*,
2023 WL 12241186 (E.D. Ky. Oct. 26, 2023)...........................................................7

*In re Heparin Prods. Liab. Litig.*,
273 F.R.D. 399 (N.D. Ohio 2011) ..............................................................................10

*In re Smirman*,
267 F.R.D. 221 (E.D. Mich. 2010) ...............................................................................5

*In re Subpoena Duces Tecum to Tammy Risner*,
338 F.R.D. 380 (S.D. Ohio 2021).................................................................................5

*Klein v. AIG Trading Grp. Inc.*,
228 F.R.D. 418 (D. Conn. 2005).................................................................................7

*Malin v. JPMorgan*,
860 F. Supp. 2d 574 (E.D. Tenn. 2012).....................................................................12

*Oppenheimer Fund, Inc. v. Sanders*,
437 U.S. 340 (1978).................................................................................................6, 7

*Plain Loc. Sch. Dist. Bd. of Educ. v. DeWine*,
335 F.R.D. 115 (N.D. Ohio 2020) .......................................................9, 10, 11, 12

**Page**

*Schnatter v. 247 Grp., LLC,*
    343 F.R.D. 325 (W.D. Ky. 2022)..................................................................5, 6, 7

*State Farm Mut. Auto. Ins. Co. v. Warren Chiropractic & Rehab Clinic, P.C.,*
    315 F.R.D. 220 (E.D. Mich. 2016) ........................................................6

**STATUTES, RULES, AND REGULATIONS**

Federal Rules of Civil Procedure
    Rule 26.....................................................................................................4
    Rule 26(b)(1)............................................................................................6
    Rule 45..............................................................................................4, 8, 11
    Rule 45(d)(3).......................................................................................1, 5
    Rule 45(d)(3)(iv)......................................................................................5

Joint Local Rules of Civil Practice
    Rule 37.1..................................................................................................4

Lead Plaintiff City of Fort Lauderdale General Employees' Retirement System ("Lead Plaintiff") respectfully submits this response in opposition to Non-Party Jeg's High Performance's ("Jegs") Motion to Quash Subpoena, or in the Alternative, for a Protective Order ("Motion" or "Mot."), filed on March 3, 2026 (ECF 123).

## I.    INTRODUCTION

Jegs' Motion should be denied because Jegs fails to meet its burden under Rule 45(d)(3) of the Federal Rules of Civil Procedure for quashing Lead Plaintiff's valid subpoena dated February 2, 2026 ("Subpoena"). Rather than continue good faith negotiations regarding a narrowed, targeted production in response to the Subpoena, for which Lead Plaintiff already agreed to extend Jegs' response date, Jegs prematurely filed its Motion. As set forth below, there is simply no need for Court intervention considering that Lead Plaintiff proposed significant compromises in both the scope and timing of Jegs' obligation to produce documents.

Lead Plaintiff is well within its rights to seek documents from Jegs, a third party that Defendants admit was one of Holley Inc.'s ("Holley") resellers/distribution partners during the Class Period. *See* ¶45.[1] Jegs is a large distributor and reseller of high performance automotive parts and its "business draws in hundreds of thousands of customers each year." *See* https://www.jegs.com/AboutUs (last visited, Mar. 24, 2026). On its website, Jegs sells hundreds of Holley products. *See* https://www.jegs.com/v/Holley/510 (detailing "Holley Performance Products and Carburetors") (last visited Mar. 24, 2026). Jegs includes Holley in its "Top Brands" category and runs sales specials on Holley products like the "Holley IRS Tax Day Sale," currently being offered on Jegs' homepage. *See* https://www.jegs.com/ (last visited Mar. 24, 2026).

---

[1]    Citations to "¶__" are to paragraphs of the Supplemented Amended Complaint for Violations of the Federal Securities Laws (ECF 68), the operative complaint in this case. Unless otherwise noted, all emphasis is added and citations are omitted.

Lead Plaintiff seeks documents from Jegs because Holley's relationships with its resellers/distributors are at the very heart of this litigation. *See* ECF 78 at 5 (denying Defendants' motion to dismiss and recognizing that Lead Plaintiff "makes allegations describing why these statements were false, alleging that Holley was experiencing a 'channel conflict,' and failed to follow the 'minimum advertised pricing' ('MAP') that ultimately hid and failed to account for the loss in business with resellers and distributors comprising the vast majority of Holley's sales."); *see id* at 6 ("Next, Holley promised DTC sales would lead to 'highly profitable, high margin growth' without risking existing reseller relationships, which The Retirement System purports to have been untrue."). While documents within Holley's exclusive possession, custody, and control are important to this central case issue, so too are documents in the hands of third parties like Jegs, because, as Lead Plaintiff alleges, "[r]esellers and distributors, and Holley's relationships with them, are critical to Holley's business" because Holley "sold the vast majority of its products through resellers," and Defendants repeatedly assured investors that Holley had "established mutually beneficial and long-term relationships with [its] resellers." ¶¶35, 37.

Recognizing the competing interests of needing discovery from a non-party like Jegs with the need to not ***over***burden Jegs, Lead Plaintiff has acted reasonably at every step since serving the Subpoena: granting extensions of time, proposing to narrow the Subpoena's scope, limiting the time period covered by the Subpoena, and proposing a phased production focused on materials uniquely within Jegs' possession. Jegs, by contrast, has improperly refused to produce ***any*** documents unless Lead Plaintiff capitulates to a blanket, six-months-long deferral of all of Jegs' obligations under the Subpoena. Jegs has also insisted that Lead Plaintiff needs to exhaust all discovery from Holley prior to receiving documents from Jegs. While Lead Plaintiff is respectful

- 2 -

of Jegs' desire to not be *over*burdened, its demands are untenable and not supported by the law. Accordingly, the Motion should be denied.

## II.      BACKGROUND

On February 3, 2026, Lead Plaintiff served the Subpoena on Jegs' registered agent. The Subpoena includes 21 requests ("Requests") for documents and communications, largely focusing on how the relationship between Jegs and Holley changed over time and was impacted by issues at the heart of this case, including, *inter alia*, Holley's violations of its MAP policy (Request Nos. 4-8, 10, 12, 17), degradation of Holley's relationship with its resellers such as Jegs (Request Nos. 3-4, 8-9, 12, 14-15, 17-18), and pricing inconsistencies between Holley's sales channels (direct-to-consumer versus business-to-business) (Request Nos. 4, 10-11, 17). *See* ¶¶5, 16, 37-40, 42-64, 109-113, 116, 118, 120, 122, 129, 141, 148, 152, 159, 221, 227-228.

Jegs' original deadline to respond to the Subpoena was March 4, 2026. On February 5, 2026, counsel for Jegs requested a six-week extension of time to respond to the Subpoena. Despite the length of the requested extension of time, Lead Plaintiff stated it agreed to Jegs' request if Jegs was prepared to produce responsive documents by that time, otherwise it was amenable to a three-week extension until March 25, 2026 for Jegs' written response, with an open offer to meet and confer. On March 2, 2026, counsel for Jegs and Lead Plaintiff conferred by phone and discussed the scope of the Subpoena, Jegs' objections, and the possibility of a further extension for Jegs to respond. During that call, Jegs' counsel requested a three- to six-month total deferment of its obligation to respond to the Subpoena, stating that Lead Plaintiff should seek documents from Defendants prior to seeking any documents from Jegs.

Lead Plaintiff explained it could not agree to a blanket deferral, but was open to a further two-month extension (for a total of approximately three months), if Jegs agreed to produce a more limited, narrowed set of documents in an initial production. Lead Plaintiff stated it would review

Jegs' limited, initial production before determining if Jegs might need to produce any additional documents. Lead Plaintiff also agreed to narrow the relevant time period covered by the Subpoena to only the Class Period (July 2021 through February 2023, inclusive), and to discuss the use of document custodians for electronic documents if Jegs believed it would aid in the search and collection process.

On March 3, 2026, the day prior to Jegs' original deadline to respond to the Subpoena (which had been extended to March 25), counsel for Lead Plaintiff and Jegs met and conferred again, and Lead Plaintiff reiterated that the narrowed initial production sought would only consist of documents likely to be *solely* in Jegs' possession, including easily retrievable Holley-related documents and internal communications responsive to the Requests. Lead Plaintiff memorialized the conversation in a follow-up email sent to Jegs' counsel later that afternoon. *See* Declaration of Alex Kaplan, Esq. ("Kaplan Dec."), filed herewith, Ex. A.

Shortly after Lead Plaintiff sent the follow-up email, Jegs filed the instant Motion, certifying pursuant to Local Rule 37.1 and Fed. R. Civ. P. 26 and 45 "that it has made a reasonable and good faith effort to attempt to resolve this matter with Plaintiff's counsel prior to filing this motion," but "Plaintiff and Jegs are unable to resolve this dispute." Mot. at 5. After the filing, Lead Plaintiff's counsel again reached out to Jegs via email and left a voicemail to propose a stay of the briefing on the Motion in order to give Jegs and Lead Plaintiff sufficient time to continue negotiations and to resolve their dispute without the need for Court intervention. *See* Kaplan Dec., Ex. B. Jegs refused, stating it would only agree to a blanket deferral of its obligations under the Subpoena for three months, at which time Jegs would reconvene to *begin* negotiating a narrowed set of documents responsive to the Requests. *See id.*, Ex. C. Absent complete deferral, Jegs also refused to continue briefing on the instant Motion. *Id.*

- 4 -

Put simply, Jegs refuses to comply with the Subpoena or negotiate a more tailored response. By refusing to produce *any* documents, Jegs' Motion has created unnecessary briefing and expenditure of judicial resources.

## III.    LEGAL STANDARD

"The party seeking to quash a subpoena bears the ultimate burden of proof." *Schnatter v. 247 Grp., LLC*, 343 F.R.D. 325, 330 (W.D. Ky. 2022) (cleaned up); *In re Smirman*, 267 F.R.D. 221, 223 (E.D. Mich. 2010) (A "nonparty seeking to quash a subpoena bears the burden of demonstrating that the discovery sought should not be permitted."). Federal Rule of Civil Procedure 45(d)(3) provides the Court must quash or modify a subpoena that subjects a person to an undue burden. Fed. R. Civ. P. 45(d)(3)(iv). "Undue burden is, however, a fact-specific inquiry." *In re Subpoena Duces Tecum to Tammy Risner*, 338 F.R.D. 380, 383 (S.D. Ohio 2021). "Factors considered include 'relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.'" *Id.* (quoting *Am. Elec. Power Co. v. U.S.*, 191 F.R.D. 132, 136 (S.D. Ohio 1999)).

## IV.    ARGUMENT

The Subpoena properly requests categories of documents highly relevant to Lead Plaintiff's claims and proportional to the needs of this securities class action. As set forth above, Lead Plaintiff offered to extend the deadline for Jegs to produce responsive documents, limit the scope of the Subpoena, and continue negotiations with Jegs in an effort to reduce Jegs' burden. Rather than continue negotiating in good faith or attempt to alleviate its burden, Jegs prematurely filed the instant Motion, seeking to relieve itself of *any* burden to respond to the Subpoena. But no burden is not the standard, and Jegs' Motion should be denied.

## A. Jegs Fails to Demonstrate Undue Burden

The crux of Jegs' Motion is that the Subpoena must be quashed because it will cause Jegs undue burden. *See* Mot. at 2-4. As Jegs recognizes, "[w]hen determining whether compliance with a subpoena imposes an undue burden, courts will balance four competing factors – (1) relevance; (2) need; (3) confidentiality; and (4) harm." Mot. at 2 (citing *Brown v. Tax Ease Lien Servicing, LLC*, 2017 WL 6940735, at *3 (W.D. Ky. Aug. 21, 2017)). Jegs' Motion largely gives short shrift to these four factors, and fails to discuss the Requests or its response to them with particularity. Jegs never quantifies how many documents are at issue, how much time it will need to expend collecting them, or how many document custodians are at issue. Instead, Jegs seeks to excuse itself of all obligations under the Subpoena. But, examination of each of the relevant "undue burden" factors demonstrates Jegs should be ordered to produce documents responsive to the Subpoena.

### 1. Factor 1: Relevance - The Subpoena Seeks Relevant Documents and Jegs' Motion Fails to Suggest Otherwise

"A subpoena to a third party under Rule 45 is subject to the same discovery limitations as those set out in Rule 26." *State Farm Mut. Auto. Ins. Co. v. Warren Chiropractic & Rehab Clinic, P.C.*, 315 F.R.D. 220, 222 (E.D. Mich. 2016) (denying non-parties' motions to quash) (cleaned up). Pursuant to Fed. R. Civ. P. 26(b)(1):

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

"This language is broadly construed by the federal courts to include 'any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case.'" *Schnatter*, 343 F.R.D. at 329 (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S.

340, 351 (1978)); *Est. of Patterson v. Cont. Freighters, Inc.*, 2019 WL 2880981, at *1 (W.D. Ky. July 3, 2019). Moreover, "[t]he objecting party bears the burden of demonstrating specifically how, despite the broad and liberal construction afforded [by] the federal discovery rules, each request is not relevant or how each question is overly broad, unduly burdensome or oppressive." *GEOMC Co. v. Calmare Therapeutics, Inc.*, 2020 WL 6375562, at *3 (D. Conn. Oct. 30, 2020) (citing *Klein v. AIG Trading Grp. Inc.*, 228 F.R.D. 418, 422 (D. Conn. 2005)).

Jegs incorrectly asserts the relevance factor "weighs in favor of quashing the Subpoena or at the worst, is neutral." Mot. at 3. In support, Jegs generically states it is unclear why Jegs' financial information is relevant to this case. *Id.* What Jegs' Motion fails to appreciate is that Jegs is uniquely situated because although it is not a party to this securities class action, it was one of Holley's largest resellers who suffered as a result of, among other things, Holley's promotional pricing through its DTC channel "at prices well below the agreed-upon minimum advertised prices, effectively undercutting" resellers such as Jegs "which had previously purchased those products from Holley in order to sell to end users." *See* ¶45; *Schnatter*, 343 F.R.D. at 335 (recognizing, when weighing relevance, that non-party was "uniquely situated" as a "party to the agreements at issue in the action"). Thus, the relevance of Jegs' documents concerning, for example, its "performance and/or compliance with Holley's sales policies and procedures" (Request No. 8) or "Holley's enforcement or non-enforcement of [its] pricing policies" (Request No. 12), which overlap into Jegs' financial information, is easily established, and Jegs fails to meet its burden demonstrating otherwise with specificity. *See HBKY, LLC v. Elk River Export, LLC*, 2023 WL 12241186, at *2-*3 (E.D. Ky. Oct. 26, 2023) (denying non-party's motion to quash subpoena and rejecting undue burden argument that non-party's financial information would be irrelevant to the case).

- 7 -

**2.    Factor 2: Need – Lead Plaintiff Needs Documents in the Hands of Holley's Distributors/Resellers Like Jegs, and Jegs' Motion Fails to Describe Potential Burden with Particularity**

When evaluating a motion to quash for undue burden, courts recognize there is a need to balance the litigants' need for the information sought versus the burden of production on the non-party. *See, e.g.*, *Am. Elec. Power*, 191 F.R.D. at 136 (granting motion to compel third party to comply with subpoena). One of Lead Plaintiff's primary allegations is that Holley materially diminished its relationships with important resellers, like Jegs, by failing to adhere to MAP, removing resellers from promotional discounts, and offering "flash sales." *See* ¶¶38-63. Documents in the hands of resellers like Jegs, therefore, stand to shine significant light on ***how*** Defendants' actions were perceived by Holley's resellers/distributors and how those actions impacted their behavior during the Class Period, further illuminating the falsity of Defendants' claim that Holley had "mutually beneficial relationships" with its resellers, "strict conformance" with MAP, and operated with "pricing discipline that supports the value of [Holley] products in the marketplace." *See, e.g.*, ¶159.

Jegs argues – without providing specifics – that the "need" factor "weighs heavily in favor of quashing the Subpoena." Mot. at 3. Jegs continues that Lead Plaintiff must seek the requested documents from "parties to the lawsuit" ***before*** seeking relevant documents from non-parties. *See id.* Of course, Lead Plaintiff is in the process of negotiating discovery with Holley, but this does not eliminate the need for third-party discovery from resellers like Jegs. As detailed above, Jegs is likely to have unique, relevant documents not in Holley's possession that Lead Plaintiff sought as an initial production, and the Subpoena is perfectly appropriate. Jegs' blanket refusal to negotiate or produce documents on the basis of its non-party status contravenes Rule 45 and turns the "need" factor on its head. As Lead Plaintiff has made every effort to minimize Jegs' burden and continue negotiation, Jegs' refusal to produce on the basis of its non-party status is unsupported. *See First*

- 8 -

*Fin. Bank Nat'l Ass'n v. Williams*, 2021 WL 5315419, at * (W.D. Ky. Oct. 7, 2021) (recognizing need to be sensitive to status of non-party, denying motion to quash, and finding the non-party alone possessed definitive information covered by the subpoena); *Plain Loc. Sch. Dist. Bd. of Educ. v. DeWine*, 335 F.R.D. 115, 120 (N.D. Ohio 2020) (denying motion to quash non-party subpoena and finding non-party "also fails to allege with any degree of specificity which of the requested documents are in the possession of parties" and noting that, like here, the defendant specifically named the non-party as having relevant information). Other than citing a few select Requests, Jegs fails to articulate with specificity which requested documents are in Holley's possession. As to those cherry-picked Requests, Lead Plaintiff has already demonstrated its willingness to continue conferral to alleviate Jegs' concerns.

Lead Plaintiff is not seeking Holley's documents from Jegs; rather, the Subpoena seeks Jegs' documents demonstrating the impact of Holley's violation of MAP, among other things, on Jegs. Such documents will aid Lead Plaintiff in establishing that Holley was damaging its relationships with its critically important resellers and distributors, like Jegs. Moreover, as set forth above, counsel for Lead Plaintiff has been respectful of Jegs' status as a non-party, and offered to work with counsel for Jegs to, among other things, narrow the scope of the Subpoena and the relevant time period.

### 3. Factor 3: Confidentiality – There Are No Legitimate Confidentiality Concerns and Jegs' Motion Points to None

Jegs concedes this factor is not at issue and that the Agreed Confidentiality and Rule 502(d) Order (ECF 104) is sufficient to protect its interests. Mot. at 4.

### 4. Factor 4: Harm – Jegs' Theoretical Harm Is Insufficient to Justify Quashing the Subpoena

"A responding party must show specifically how each discovery request is burdensome and oppressive by submitting affidavits or offering evidence revealing the nature of the burden."

*See DeWine*, 355 F.R.D. at 120 n.45 (quoting *In re Heparin Prods. Liab. Litig.*, 273 F.R.D. 399, 410-11 (N.D. Ohio 2011)). A non-party moving to quash a subpoena must explain "how producing these documents would be burdensome," and "bare assertions are insufficient to satisfy [a non-party's] burden of persuasion." *Id.* at 120.

Citing no cases, Jegs' "harm" arguments center on the scope of the Subpoena and the "resources and money" Jegs would need to expend to respond. Mot. at 4. Jegs, however, offers no specifics regarding estimated costs of compliance, how long it would take Jegs to respond, or what resources Jegs would need to respond. *See id.*

Jegs' speculative and wholly unsupported claim of harm is undermined by Lead Plaintiff's demonstrated willingness to narrow the scope of the Subpoena to reasonably reduce Jegs' burden. For example, Jegs argues the Subpoena spans "over four and a half years." Mot. at 4. But what Jegs doesn't say is that Lead Plaintiff already offered to reduce the relevant time period to only the Class Period, which is less than two years in length. *See* Kaplan Dec., Ex. A. Similarly, Jegs argues the Subpoena fails to identify custodians, so Jegs would have to search the files of "every employee Jegs employed for four and a half years." Mot. at 4. But this too overlooks that Lead Plaintiff is at an informational disadvantage, and therefore, offered "to negotiate the use of custodians and/or search terms to aid in JEGS' search and collection of documents." *See* Kaplan Dec., Ex. A. Jegs also argues searching for and collecting documents would require a significant time investment. Mot. at 4. Once again, Jegs fails to provide any specifics regarding how much time would be required. *See* Motion, Ex. C at 2 ("Responding to each Request requires significant time and resources to have Jegs' employees search its systems for responsive documents, spending an unknown amount of hours."). And again, Jegs overlooks that Lead Plaintiff agreed "to accept

JEGS' production of responsive, non-privileged documents and communications that are easily identifiable and readily available to JEGS." Kaplan Dec., Ex. A.

In light of the foregoing, Jegs' claims of undue burden and harm fail to meet the level of specificity needed for quashing the Subpoena, and its Motion should be denied.

**B.   Jegs' Alternative Request to Modify the Subpoena and for a Protective Order Until Defendant Discovery Is "Exhausted" Should Be Denied**

As an alternative to quashing the Subpoena, Jegs argues – while citing no authority – that Jegs should not have to respond to the Subpoena "until Plaintiff has exhausted efforts to obtain documents from the parties." Mot. at 4. Imposing such an overarching standard would obliterate parties' ability to obtain necessary, relevant, third-party discovery in litigation. There is nothing in Rule 45, nor does Jegs point to anything, indicating a plaintiff must exhaust defendant discovery prior to obtaining non-party discovery of relevant documents. Indeed, Rule 45 on its face "permits a party to issue a subpoena commanding a non-party to produce documents." *DeWine*, 335 F.R.D. at 119. And while Rule 45 provides various protections for non-parties, it does not require exhaustion of discovery from parties to the litigation prior to a non-party's obligations to produce responsive, relevant documents. "This conclusion is reinforced with the fact that Movant [Jegs] is not a random third party." *See DeWine*, 335 F.R.D. at 120. "Moreover, Defendant [Holley] specifically names [Jegs] as having relevant information." *See id.*

Alternatively, Jegs requests the Court modify the Subpoena "to remove any requests seeking documents that are likely in the parties' possession, custody, or control." Mot. at 5. But again, apart from a few Requests that Lead Plaintiff has already offered to narrow, Jegs "fails to allege with any degree of specificity which of the requested documents are in the possession of parties," and, therefore, Jegs wholly fails to meet its burden for modifying (or quashing) the

- 11 -

Subpoena. *See DeWine*, 335 F.R.D. at 120 ("Movant's bare assertions are insufficient to satisfy her burden of persuasion.").[2]

## V.  CONCLUSION

Lead Plaintiff has acted reasonably, proportionally, and in good faith concerning compliance with its Subpoena seeking highly germane documents. Jegs has not. Jegs filed its Motion while negotiations were still ongoing, immediately after Lead Plaintiff proposed substantial narrowing (without responding to those proposals), and while refusing any compromise short of total deferral. As set forth above, Jegs' Motion fails to meet the standards for demonstrating undue burden. For the foregoing reasons, Lead Plaintiff respectfully requests that the Court enter an Order denying Jegs' Motion in its entirety and ordering Jegs to produce all documents responsive to the Subpoena, and granting such other relief as the Court deems just and proper.

DATED: March 24, 2026

ROBBINS GELLER RUDMAN &
  DOWD LLP
ROBERT J. ROBBINS (admitted *pro hac vice*)
ELIZABETH A. SHONSON (admitted *pro hac vice*)
SABRINA E. TIRABASSI (admitted *pro hac vice*)
ANDREW T. REES (admitted *pro hac vice*)
ALEX KAPLAN (admitted *pro hac vice*)


*s/ Robert J. Robbins*
ROBERT J. ROBBINS

---

2    Nor can Jegs raise such arguments for the first time in a reply brief. *Glass v. Polyconcept N. Am., Inc.*, 2024 WL 3678793, at *2 (W.D. Ky. Aug. 6, 2024) ("It is well-settled that a movant cannot raise new issues for the first time in a reply brief because consideration of such issues 'deprives the non-moving party of its opportunity to address the new arguments.'") (quoting *Malin v. JPMorgan*, 860 F. Supp. 2d 574, 577 (E.D. Tenn. 2012)).

225 NE Mizner Boulevard, Suite 720
Boca Raton, FL  33423
Telephone:  561/750-3000
rrobbins@rgrdlaw.com
eshonson@rgrdlaw.com
stirabassi@rgrdlaw.com
arees@rgrdlaw.com
akaplan@rgrdlaw.com

Lead Counsel for Lead Plaintiff

BARRETT JOHNSTON MARTIN
   & GARRISON, LLC
DAVID GARRISON (KY Bar No. 98258)
200 31st Avenue North
Nashville, TN  37203
Telephone:  615/244-2202
dgarrison@barrettjohnston.com

Local Counsel