UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:23-CV-00148-GNS

CITY OF FORT LAUDERDALE GENERAL
EMPLOYEES' RETIREMENT SYSTEM,
on behalf of itself and all others similarly situated                                    PLAINTIFF


v.


HOLLEY INC. f/k/a EMPOWER LTD. et al.                                    DEFENDANTS


**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff's Motion to Certify Class (DN 122), the Motion

to Quash Subpoena filed by Jeg's High Performance (DN 123), and Plaintiff's Unopposed Motion

for Preliminary Approval of Class Action Settlement (DN 153).    The motions are ripe for

adjudication.

## I.      BACKGROUND

### A.      Factual and Procedural History

Plaintiff City of Fort Lauderdale General Employees' Retirement System ("The Retirement

System") filed this putative class action, as Lead Plaintiff, on behalf of itself and all others similarly

situated under the Private Securities Litigation Reform Act of 1995 ("PSLRA") against Defendants

Holley, Inc. ("Holley"), Dominic Bardos ("Bardos"), Vinod Nimmagadda ("Nimmagadda"), and

Tom Tomlinson ("Tomlinson") (collectively, "Defendants").    (Suppl. Am. Compl. ¶¶ 1-19, DN

68).    The Retirement System alleges that Defendants made false and misleading statements

regarding Holley's distribution strategy and integration of acquired companies.    (Suppl. Am.

Compl. ¶¶ 5-7).

1

Following discovery, mediation, and many months of negotiation, The Retirement System and Defendants  reached a settlement agreement.  (Pl.'s Unopposed Mot. Prelim. Approval 1, DN 153).  The Parties now ask the Court to certify the class, appoint a class representative and class counsel, and grant preliminary approval to their proposed settlement agreement ("Agreement"), as outlined in their Stipulation of Settlement ("Stipulation").   (Pl.'s Unopposed Mot. Prelim. Approval 1).[1]

### B.    Proposed Settlement Agreement

#### 1.    *Class Membership*

The proposed class will consist of "all Persons who purchased or otherwise acquired Holley securities between July 21, 2021[,] and February 6, 2023, inclusive [("The Class Period")], and were allegedly damaged thereby."  (Stipulation 6, DN 153-1).  The proposed class specifically excludes:

> Defendants and their Immediate Family Members; the current and Class Period officers, directors, and affiliates of Holley, and their legal representatives, heirs, or assigns, and any entity in which Defendants have or had a controlling interest; and the legal representatives, affiliates, heirs, successors-in-interest or assigns of any such excluded party and any entity in which such excluded persons have or had a controlling interest.

(Stipulation 6).

#### 2.    *Class Benefits*

Class members will share in a settlement in the amount of $12,750,000.  (Stipulation 13, 16).   This amount is an "all-in number" and will therefore be reduced by attorneys' fees, administrative expenses, and any lead plaintiff award, among other things. (Stipulation 17).  Class

---

[1] Plaintiffs previously moved to certify the class in this matter and non-party Jeg's High Performance moved to quash a subpoena.  (Pl.'s Mot. Certify Class 1, DN 122; Jeg's High Performance's Mot. Quash 1, DN 123).  Because the Court grants preliminary approval to the proposed settlement, these motions are denied as moot.

members will be required to submit their claim, accompanied by a release, to the claims administrator. (Stipulation 30).

### 3. *Waiver*

Class members who participate in the settlement will be bound by the terms of a release. (Stipulation Ex. A-2, at 10-16, DN 153-1). Class members will release "any and all claims against Defendants as set forth in the Stipulation." (Pl.'s Unopposed Mot. Prelim. Approval 5; Stipulation 11, 24).

## II. JURISDICTION

The Court has subject-matter jurisdiction because a federal question is presented. *See* 28 U.S.C. § 1331.

## III. DISCUSSION

In ruling on Plaintiff's unopposed motion, the Court must determine whether to preliminarily certify the class under Fed. R. Civ. P. 23(a) and 23(b) and approve the class representatives and class counsel. The Court must also determine whether a proposed settlement agreement is fair, adequate, and reasonable. *See Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 625 (6th Cir. 2007).

### A. Class Certification

Before any settlement is approved, the class must be certified. "While the district court has broad discretion in certifying class actions, it must exercise that discretion within the framework of Rule 23." *Coleman v. Gen. Motors Acceptance Corp.*, 296 F.3d 443, 446 (6th Cir. 2002) (citing *Cross v. Nat'l Tr. Life Ins. Co.*, 553 F.2d 1026, 1029 (6th Cir. 1977)). As the moving party, the plaintiff bears the burden of proof to establish that certification is proper. *See In re Am.*

*Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996) (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982); *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 522 (6th Cir. 1976)).

Class certification involves a two-step process: First, a court must conduct "a rigorous analysis[] that the prerequisites of Rule 23(a) have been satisfied." *Falcon*, 457 U.S. at 161. Those prerequisites are: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed. R. Civ. P. 23(a). Each requirement must be satisfied for the class to be certified. *See Ball v. Union Carbide Corp.*, 385 F.3d 713, 727 (6th Cir. 2004) (citing *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998) (en banc)). Second, if the class meets all four Rule 23(a) requirements, the parties must also demonstrate that "the proposed class . . . meet[s] at least one of the three requirements listed in Rule 23(b)." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 850 (6th Cir. 2013) (citations omitted).

The merits of the underlying claims are not considered in determining whether to certify a class; courts assume that the complaint's substantive allegations are true and that the pleading states cognizable claims. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) ("In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." (citation omitted)); *Little Caesar Enters., Inc. v. Smith*, 172 F.R.D. 236, 241 (E.D. Mich. 1997) ("A Rule 23 determination is wholly procedural and has nothing to do with whether a plaintiff will ultimately prevail on the substantive merits of its claims." (citation omitted)). "Nonetheless, the Court must undertake an analysis of the issues and the nature of required proof at trial to determine whether the matters in dispute and the nature of plaintiffs' proofs are principally individual in nature or are susceptible of common proof equally applicable to all class members." *Little Caesar Enters.*, 172 F.R.D. at 241. "[W]hen a court is in doubt as to

4

whether to certify a class action, it should err in favor of allowing a class." *Id*. at 241-42 (citations omitted).

### 1.    *Rule 23(a) Requirements*

#### a.    **Numerosity**

The first requirement for class certification is that "the class is so numerous that joinder of all members is impracticable . . . ." Fed. R. Civ. P. 23(a)(1).  As the Sixth Circuit has explained:

> There is no automatic cut-off point at which the number of plaintiffs makes joinder impractical, thereby making a class-action suit the only viable alternative. However, sheer number of potential litigants in a class, especially if it is more than several hundred, can be the only factor needed to satisfy Rule 23(a)(1).

*Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004) (internal citation omitted) (citation omitted); *see also In re Am. Med Sys.*, 75 F.3d at 1079 ("There is no strict numerical test for determining impracticability of joinder." (citation omitted)).

In this instance, the class includes "all Persons who purchased or otherwise acquired Holley securities between July 21, 2021[,] and February 6, 2023[,] . . . ." (Stipulation 6).  This broad definition and the millions of Holley shares traded each week during the Class Period means that there are likely thousands of potential class members.  (Pl.'s Unopposed Mot. Prelim. Approval 21).  Joinder of every potential class member would be impracticable, if not impossible.  Thus, the proposed settlement class satisfies the numerosity requirement of Fed. R. Civ. P. 23(a)(1).

#### b.    **Commonality**

Next, Rule 23(a)(2) requires that "there are questions of law or fact common to the class . . . ."  Fed. R. Civ. P. 23(a)(2).  "Although Rule 23(a)(2) speaks of 'questions' in the plural, . . . there need only be one question common to the class." *Sprague*, 133 F.3d at 397 (citing *In re Am. Med Sys.*, 75 F.3d at 1080).  As the Supreme Court has stated, "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart*

*Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011) (quoting *Falcon*, 457 U.S. at 157).  "The claims of the class members must depend upon a common contention [that] . . . 'must be of such a nature that it is capable of class[-]wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'"  *Powell v. Tosh*, 280 F.R.D. 296, 305 (W.D. Ky. 2012) (third alteration in original) (quoting *Dukes*, 564 U.S. at 350).  Thus, the point of the commonality analysis is to determine "common issue[s] the resolution of which will advance the litigation."  *Sprague*, 133 F.3d at 397.

In this instance, the potential class members' injuries all arise from Defendants' allegedly false or misleading statements made in violation of federal securities laws.  (Pl.'s Unopposed Mot. Prelim. Approval 21-22).  Thus, the common issues at trial would be whether Defendants breached federal securities law.  Therefore, the commonality requirement in Fed. R. Civ. P. 23(a)(2) is satisfied.

### c.    Typicality

Third, a court must consider whether "the claims or defenses of the representative parties are typical of the claims or defenses of the class . . . ."  Fed. R. Civ. P. 23(a)(3).  "Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct."  *Sprague*, 133 F.3d at 399 (internal quotation marks omitted) (quoting *In re Am. Med. Sys.*, 75 F.3d at 1082).  "A claim is typical if 'it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.'"  *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) (quoting *In re Am. Med. Sys.*, 75 F.3d at 1082).  "[A] representative's claim need not always involve the same facts or law, provided there is a common element of fact or law."  *Senter*, 532

F.2d at 525 n.31 (citation omitted). "On the other hand, . . . the typicality requirement is not satisfied when a plaintiff can prove his own claim but not 'necessarily have proved anybody's else's claim.'" *Beattie*, 511 F.3d at 561 (quoting *Sprague*, 133 F.3d at 399).

The claims asserted by The Retirement System are typical of the potential class because the claims all arise out of Defendants' alleged false statements that inflated the value of Holley's stock. The Retirement System's arguments—that these statements breached federal securities laws—can be asserted by all potential class members. The class members will have suffered virtually identical injuries, the only difference being the amount of damages based on the quantity of stock they owned and when they owned it. Accordingly, the typicality requirement of Fed. R. Civ. P. 23(a)(3) is also satisfied.

### d.      Adequacy of Representation

The fourth consideration is whether "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "There are two criteria for determining whether the representation of the class will be adequate:  1) [t]he representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Senter*, 532 F.2d at 524-25 (citing *Gonzales v. Cassidy*, 474 F.2d 67, 73 (5th Cir. 1973)).

"The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent. '[A] class representative must be part of the class and "possess the same interest and suffer the same injury" as the class members.'" *Amchem*

*Prods., Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997) (alteration in original) (internal citation omitted) (citation omitted).

As part of the Agreement, The Retirement System will be designated as class representative. (Stipulation 9, 14). The injuries alleged by the Retirement System are substantially the same as the potential class's injuries—all arise from the Defendants' statements and conduct. While the value of damages may vary between potential class members, each suffered injury by the same mechanism. Accordingly, The Retirement System shares common interests with the members of the proposed class.

Fed. R. Civ. P. 23(a)(4) also requires a court to consider the adequacy of the named plaintiff's representation "to determine whether class counsel are qualified, experienced and generally able to conduct the litigation . . . ." *Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000) (citation omitted). A plaintiff's choice of counsel "should negatively impact [a court's] determination of adequacy at this early stage only if the proposed lead counsel is 'so deficient as to demonstrate that it will not fairly and adequately represent the interests of the class.'" *In re Vicuron Pharms., Inc. Sec. Litig.*, 225 F.R.D. 508, 511-12 (E.D. Pa. 2004) (citation omitted).

Plaintiff has designated the law firm of Robbins Geller Rudman & Dowd LLP ("Proposed Class Counsel") as class counsel for purposes of settlement. (Stipulation 9). Proposed Class Counsel have significant experience litigating class action matters and serving as class counsel. *See Stein v. U.S. Xpress Enters., Inc.*, No. 1:19-CV-98, 2021 WL 1410035, at *8 (E.D. Tenn. Feb. 12, 2021) ("Robbins Geller Rudman & Dowd LLP . . . ha[s] extensive experience litigating securities class actions . . . ."); *see also Bennett v. Sprint Nextel Corp.*, 298 F.R.D. 498, 513 (D. Kan. 2014); *In re Home Point Cap. Inc. Sec. Litig.*, No. 21-11457, 2024 WL 3273275, at *3 (E.D. Mich. June 28, 2024); *St. Clair Cnty. Emps.' Ret. Sys. v. Acadia Healthcare Co., Inc.*, No. 3:18-

CV-00988, 2022 WL 4598044, at *3 (M.D. Tenn. Sep. 30, 2022). Proposed Class Counsel therefore appears qualified to adequately represent the interests of the proposed class. Accordingly, The Retirement System shall be appointed as class representative.

### 2.   *Rule 23(b) Requirement*

In addition to satisfying Fed. R. Civ. P. 23(a), "[the] parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem Prods.*, 521 U.S. at 614. In this matter, The Retirement System seeks preliminary approval pursuant to Fed. R. Civ. P. 23(b)(3). (Pl.'s Unopposed Mot. Prelim. Approval 2).

Under Rule 23(b)(3), a class action may be maintained only if "the questions of law or fact common to class members predominate over any questions affecting only individual members" and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The predominance requirement of Fed. R. Civ. P. 23(b)(3) is akin to Fed. R. Civ. P 23(a)(2)'s commonality requirement because "both require that common questions exist, but subdivision (b)(3) contains the more stringent requirement that common issues 'predominate' over individual issues." *In re Am. Med. Sys., Inc.*, 75 F.3d at 1084 (citation omitted). The central question is whether the questions common to the class "[are] at the heart of the litigation." *Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007). "The predominance requirement is satisfied unless it is clear that individual issues will overwhelm the common questions and render the class action valueless." *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 307 (E.D. Mich. 2001) (quoting *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 169 F.R.D. 493, 517 (S.D.N.Y. 1996)). "Common questions need only predominate: they need not be dispositive of the litigation." *Id*. (internal quotation marks omitted) (quoting *In re Potash Antitrust Litig.*, 159 F.R.D. 682, 693 (D. Minn. 1995)).

In this instance, a class action is superior to adjudicating the controversy piecemeal. Common questions of fact and law predominate over any individual issues. Class members' claims all relate to whether Defendants violated federal securities law. The proof necessary for each class member's claim would be similar to the proof from all other members of the class. Additionally, the injury incurred by each class member would not justify pursuing individual lawsuits against Defendants. *See Pfaff v. Whole Foods Mkt. Grp. Inc.*, No. 1:09-CV-02954, 2010 WL 3834240, at *7 (N.D. Ohio Sep. 29, 2010) ("The 'most compelling rationale for finding superiority in a class action' is the existence of a 'negative value suit.' A negative value suit is one in which the costs of enforcement in an individual action would exceed the expected individual recovery." (quoting *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 351 (N.D. Ohio 2001))).

In sum, the requirements of Fed. R. Civ. P. 23(a) and 23(b)(3) support the certification of the proposed class as defined in the Agreement. Accordingly, the Settlement Class is preliminarily certified for the purposes of settlement.

### B. Appointment of Class Counsel

After a class is certified, class counsel must be appointed. Fed. R. Civ. P. 23(g). In making that appointment, a court must consider:

> (i)    the work counsel has done in identifying or investigating potential claims in the action;
> (ii)    counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> (iii)    counsel's knowledge of the applicable law; and
> (iv)    the resources that counsel will commit to representing the class . . . .

Fed. R. Civ. P. 23(g)(1)(A).

As noted above, Proposed Class Counsel is the firm representing The Retirement Plan. Proposed Class Counsel has worked diligently on this matter from the prelitigation phase through

10

the initial settlement agreement. (Pl.'s Unopposed Mot. Prelim. Approval 1). Proposed Class Counsel completed extensive pleading, dealt with voluminous discovery, moved for class certification, participated in mediation in good faith and ultimately obtained a multi-million-dollar settlement. (Pl.'s Unopposed Mot. Prelim. Approval 1-5). These efforts support its appointment as class counsel.

As discussed above, Proposed Class Counsel also has significant experience litigating securities actions of similar size, scope, and complexity. (Pl.'s Unopposed Mot. Prelim. Approval 8-9). This demonstrates Proposed Class Counsel's experience in handling similar matters and its knowledge of the applicable law. Finally, Proposed Class Counsel has shown its willingness to devote substantial time and resources to representing the claims of the settlement class, as reflected by its representation of The Retirement System. Accordingly, the firm satisfies the requirements of Fed. R. Civ. P. 23(g), and Proposed Class Counsel is designated as counsel for the settlement class.

### C.  <u>Preliminary Approval of Proposed Settlement Agreement</u>

Having been presented with the Agreement, the Court must determine whether to grant preliminary approval pursuant to Fed. R. Civ. P. 23(e). The approval process involves two steps: first, a proposed settlement is reviewed to determine whether it warrants public notice and hearing; second, if notice and hearing are warranted, a proposed settlement may be approved only after a hearing. *Manual for Complex Litigation* § 13.14 (4th ed. 2004); *see also Thacker v. Chesapeake Appalachia, L.L.C.*, 259 F.R.D. 262, 270 (E.D. Ky. 2009). "At the stage of preliminary approval, the questions are simpler, and the court is not expected to, and probably should not, engage in analysis as rigorous as is appropriate for final approval." *Spine & Sports Chiropractic, Inc. v. ZirMed, Inc.*, No. 3:13-CV-00489, 2015 WL 1976398, at *1 (W.D. Ky. May 4, 2015) (quoting

*Manual for Complex Litigation* § 13.14 (4th ed. 2004)).  Courts should apply sufficient scrutiny to avoid "rubber-stamp[ing]" a proposed settlement agreement, while still being "mindful of the substantial judicial processes that remain to test the assumptions and representations upon which the parties' motion[] [is] premised." *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. at 338.

The proposed settlement agreement must be "fair, reasonable, and adequate." *Whitlock v. FSL Mgmt., LLC*, 843 F.3d 1084, 1093 (6th Cir. 2016); Fed. R. Civ. P. 23(e)(2).  Rule 23(e)(2) outlines the factors courts must consider in making that determination:

> If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Additionally, courts must consider factors articulated by the Sixth Circuit.  *See Peck v. Air Evac EMS, Inc.*, No. 5:18-615-DCR, 2019 WL 3219150, at *5, *7 (E.D. Ky. July 17, 2019).  These factors are:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am.*, 497 F.3d at 631 (citing

*Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992); *Williams v. Vukovich*,

720 F.2d 909, 922-23 (6th Cir. 1983)).

### 1.    *Rule 23 Factors*

First, it appears that The Retirement System and Proposed Class Counsel have adequately

represented the class. The Retirement System and Proposed Class Counsel have litigated for

nearly three years and only agreed to settle with Defendants after discovery and mediation.

(Stipulation 1-3). Further, The Retirement System actively participated in the litigation by

preparing for depositions and engaging in the mediation process. (Pl.'s Unopposed Mot. Prelim.

Approval 8). As discussed above, Proposed Class Counsel is highly experienced in class action

litigation and there is ample evidence that both The Retirement System and Proposed Class

Counsel would represent this class well and pursue these claims zealously if the case continued to

trial. (*See* Stipulation 4-5). This factor, therefore, supports preliminary approval.

Second, the Agreement was reached after a full-day mediation followed by months of

continued negotiation with the assistance of the mediator. (Stipulation 3). Nothing in the record

suggests any kind of collusion between the parties. This reflects that the Agreement is the product

of an arm's-length transaction. *See Back v. Ray Jones Trucking, Inc.*, No. 4:22-CV-00005-GNS-

HBB, 2025 WL 2422630, at *6 (W.D. Ky. Aug. 21, 2025) (finding this factor supported settlement

after "two full days of mediation . . . followed by further negotiations"); *Thacker v. Chesapeake

Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 532 (E.D. Ky. 2010) ("[T]he parties engaged in

extensive, arms-length negotiations for over four months, which . . . allowed the parties to fully

explore their respective factual and legal positions."). Thus, this factor also weighs in favor of

preliminary approval.

Third, the Agreement appears to be adequate.  Proposed Class Counsel considered the potential costs, risks, and delay of trial and appeal when entering the settlement.  (Stipulation 4-5).  Proposed Class Counsel specifically acknowledges that had a settlement not been reached, the expense and length of the litigation necessary to prevail in this matter and succeed on appeal would be significant.  (Stipulation 4).  Ultimately, The Retirement System and Proposed Class Counsel determined that "the [s]ettlement . . . is in the best interests of [The Retirement System] and the [c]lass."  (Stipulation 5).

Additionally, the method of distributing the settlement to the class members appears effective.  The proposed claims administrator, Verita Global ("Verita"), will provide notice by direct mail "to all persons and entities identified as potential [c]lass [m]embers by Holley's stock transfer agent."  (Murray Decl. ¶ 6, DN 153-2).  Verita will also send notice to entities—i.e., brokers and banks—that hold Holley stock for the benefit of their clients and to each financial institution registered with the United States Securities and Exchange Commission.  (Murray Decl. ¶¶ 7-11).  Verita will supplement its mail program with public notices in various publications including the Wall Street Journal.  (Murray Decl. ¶¶ 13-14).  Potential class members will then be required to submit a claims form, which Verita will then review and determine whether the claimant is eligible for recovery.  (Murray Decl. ¶¶ 21-23).

"Trial courts within the Sixth Circuit have discretion to calculate an award of attorneys' fees by using either (1) a percentage of the fund calculation, or (2) a lodestar/multiplier approach." *New England Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 633 (W.D. Ky. 2006) (citation omitted).  Nevertheless, "courts in the Sixth Circuit have indicated their preference for the percentage-of-the-fund method in common fund cases." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 532 (E.D. Mich. 2003).  Proposed Class Counsel indicates that it

14

anticipates requesting fees in an amount up to one-fourth of the value of the settlement. (Pl.'s Unopposed Mot. Prelim. Approval 15). This is less than or comparable to fees awarded in other class actions in the Sixth Circuit. *See Green v. Platinum Rests. Mid-Am. LLC*, No. 3:14-CV-439, 2022 WL 1240432, at *3-4 (W.D. Ky. Apr. 27, 2022) (finding attorneys' fees of 39% of the common fund reasonable); *New England Health Care*, 234 F.R.D. at 633 ("Fee awards in common fund cases typically range 'from 20 to 50 percent of the common fund created.'" (citation omitted)); *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2009 WL 5184352, at *11 (W.D. Ky. Dec. 22, 2009) (preliminarily approving attorneys' fees representing over 50% of the common fund). The proposed rate of up to one-fourth of the value of the settlement therefore appears reasonable.

Finally, Fed. R. Civ. P. 23(e)(3) requires that the "parties seeking approval . . . file a statement identifying any agreement made in connection with the proposal." The parties indicate that the proposed settlement agreement is subject to one supplemental agreement providing that if a threshold number of opt-outs are received, Holley may terminate the settlement. (Stipulation 36). Courts have approved similar supplemental agreements. *Erica P. John Fund, Inc. v. Halliburton Co.*, No. 3:02-CV-1152-M, 2018 WL 1942227, at *5 (N.D. Tex. Apr. 25, 2018). Thus, the Parties have not omitted any agreement required by Rule 23(e)(3). Because each of the subfactors supports preliminary approval of the Agreement, the fourth Rule 23(e) factor does so as well.

Next, the Agreement would "treat[] class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). While not every class member would receive the same amount, the amount varies based only on potential class members' time of acquisition and disposal of Holley securities. (Stipulation Ex. A-1, at 15-22, DN 153-1). This arrangement reflects treatment that is equitable

15

relative to the level of injury suffered by each potential class member. Accordingly, this factor weighs in favor of preliminary approval, as do all Rule 23(e) factors.

### 2. *Sixth Circuit Factors*

Following consideration of the Rule 23 factors, a district court must also analyze the Sixth Circuit factors to ensure that a proposed settlement is "fair, reasonable, and adequate." *Whitlock*, 843 F.3d at 1093.

First, a court considers the risk of fraud or collusion. When considering this factor, "[c]ourts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Thacker*, 695 F. Supp. 2d at 531 (quoting *Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 838 (E.D. Mich. 2008)). "When a 'settlement is the result of extensive negotiations by experienced counsel, the Court should presume it fair.'" *In re Skechers Toning Shoe Prod. Liab. Litig.*, No. 3:11-MD-2308-TBR, 2012 WL 3312668, at *9 (Aug. 13, 2012) (quoting *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. at 351). As discussed above, this Agreement was the product of months of arm's-length negotiations. Nothing in the record suggests any fraud or collusion in reaching the Agreement. Accordingly, this factor weighs in favor of approval.

The second factor requires consideration of the cost, complexity, and duration of litigation. The Parties have engaged in nearly three years of costly litigation, including discovery, mediation, and continued negotiations. (Stipulation 1-3). Continuing to trial would only increase costs and delay any remedy for the class members. Proposed Class Counsel expressly acknowledge that The Retirement System has considered the uncertainties accompanying further litigation, including the possibility of high costs and delays. (Stipulation 4-5). Thus, this factor supports preliminary approval of the Agreement.

16

Third, the Court must consider the sufficiency of the discovery conducted by the parties. "If the parties have engaged in discovery, then a settlement is more likely to be fair and reasonable under the circumstances." *Green*, 2022 WL 1240432, at *5 (citation omitted); *see also Does 1-2 v. Déjà Vu Servs., Inc.*, 925 F.3d 886, 898-99 (6th Cir. 2019) (concluding that the district court did not abuse its discretion when finding that informal discovery was sufficient for approval). The parties here have engaged in discovery, which included multiple depositions and the production of more than one hundred thousand pages of documents. (Stipulation 2; Pl.'s Unopposed Mot. Prelim. Approval 8). This weighs in favor of preliminary approval of the Agreement.

The fourth factor requires consideration of a plaintiff's likelihood of success were the case to continue. This is the most important factor, and "[t]he likelihood of success, in turn, provides a gauge from which the benefits of the settlement must be measured." *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 245 (6th Cir. 2011) (internal quotation marks omitted) (citation omitted). In this instance, Holley has entered into an agreement by which it will have to return millions to class members through direct payments. (Stipulation 13, 28). The entry into such an agreement is an implicit recognition that The Retirement System and the class members could succeed on the merits at trial. *See Bowen v. Paxton Media Grp., LLC*, No. 5:21-CV-00143-GNS, 2024 WL 1446468, at *10 (W.D. Ky. Apr. 3, 2024). Accordingly, this factor favors preliminary approval.

Fifth, a court must consider the opinions of the class representative and her counsel. "In deciding whether a proposed settlement warrants approval, the informed and reasoned judgment of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference." *In re Skechers Toning Shoe Prods. Liab. Litig.*, No. 3:11-MD-2308-TBR, 2013 WL 2010702, at *6 (W.D. Ky. May 13, 2013) (quoting *Thacker*, 695 F. Supp.

17

2d at 532). The Retirement System and Proposed Class Counsel assert that the Agreement "is fair, reasonable, and in the best interest" of the potential class members. (Pl.'s Unopposed Mot. Prelim. Approval 17). The Retirement System and Proposed Class Counsel arrived at this opinion following "careful[] consider[ation] and evaluation . . . [of] the relevant legal authorities and evidence pertaining to the claims asserted against Defendants; the likelihood of prevailing on the claims; the risk, expense, and duration of continued litigation; and any appeals and subsequent proceedings . . . ." (Pl.'s Unopposed Mot. Prelim. Approval 17). Thus, this factor supports approval.

Sixth, courts must consider the reaction of absent class members. Because the present motion relates to a preliminary, pre-notice stage agreement, the absent class members have not yet had an opportunity to voice any concerns. This factor is neutral at this stage. *See Green*, 2022 WL 1240432, at *5 ("At the pre-notice stage, the Court does not yet know how absent class members will respond.").

Finally, the Court must consider the public interest in granting preliminary approval of the settlement agreement. "[T]here is a strong public interest in encouraging settlement of . . . class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. at 525 (quoting *Granada Inv.*, 962 F.2d at 1205). Thus, this final factor supports preliminary approval.

Both the Rule 23 and Sixth Circuit factors weigh in favor of preliminary approval of the Agreement. Accordingly, the Agreement represents a fair and reasonable settlement to a bona fide dispute and is preliminarily approved.

### D.      **Proposed Notice Materials**

As a result of the Court's preliminary approval, the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal . . . ." Fed. R. Civ. P. 23(e). This notice "must clearly and concisely state in plain, easily understood language" the following:

(i)     the nature of the action;
(ii)    the definition of the class certified;
(iii)   the class claims, issues, or defenses;
(iv)    that a class member may enter an appearance through an attorney if the member so desires;
(v)     that the court will exclude from the class any member who requests exclusion;
(vi)    the time and manner for requesting exclusion; and
(vii)   the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). "The notice provided to class members must include enough information to allow the class members to make an informed choice of whether to approve or disapprove the settlement." *Bowling v. Pfizer, Inc.*, 143 F.R.D. 141, 160 (S.D. Ohio 1992) (citing *Weinberger v. Kendrick*, 698 F.2d 61, 71 (2d Cir. 1982)).

In relevant part, the proposed notice states:

> This Notice of Pendency and Proposed Settlement of Class Action ("Notice") has been provided to you pursuant to Rule 23 of the Federal Rules of Civil Procedure and an Order of the United States District Court for the Western District of Kentucky, Bowling Green Division (the "Court"). The purpose of this Notice is to inform you of the pendency of this class action (the "Litigation") between Lead Plaintiff City of Fort Lauderdale General Employees' Retirement System, on behalf of itself and others similarly situated, and Defendants Holley, Tom Tomlinson, Dominic Bardos, and Vinod Nimmagadda; the proposed $12,750,000 cash settlement reached therein (the "Settlement"); and the hearing to be held by the Court to consider the fairness, reasonableness, and adequacy of the Settlement as well as counsel's application for fees and expenses. This Notice describes what steps you may take in relation to the Settlement and this class action.

(Stipulation Ex. A-1, at 1). This notice explains who is included in the settlement class and provides contact information for the claims administrator, should any further clarification be needed to determine whether a recipient is included in the settlement class. (Stipulation Ex. A-1,

19

at 1-7).  The notice also provides class members with instructions on how they can object or opt-out of the settlement.  (Stipulation Ex. A-1, at 13-15).  The notice informs class members that they may retain an attorney to appear at the final approval hearing.  (Stipulation Ex. A-1, at 14).  Finally, the notice informs the class members of the binding effect of the class judgment.  (Stipulation Ex. A-1, at 11-12).

The notice conforms with the requirements of Fed. R. Civ. P. 23(c) and is therefore approved.

## IV.    CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement (DN 153) is **GRANTED**, and Plaintiff's Motion to Certify Class (DN 122) and Motion to Quash Subpoena filed by Jeg's High Performance (DN 123) are **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** as follows:

1.      Any terms capitalized and not defined are assigned the meanings given to them in the Stipulation.

2.      The Court has reviewed the Stipulation and does hereby preliminarily approve the Stipulation and Settlement set forth therein as fair, reasonable, and adequate, subject to further consideration at the Settlement Hearing described below.

3.      Pursuant to Fed. R. Civ. P. 23(a) and (b)(3), and for purposes of this Settlement only, the Litigation is hereby preliminarily certified as a class action on behalf of all Persons who purchased or otherwise acquired Holley securities between July 21, 2021, and February 6, 2023, inclusive, and were allegedly damaged thereby.  Excluded from the Class are:  Defendants and their Immediate Family Members; the current and Class Period officers, directors, and affiliates of Holley, and their legal representatives, heirs, or assigns, and any entity in which Defendants have

or had a controlling interest; and the legal representatives, affiliates, heirs, successors-in-interest or assigns of any such excluded party and any entity in which such excluded persons have or had a controlling interest.  Also excluded from the Class is any Person who would otherwise be a Member of the Class but who validly and timely requests exclusion in accordance with the requirements set by the Court in connection with the Settlement.

4.    The Court preliminarily finds, for the purpose of the Settlement only, that the prerequisites for a class action under Fed. R. Civ. P. 23(a) and (b)(3) have been satisfied in that: (a) the number of Class Members is so numerous that joinder of all members is impracticable; (b) there are questions of law and fact common to the Class; (c) the claims of Lead Plaintiff are typical of the claims of the Class it seeks to represent; (d) Lead Plaintiff and Lead Counsel have and will fairly and adequately represent the interests of the Class; (e) the questions of law and fact common to Members of the Class predominate over any questions affecting only individual Class Members; and (f) a class action is superior to other methods for the fair and efficient adjudication of the Litigation.

5.    Pursuant to Fed. R. Civ. P. 23, Lead Plaintiff City of Fort Lauderdale General Employees' Retirement System ("Lead Plaintiff") is preliminarily certified as Class Representative, and Lead Counsel Robbins Geller Rudman & Dowd LLP is preliminarily certified as Class Counsel.

6.    The Court preliminarily finds that the proposed Settlement should be approved as: (i) it is the result of serious, extensive arm's-length and non-collusive negotiations; (ii) it falls within a range of reasonableness warranting final approval; (iii) it has no obvious deficiencies; and (iv) it warrants notice of the proposed Settlement to Class Members and further consideration of the Settlement at the fairness hearing described below.

7.     A hearing shall be held before this Court on November 9, 2026, at 9:30 AM CT (the "Settlement Hearing"), at the United States District Court for the Western District of Kentucky, Bowling Green Division, William H. Natcher Federal Building and U.S. Courthouse, 241 East Main Avenue, Bowling Green, KY  42101, to:  (a) determine whether the proposed Settlement of the Litigation on the terms and conditions provided for in the Stipulation is fair, reasonable, and adequate to the Class and should be approved by the Court; (b) determine whether a Judgment as defined in Paragraph 1.17 of the Stipulation should be entered; (c) determine whether the proposed Plan of Allocation should be approved; (d) determine the amount of attorneys' fees, charges, and expenses that should be awarded to Lead Counsel; (e) determine any award to Lead Plaintiff pursuant to 15 U.S.C. § 78u-4(a)(4); (f) hear any objections by Class Members to the Settlement or Plan of Allocation, an award to Lead Plaintiff, or to the award of attorneys' fees and expenses; and (g) consider such other matters the Court deems appropriate. The Court may adjourn or change the date and time of the Settlement Hearing without further notice to the Class and may approve the proposed Settlement with such modifications as the Settling Parties may agree to, if appropriate, without further notice to the Class.

8.     The Court approves the form, substance, and requirements of the Notice of Pendency and Proposed Settlement of Class Action ("Notice"), Proof of Claim and Release, and Postcard Notice, substantially in the forms annexed hereto as Exhibits A-1, A-2, and A-4, respectively.

9.     The Court approves the form of the Summary Notice of Proposed Settlement of Class Action ("Summary Notice"), substantially in the form annexed hereto as Exhibit A-3.

10.     The firm of Verita Global (the "Claims Administrator") is hereby appointed to supervise and administer the notice procedure as well as the processing of Claims as more fully set forth below.

11.     Within ten (10) calendar days after entry of this Memorandum Opinion and Order, Holley shall use its best efforts to provide or cause to be provided to the Claims Administrator, at no cost to Lead Plaintiff or the Class, a list in electronic format, containing the names and addresses of record holders of Holley securities during the Class Period, as set forth in the records of its transfer agent, to the extent that such information is reasonably available.  This information will be kept confidential and not used for any purpose other than to provide the notice contemplated by this Memorandum Opinion and Order.

12.     Not later than August 21, 2026 (the "Notice Date") (a date twenty-one (21) calendar days after entry by the Court of this Memorandum Opinion and Order), the Claims Administrator shall cause a copy of the Postcard Notice, substantially in the form annexed hereto as Exhibit A-4, to be mailed by First Class Mail to all Class Members who can be identified with reasonable effort and for the Notice and Proof of Claim and Release form to be posted on the case-designated website, www.HolleySecuritiesSettlement.com.    For all Postcard Notices returned as undeliverable, the Claims Administrator shall use its best efforts to locate updated addresses.

13.     Not later than August 28, 2026, (a date seven (7) calendar days after the Notice Date), the Claims Administrator shall cause the Summary Notice to be published once in *The Wall Street Journal*, and once over a national newswire service.

14.     At least seven (7) calendar days prior to the Settlement Hearing, Lead Counsel shall serve on Defendants' Counsel and file with the Court proof, by affidavit or declaration, of such mailing and publishing.

15.     The Claims Administrator shall use reasonable efforts to give notice to nominee purchasers, such as brokerage firms and other persons or entities who purchased or otherwise acquired Holley securities during the Class Period (between July 21, 2021, and February 6, 2023, inclusive) as record owners but not as beneficial owners.  Such nominee purchasers are directed,

23

within seven (7) calendar days of their receipt of the Postcard Notice, to either forward copies of the Postcard Notice to their beneficial owners or to provide the Claims Administrator with lists of the names and addresses of the beneficial owners, and the Claims Administrator is ordered to send the Postcard Notice promptly to such identified beneficial owners.  Nominee purchasers who elect to send the Postcard Notice to their beneficial owners shall send a statement to the Claims Administrator confirming that the mailing was made as directed.  Additional copies of the Postcard Notice, the Notice, and Proof of Claim and Release form shall be made available to any record holder requesting such for the purpose of distribution to beneficial owners, and such record holders shall be reimbursed from the Settlement Fund, upon receipt by the Claims Administrator of proper documentation, for the reasonable out-of-pocket expense of sending the Postcard Notice, the Notice, and Proof of Claim and Release to beneficial owners.  Reasonable out-of-pocket expenses actually incurred in connection with the foregoing include up to $0.03 per record for providing names, addresses, and email addresses to the Claims Administrator; up to a maximum of $0.03 per Postcard Notice mailed by nominee, plus postage at the rate used by the Claims Administrator; or $0.03 per Postcard Notice sent by email.  Any disputes with respect to the reasonableness or documentation of expenses incurred shall be subject to review by the Court.

16.    The Court finds that the form and content of the notice program described herein and the methods set forth herein for notifying the Class of the Settlement and its terms and conditions, the Fee and Expense Application, and the Plan of Allocation meet the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Private Securities Litigation Reform Act of 1995, due process, and other applicable law, constitute the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all Persons entitled thereto.

17.    All fees and expenses incurred in identifying and notifying Members of the Class shall be paid from the Settlement Fund, and in no event shall any of the Released Defendant Parties

24

bear any responsibility, liability, or obligation for such fees, costs, or expenses.  Notwithstanding the foregoing, Holley shall be responsible for the costs and expenses of providing to Lead Counsel and/or the Claims Administrator reasonably available transfer records for purposes of mailing notice to the Class pursuant to the Stipulation, as set forth in Paragraph 11 herein.

18.    All Class Members shall be bound by all determinations and judgments in the Litigation concerning the Settlement (including, but not limited to, the releases provided for therein) whether favorable or unfavorable to the Class, regardless of whether such Persons seek or obtain by any means (including, without limitation, by submitting a Proof of Claim and Release or any similar document) any distribution from the Settlement Fund or the Net Settlement Fund.

19.    Class Members who wish to participate in the Settlement shall complete and submit a Proof of Claim and Release in accordance with the instructions contained therein.  Unless the Court orders otherwise, all Proofs of Claim and Release must be postmarked or submitted electronically no later than November 19, 2026, (a date ninety (90) calendar days from the Notice Date).  Any Class Member who does not submit a Proof of Claim and Release within the time provided shall be barred from sharing in the distribution of the proceeds of the Net Settlement Fund, unless otherwise ordered by the Court, but shall in all other respects be bound by the terms of the Stipulation and by any final judgment entered by the Court.  Notwithstanding the foregoing, Lead Counsel shall have the discretion (but not the obligation) to accept late-submitted Claims for processing by the Claims Administrator so long as the distribution of the Net Settlement Fund to Authorized Claimants is not materially delayed thereby.  No Person shall have any claim against Lead Plaintiff, Lead Plaintiff's Counsel, the Claims Administrator, or any Class Member by reason of the decision to exercise such discretion whether to accept late-submitted Claims.

20.     Any Member of the Class may enter an appearance in the Litigation, at his, her, their, or its own expense, individually or through counsel of his, her, their, or its own choice.  If any Member of the Class does not enter an appearance, they will be represented by Lead Counsel.

21.     Any Member of the Class who wishes to exclude himself, herself, themselves, or itself from the Class must request exclusion in writing within the time and in the manner set forth in the Notice.  Any such Person must submit to the Claims Administrator a signed request for exclusion ("Exclusion Request") such that it is received no later than October 19, 2026, (a date that is twenty-one (21) calendar days prior to the Settlement Hearing).  An Exclusion Request must be signed and provide: (i) the name, address, and telephone number of the Person requesting exclusion; (ii) a list identifying the dates and the number of shares of Holley securities that the Person purchased, acquired, and sold for each such purchase, acquisition, and sale during the Class Period; and (iii) a statement that the Person "requests exclusion from the Class in the *Holley Securities Settlement*."  The Exclusion Request shall not be effective unless it provides the required information and is made within the time stated above or is otherwise accepted by the Court.  All Persons who submit valid and timely Exclusion Requests in the manner set forth in this paragraph and the Notice shall have no rights under the Stipulation or Settlement, shall not share in the distribution of the Net Settlement Fund, and shall not be bound by the Stipulation or any final judgment.  Unless otherwise ordered by the Court, any Person who purchased or otherwise acquired Holley securities during the Class Period who fails to timely and validly request exclusion from the Class in compliance with this paragraph shall be deemed to have waived his, her, their, or its right to be excluded from the Class and shall be barred from requesting exclusion from the Class.

22.     Lead Counsel shall provide or cause to be provided to Defendants' Counsel copies of all Exclusion Requests, whether timely and proper or not, and any written revocation of any

Exclusion Requests, as expeditiously as possible, but in no event later than five (5) calendar days of receipt thereof, and not later than fourteen (14) calendar days before the Settlement Hearing.

23.    Any Member of the Class who or which does not request exclusion from the Class may appear at the Settlement Hearing and object if he, she, they, or it has any reason why the proposed Settlement of the Litigation should not be approved as fair, reasonable, and adequate, why a judgment should not be entered thereon, why the Plan of Allocation should not be approved, or why attorneys' fees, together with charges and expenses, should not be awarded to Lead Counsel or to Lead Plaintiff; provided that any such Class Member files objections and copies of any papers and briefs with the Clerk of the United States District Court for the Western District of Kentucky, Bowling Green Division, and mails copies thereof by first-class mail to Robbins Geller Rudman & Dowd LLP, Theodore J. Pintar, 655 West Broadway, Suite 1900, San Diego, CA 92101, and Latham & Watkins LLP, Nicholas J. Siciliano, 330 North Wabash Street, Suite 2800, Chicago, IL 60611, so that they are received no later than October 19, 2026 (a date that is twenty-one (21) calendar days prior to the Settlement Hearing).  Any Member of the Class who does not make his, her, their, or its objection in the manner provided shall be deemed to have waived such objection and shall forever be foreclosed from making any objection to the fairness, reasonableness, or adequacy of the proposed Settlement as incorporated in the Stipulation, to the Plan of Allocation, to the award of fees, charges, and expenses to Lead Counsel or to the award to Lead Plaintiff, unless otherwise ordered by the Court.  Attendance at the Settlement Hearing is not necessary. However, Persons wishing to be heard orally in opposition to the approval of the Settlement, the Plan of Allocation, and/or the application for an award of fees, charges, and expenses are required to indicate in their written objection their intention to appear at the hearing and to include in their written objections the identity of any witnesses they may call to testify and copies of any exhibits

27

they intend to introduce into evidence at the Settlement Hearing. Class Members do not need to appear at the Settlement Hearing or take any other action to indicate their approval.

24. Any objections, filings, and other submissions by an objecting Class Member must: (i) state the name, address, and telephone number of the Person objecting and must be signed by the objector, even if the objector is represented by counsel; (ii) contain a statement of the Class Member's objection or objections, and the specific reasons for each objection, including any legal and evidentiary support the Class Member wishes to bring to the Court's attention and whether the objections apply only to the objector, a specific subset of the Class, or to the entire Class; (iii) include documents sufficient to prove membership in the Class, including the objecting Class Member's purchases, acquisitions, and/or sales of Holley securities during the Class Period, including the dates and number of shares for each purchase, acquisition, and/or sale; and (iv) identify all settlements to which the objector and/or its counsel has filed an objection in the past three (3) years.

25. Any Class Member who does not object to the Settlement, the Plan of Allocation, or the application for an award of attorneys' fees, charges, and expenses in the manner prescribed herein and in the Notice shall be deemed to have waived such objection, and shall forever be foreclosed from making any objection to the fairness, adequacy, or reasonableness of the proposed Settlement, this Memorandum Opinion and Order, and the Judgment to be entered approving the Settlement, the Plan of Allocation, and/or the application by Lead Counsel for an award of attorneys' fees together with charges and expenses.

26. All funds held by the Escrow Agent shall be deemed and considered to be *in custodia legis*, and shall remain subject to the jurisdiction of the Court until such time as such funds shall be distributed pursuant to the Stipulation and/or further order(s) of the Court.

27.    All papers in support of the Settlement, Plan of Allocation, and any application by Lead Counsel for an award of attorneys' fees, charges, and expenses shall be filed and served no later than October 5, 2026, (a date that is thirty-five (35) calendar days prior to the Settlement Hearing), any opposition papers thereto shall be filed and served no later than October 19, 2026, (a date that is twenty-one (21) calendar days prior to the Settlement Hearing), and any reply papers shall be filed and served no later than November 2, 2026, (a date that is seven (7) calendar days prior to the Settlement Hearing).

28.    The Released Defendant Parties shall have no responsibility or liability for the Plan of Allocation or any application for attorneys' fees, charges, or expenses submitted by Lead Counsel, and such matters will be considered by the Court separately from the fairness, reasonableness, and adequacy of the Settlement.  Any order or proceeding relating solely to the Plan of Allocation or any application for attorneys' fees or expenses or award to Lead Plaintiff, or any appeal from any order relating solely thereto or reversal or modification thereof, shall not operate to terminate or cancel the Stipulation, or affect or delay the finality of the Judgment and the settlement of the Litigation.

29.    At or after the Settlement Hearing, the Court shall determine whether the Plan of Allocation proposed by Lead Counsel, and any application for attorneys' fees, charges, and expenses, should be approved.  The Court reserves the right to enter the Judgment finally approving the Settlement regardless of whether it has approved the Plan of Allocation or awarded attorneys' fees and/or charges and expenses or an award to Lead Plaintiff.

30.    All reasonable expenses incurred in identifying and notifying Class Members, as well as administering the Settlement Fund, shall be paid as set forth in the Stipulation.  In the event the Court does not approve the Settlement, or the Settlement otherwise fails to become effective,

neither Lead Counsel nor the Claims Administrator shall have any obligation to repay any amounts actually and properly incurred or disbursed pursuant to Paragraphs 2.11 or 2.13 of the Stipulation.

31.     This Memorandum Opinion and Order and the Stipulation (including any of their respective terms or provisions), any of the negotiations, discussions, proceedings connected with them, and any act performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement or this Memorandum Opinion and Order, may not be construed as an admission or concession by the Released Defendant Parties of the truth of any of the allegations in the Litigation, or of any liability, fault, or wrongdoing of any kind, and may not be offered or received in evidence (or otherwise used by any Person in the Litigation, or in any other action or proceeding, whether civil, criminal, or administrative, in any court, administrative agency, arbitration, or other tribunal), except in connection with any proceeding to enforce the terms of the Stipulation or this Memorandum Opinion and Order.  The Released Defendant Parties, Lead Plaintiff, Class Members, and each of their counsel may file the Stipulation, this Memorandum Opinion and Order, and/or the Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

32.     All proceedings in the Litigation are stayed until further order of this Court, except as may be necessary to implement the Settlement or comply with the terms of the Stipulation. Pending final determination of whether the Settlement should be approved, neither the Lead Plaintiff nor any Class Member, either directly, representatively, or in any other capacity, shall commence or prosecute any of the Released Plaintiff's Claims against any of the Released Defendant Parties in any action or proceeding in any court or tribunal.

30

33.    The Court reserves the right to alter the time or the date of the Settlement Hearing or to hold the hearing via video or telephone without further notice to Class Members and retains jurisdiction to consider all further applications arising out of or connected with the proposed Settlement.  The Court may approve the Settlement, with such modifications as may be agreed to by the Settling Parties, if appropriate, without further notice to the Class.

34.    If the Stipulation or Settlement fails to become effective as defined in the Stipulation or is terminated, then, in any such event, the Stipulation, including any amendment(s) thereto (except as expressly provided in the Stipulation, and this Memorandum Opinion and Order) shall be null and void, of no further force or effect, and without prejudice to any Settling Party, and may not be introduced as evidence in this Litigation or used in any other actions or proceedings for any purpose, by any person or entity against any of the Settling Parties, and any judgment or order entered by the Court in accordance with the terms of the Stipulation shall be treated as vacated, nunc pro tunc. In any such event, the Settling Parties shall be restored to their respective positions in the Litigation as of April 21, 2026.

**Greg N. Stivers, Judge**
**United States District Court**
August 3, 2026

cc:    counsel of record

31